# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CULTURAL HERITAGE PARTNERS, PLLC**,<br>1717 Pennsylvania Avenue NW, Suite 1025,<br>Washington, D.C. 20006 | Civil Action No. _____ |
| **GREGORY ALAN WERKHEISER**,<br>1717 Pennsylvania Avenue NW, Suite 1025,<br>Washington, D.C. 20006 | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| **MARION FORSYTH WERKHEISER**,<br>1717 Pennsylvania Avenue NW, Suite 1025,<br>Washington, D.C. 20006 | |

and

**DC PRESERVATION LEAGUE**,
1328 Florida Avenue NW, 2nd Floor
Washington, D.C. 20009

Plaintiffs,

v.

**DONALD J. TRUMP**, in his official capacity
as President of the United States,
The White House
1600 Pennsylvania Avenue NW
Washington, D.C. 20500

**GENERAL SERVICES ADMINISTRATION**,
1800 F Street NW
Washington, D.C. 20405

**MICHAEL J. RIGAS**, in his official capacity
as Acting Administrator of the U.S. General
Services Administration,
U.S. General Services Administration
1800 F Street NW
Washington, D.C. 20405

**COMPLAINT  -  Page 1**

**NATIONAL PARK SERVICE**,
1849 C Street NW
Washington, D.C. 20240

and

**JESSICA BOWRON**, in her official capacity
as Acting Director of the National Park Service,
National Park Service
1849 C Street NW
Washington, D.C. 20240

Defendants.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Cultural Heritage Partners, PLLC, Gregory Alan Werkheiser, Marion Forsyth

Werkheiser, and the DC Preservation League, bring this civil action against Defendants Donald

J. Trump, in his official capacity as President of the United States; the General Services

Administration, a United States government agency; Michael J. Rigas, in his official capacity as

Acting Administrator of the General Services Administration; the National Park Service, a

United States government agency; and Jessica Bowron, in her official capacity as Acting

Director of the National Park Service (collectively, "Defendants"), and allege as follows:

## INTRODUCTION

1.      This action seeks to prevent the imminent, unlawful, and irreversible alteration of

one of the most historically significant buildings in the United States—the Eisenhower Executive

Office Building ("EEOB"), also known as the Old Executive Office Building and the State, War,

and Navy Building—by preventing Defendants from moving forward with a plan to clean,

repoint, and repaint the EEOB's exterior in a manner that would fundamentally change its

historic appearance and character and the historic district to which it contributes without first

**COMPLAINT  –  Page 2**

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

complying with the National Environmental Policy Act ("NEPA"), the National Historic

Preservation Act ("NHPA"), and the Administrative Procedure Act ("APA").

2.     The EEOB is a National Historic Landmark and a contributing resource within the

historic district surrounding the White House. The building's monumental Second Empire

design, gray stone façade, and relationship to the White House complex are central to its historic

and architectural significance.

3.     Plaintiffs Gregory Alan Werkheiser and Marion Forsyth Werkheiser are attorneys

whose law practices, and whose law firm, Cultural Heritage Partners, PLLC, focus on cultural

heritage and historic preservation. Werkheiser and Werkheiser regularly visit and experience

President's Park, Lafayette Square National Historic Landmark District ("Lafayette Square

NHLD"), and the EEOB area. Cultural Heritage Partners, PLLC, leases a Washington, D.C.

office located approximately 0.2 miles from the EEOB. Defendants' plan to repaint the EEOB

threatens Plaintiffs' aesthetic, recreational, professional, and economic interests and is being

pursued without the environmental and historic preservation review that federal law requires.

4.     Plaintiff DC Preservation League is a nonprofit member-supported organization

with a mission to preserve, protect, and enhance the historic and built environment of

Washington, D.C., through advocacy and education.

5.     Plaintiffs seek declaratory and injunctive relief requiring Defendants to comply

with NEPA, NHPA, and the APA and prohibiting Defendants from implementing the EEOB

repainting project unless and until they have done so.

**COMPLAINT  -  Page 3**

## JURISDICTION AND VENUE

6.      This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises

under the laws of the United States, including Article II, Section 3 of the United States

Constitution (the "Take Care Clause"), NEPA, 42 U.S.C. §§ 4321–4370h, NHPA, 54 U.S.C. §§

300101–307108, and the APA, 5 U.S.C. §§ 701–706. Plaintiffs also seek declaratory and further

relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

7.      The APA waives the sovereign immunity of the United States and provides a

cause of action for persons "suffering legal wrong because of agency action" or "adversely

affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702;

*see also id*. §§ 704, 706.

8.      Venue is proper in this District under 28 U.S.C. § 1391(e)(1) because Defendants

include officers and agencies of the United States, including the President of the United States in

his official capacity, who reside in this District, and because a substantial part of the events or

omissions giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

9.      **Plaintiff Gregory Alan Werkheiser** is an attorney who resides in Richmond,

Virginia. He is a founder and equity partner of Cultural Heritage Partners, PLLC, and his

practice focuses on cultural heritage, historic preservation, and federal environmental review,

including matters arising under NEPA and NHPA. Earlier in his career, Mr. Werkheiser spent

time working in the EEOB itself, giving him a direct, lived familiarity with the building's

historic interiors, materials, and relationship to the White House complex. He has, for many

years, regularly visited and experienced the White House complex, Lafayette Square NHLD,

**COMPLAINT  -  Page 4**

President's Park, and the area around the EEOB for aesthetic, recreational, professional, and educational purposes, and he intends to continue doing so in the future. His ability to enjoy, experience, and use this historic setting—in particular, to return to and share with others the building in which he once worked—will be diminished and irreparably harmed if Defendants proceed with the challenged EEOB repainting project.

10.    **Plaintiff Marion Forsyth Werkheiser** is an attorney who resides in Richmond, Virginia. She is a founder and equity partner of Cultural Heritage Partners, PLLC, and her practice likewise focuses on cultural heritage, historic preservation, and federal environmental and historic preservation review. Ms. Werkheiser regularly visits and experiences the White House complex, Lafayette Square NHLD, President's Park, and the EEOB area, including walking through and around these spaces, viewing the EEOB and its surroundings, and accompanying Mr. Werkheiser as he revisits the building and its setting where he once worked. She uses this setting in her professional work with clients and colleagues and intends to continue using and visiting these areas. Her aesthetic, recreational, and professional interests in this historic setting will be harmed if the EEOB's historic appearance and character are unlawfully altered without compliance with NEPA and NHPA.

11.    **Plaintiff Cultural Heritage Partners, PLLC** ("CHP") is a law firm based in Richmond, Virginia, and conducts essential business in Washington, D.C. CHP is committed to the protection of cultural heritage, historic places, and public stewardship of irreplaceable resources. CHP regularly advocates for compliance with federal preservation and environmental laws, including NEPA and NHPA, and has engaged in professional, educational, and public-service activities designed to ensure that historic properties owned by the United States

**COMPLAINT - Page 5**

Government are preserved for future generations. CHP's attorneys, including Gregory

Werkheiser and Marion Werkheiser, use the White House complex, Lafayette Square NHLD,

President's Park, and the EEOB area in their work—for example, to meet with clients and

partners, to illustrate federal preservation issues, and to conduct site visits. CHP has been a

registered limited liability company in the District of Columbia since 2012 and has regularly

maintained an office in Washington, D.C. From August 2015 through June 2025, CHP

maintained an office on L Street NW. It now leases a new Washington, D.C. office located

approximately 0.2 miles from the EEOB and in close proximity to the White House and the

Department of the Interior, situating its preservation-focused practice in the heart of the federal

historic district with which it regularly engages. The threatened repainting of the EEOB, and the

failure to follow NEPA and NHPA processes, will impair CHP's ability to carry out its mission

and serve its clients as planned.

     12.    **Plaintiff DC Preservation League** ("DPL") is a non-profit, tax-exempt §

501(c)(3) membership organization with its principal office in Washington, D.C. DPL's mission

is to preserve, protect, and enhance the built environment of Washington, D.C., through

advocacy and education. DPL's members live, work, and recreate throughout the District,

including in and around the White House complex, Lafayette Square NHLD, President's Park,

and the EEOB area. At least one DPL member regularly uses and enjoys the views and setting of

the EEOB and the surrounding historic districts and intends to continue doing so. At least one

DPL member would have standing to sue. DPL and its members have long-standing interests in

the protection of the White House complex, Lafayette Square NHLD, President's Park, and the

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

EEOB area and will be adversely affected by the unlawful alteration of the EEOB and its historic setting.

13.     **Defendant Donald J. Trump** is the President of the United States and the chief executive officer of the federal government. In that capacity, he is responsible for ensuring that the laws of the United States, including the Constitution, NEPA, NHPA, and the APA, are faithfully executed. President Trump has publicly announced and promoted the challenged plan to repaint the EEOB. He is sued in his official capacity.

14.     **Defendant Michael J. Rigas**, the Acting Administrator of General Services ("GSA Administrator"), is the chief executive officer of the GSA. The GSA Administrator is responsible for GSA's management of federal real property, including historic federal buildings such as the EEOB, and for ensuring that GSA complies with applicable statutes and regulations, including NEPA and NHPA, when approving or overseeing alterations to those buildings. The GSA Administrator is sued in his official capacity.

15.     **Defendant General Services Administration** ("GSA") is an agency of the United States headquartered in Washington, D.C. GSA owns and manages EEOB as part of its historic building portfolio (GSA Building Number DC0035ZZ) and is responsible for approving, contracting for, and overseeing alterations to the building's exterior. GSA is sued in its official capacity for declaratory and injunctive relief.

16.     **Defendant Jessica Bowron**, the Acting Director of the National Park Service ("NPS Director"), is the head of the National Park Service. The NPS Director is responsible for overseeing NPS's management of units of the National Park System, including President's Park and Lafayette Square NHLD, and for ensuring NPS's compliance with NHPA and related

**COMPLAINT  -  Page 7**

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

historic-preservation requirements, including Section 106 and Section 110(f), for undertakings affecting National Historic Landmarks and historic districts. The NPS Director is sued in her official capacity.

17.     **Defendant National Park Service** ("NPS") is an agency of the United States within the Department of the Interior, headquartered in Washington, D.C. NPS preserves and protects natural, cultural, and historical resources of the United States, including President's Park and Lafayette Square NHLD, which encompass the historic district and National Historic Landmark resources surrounding the White House and the EEOB. NPS has responsibilities under NHPA, including Section 106 and Section 110(f), for undertakings affecting these resources. NPS is sued in its official capacity for declaratory and injunctive relief.

## LEGAL FRAMEWORK

### Administrative Procedure Act ("APA")

18.     The APA, 5 U.S.C. §§ 701–706, governs judicial review of federal agency action and inaction. The APA authorizes "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute," to seek relief in federal court. 5 U.S.C. § 702.

19.     Under the APA, courts may review "final agency action for which there is no other adequate remedy in a court," *id.* § 704, and may also "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1). Courts must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," taken "without observance of procedure required by law," or "in excess of statutory jurisdiction, authority, or limitations." *Id.* §§ 706(2)(A), (C), (D).

**COMPLAINT  -  Page 8**

**National Environmental Policy Act ("NEPA")**

20.     Judicial review under NEPA is governed by the APA. 5 U.S.C. §§ 701–706.

21.     NEPA seeks to "promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man." 42 U.S.C. § 4321. Federal agencies are required to "fulfill the responsibilities of each generation as trustee of the environment for succeeding generations" and "preserve important historic, cultural, and natural aspects of our national heritage." *Id.* §§ 4331(b)(1), (4).

22.     To achieve these purposes, federal agencies must produce a "detailed statement" called an Environmental Impact Statement ("EIS") for any "major Federal action[] significantly affecting the quality of the human environment." *Id.* § 4332(C).

23.     Major federal actions include alterations to historic districts, iconic federal buildings, and visual changes that may impair historic values. The regulations of the Advisory Council on Historic Preservation encourage early coordination of NEPA review with the review required by Section 106 of the NHPA. *See* 36 C.F.R. § 800.8.

24.     If an agency does not know what the significance of an effect of a project might have on the quality of the human environment, or if the project does not have a reasonably foreseeable significant effect, it may produce an environmental assessment ("EA") rather than an EIS. 42 U.S.C. § 4336(b)(2). An EA is "a concise public document [that sets forth] the basis of [an] agency's finding of no significant impact or determination that an environmental impact statement is necessary." *Id.*

**COMPLAINT  -  Page 9**

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

25.     EAs and EISs must take a hard look at the effects of a proposed action, including environmental and cultural impacts, *before* issuing a decision that will allow the action to occur. *See id.* §§ 4332(C), 4336(b)(1)–(2).

26.     NEPA also requires federal agencies to disclose those effects with other agencies and the public before proceeding with that action. Public participation and disclosure are key aspects of NEPA, meant to: (1) ensure that agencies have carefully and fully contemplated the environmental effects of their actions before they make decisions and (2) ensure that the public has sufficient information to review, comment on, and—if necessary—challenge these agency actions. *See id.* §§ 4321, 4332.

27.     NEPA "ensures that the agency will not act on incomplete information, only to regret its decision after it is too late to correct." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 371 (1989). As the Supreme Court has explained, "the broad dissemination of information mandated by NEPA permits the public and other government agencies to react to the effects of a proposed action at a meaningful time." *Id*. at 371.

**National Historic Preservation Act ("NHPA")**

28.     Congress enacted the NHPA in recognition of the "widespread damage to and destruction of" the Nation's historic and cultural foundations and declared that "the historical and cultural foundations of the Nation should be preserved as a living part of our community life." 54 U.S.C. § 300101. Historic properties include buildings, districts, sites, structures, and objects, together with their associated settings and landscapes. *See id*. §§ 300308, 300319.

29.     NHPA also requires federal agencies to manage historic properties under their jurisdiction or control in a manner that considers the preservation of their historic, archeological,

**COMPLAINT  -  Page 10**

architectural, and cultural values, and to give special consideration to the preservation of those

values for properties of national significance. *Id.* § 306102. In carrying out undertakings that

may affect historic properties, agencies must ensure that their actions, and those of their

contractors, meet applicable professional standards. *See* 36 C.F.R. § 800.2(a)(1).

30.    Section 106 of the NHPA, codified at 54 U.S.C. § 306108, requires federal

agencies to "take into account the effect of [an] undertaking on any historic property" listed in or

eligible for listing in the National Register of Historic Places and to afford the Advisory Council

on Historic Preservation a reasonable opportunity to comment. *See* 36 C.F.R. pt. 800.

31.    The goal of Section 106 consultation is "to identify historic properties potentially

affected by the undertaking, assess its effects and seek ways to avoid, minimize or mitigate any

adverse effects on historic properties." 36 C.F.R. § 800.1(a).

32.    Under those regulations, the Section 106 process has three core steps: (1)

identifying historic properties that may be affected by the undertaking; (2) assessing whether the

undertaking will have adverse effects on those properties; and (3) consulting to avoid, minimize,

or mitigate adverse effects. *See id.* §§ 800.4–800.6. The term "undertaking" is defined broadly to

include "a project, activity, or program funded in whole or in part under the direct or indirect

jurisdiction of a Federal agency," *id.* § 800.16(y), and "effect" means any alteration to the

characteristics of a historic property that qualify it for inclusion in or eligibility for the National

Register, *id.* § 800.16(i).

33.    An "adverse effect" occurs "when an undertaking may alter, directly or indirectly,

any of the characteristics of a historic property that qualify it for inclusion in the National

Register in a manner that would diminish its integrity of location, design, setting, materials,

**COMPLAINT  -  Page 11**

workmanship, feeling, or association." *Id.* § 800.5(a)(1). Examples of adverse effects include "[p]hysical destruction of or damage to all or part of the property," and "[c]hange of the character of the property's use or of physical features within the property's setting that contribute to its historic significance." *Id*. §§ 800.5(a)(2)(i), (iv).

34.    Section 110(f) of NHPA imposes a heightened duty for National Historic Landmarks and National Historic Landmark districts. 54 U.S.C. § 306107. For undertakings that may directly and adversely affect a National Historic Landmark, federal agencies must, "to the maximum extent possible," undertake planning and consultation "to minimize harm" to the landmark, including consultation with the Secretary of the Interior (acting through the NPS) and other appropriate consulting parties. *See id*.; 36 C.F.R. § 800.10.

### Constitutional Background and Take Care Clause

35.    Article II of the United States Constitution provides that the President "shall take Care that the Laws be faithfully executed." U.S. Const. art. 2, § 3. The "Laws" include statutes enacted by Congress and duly promulgated regulations, such as NEPA, NHPA, and the APA. In directing and supervising executive agencies, the president and subordinate officials must act consistently with these statutory requirements and may not lawfully disregard or bypass them.

### FACTUAL ALLEGATIONS

#### A.  The EEOB's Historic Significance

36.    Completed in stages between 1871 and 1888, the EEOB is one of the nation's finest examples of the French Second Empire style, originally constructed to house the Departments of State, War, and the Navy.

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

37.     The building's massive granite exterior, elaborate slate roofs and cast-iron detailing, and associated exterior wood elements are integral to its architectural significance and are emphasized in federal documentation describing its historic character.

38.     The EEOB is a National Historic Landmark and has been listed in the National Register of Historic Places (No. 69-06-08-0010) since 1969. It serves as an anchor of the National Historic Landmark historic district surrounding Lafayette Square NHLD and the White House and is protected under multiple federal laws that require public process, expert review, and consideration of alternatives before any major alteration or visual impairment is undertaken by a federal agency.

39.     The EEOB is a contributing resource to the historic district encompassing Lafayette Square NHLD, which has been designated as a National Historic Landmark district. Defendants' proposed actions not only jeopardize the EEOB itself, but they also threaten the integrity and setting of the surrounding National Historic Landmark district.

40.     Because this area is critical to the Nation's history and to the public's understanding of that history, Congress, federal agencies, state agencies, local governments, advocacy organizations, and private property owners have, for more than a century, taken myriad steps to conserve this area and protect its integrity by maintaining the landscape and the historic buildings for the American public to appreciate and enjoy.

41.     These nationally important objectives have been promoted and served through designation of National Historic Landmarks, listing of properties in the National Register of Historic Places, and recognition of the entire area—including the EEOB and surrounding historic properties—as part of a National Historic Landmark district.

**COMPLAINT  -  Page 13**

42.     Painting a historic building whose masonry has historically been left unpainted can trap moisture within the wall system, accelerate deterioration, and cause masonry to crack or spall, permanently altering or obscuring original materials that were never meant to be coated. U.S. preservation standards, including the Secretary of the Interior's Standards for the Treatment of Historic Properties and related technical guidance, call for keeping a property's historic appearance as unchanged as possible and caution that new paint schemes and coatings on historic masonry should be avoided unless they replicate or closely match documented historic finishes and are compatible with the masonry substrate.

**B.  President Trump's Statements and the EEOB Repainting Plan**

43.     On or about November 10, 2025, during an interview with Laura Ingraham for "'Seen and Unseen': Inside President Trump's White House renovations" on Fox News, President Trump stated that he planned to paint the EEOB white and showed images depicting the building covered entirely in pale white paint. In responding to the images, President Trump said, "Look at that, how beautiful that is." *See The Ingraham Angle,* "Seen and Unseen," Fox News, https://www.foxnews.com/video/6385030226112 (hereinafter "*Ingraham*").

44.     During that exchange, President Trump appeared surprised that Ms. Ingraham was aware of the plan, remarking, "You did you hear that? That's amazing." *Id.* The relevant portion of the interview including their discussion regarding the EEOB was released online in a "Seen and Unseen" segment.

45.     National media, including an article on the Rachel Maddow Blog titled "Trump's White House renovation ambitions take a weird turn," reported on the president's statements and the prospect of repainting the EEOB. Steve Benen, *Trump's White House Renovation Ambitions*

**COMPLAINT  -  Page 14**

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

*take a Weird Turn,* Maddow Blog (Nov. 13, 2025, 1:10 PM), https://www.msnbc.com/rachel-maddow-show/maddowblog/trumps-white-house-renovation-ambitions-take-weird-turn-rcna243736.

46.     In this discussion, President Trump stated that he intended to paint the entire exterior of the EEOB white and complete other types of work on the building. He asserted that the new color "brings out all the detail," while showing digital illustrations of the building's new color. *See Ingraham.* Referring to the building's existing gray granite, he said, "Gray is for funerals." *Id.*

47.     When asked if painting was the only planned activity, President Trump responded, "cleaning, and pointing, and painting. It needs other work too." *Id.* It is unclear whether he was referencing additional work beyond cleaning, pointing, and painting with this remark, but his statements described a broad program of work on the EEOB exterior.

48.     When asked when this work would occur, President Trump stated, "I'm getting bids right now from painters." *Id.* President Trump appeared to have digital illustrations on hand showing the entire façade painted white, indicating that significant thought and preliminary planning for the project had already taken place.

49.     Upon information and belief, no environmental or historic preservation review preceded these public statements. The responsible federal agencies have not initiated the review required by NEPA or NHPA for the EEOB repainting project. No public notice has been issued, no environmental assessment or impact statement has been prepared, and no consultation has occurred with the Advisory Council on Historic Preservation, the District of Columbia State Historic Preservation Office, or other consulting parties.

**COMPLAINT  –  Page 15**

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

50.    Plaintiffs bring this case to protect their own aesthetic, recreational, professional, economic, and organizational interests in the EEOB and its historic setting and, in doing so, to ensure that the United States Government complies with the law when altering nationally significant cultural resources and sites.

51.    Painting the EEOB a new color and carrying out the associated cleaning and pointing work described by the president constitute a federal "undertaking" that may cause direct and adverse effects to a National Historic Landmark and its historic setting and therefore require review and consultation under Section 106 and the heightened "minimize harm" obligations of Section 110(f) of the NHPA before any such work is approved or implemented.

**C.  Defendants' Pattern of Misdirection and Sudden Execution**

52.    Earlier in 2025, President Trump ordered the demolition of a substantial portion of the East Wing of the White House complex.

53.    That demolition occurred without public notice, without expert consultation, and before any NEPA or NHPA review was initiated.

54.    President Trump initially dismissed reports regarding demolition preparations as media speculation, yet the demolition commenced within days, catching preservation officials, Members of Congress, and the public by surprise.

55.    Upon information and belief, the impending demolition of the East Wing was concealed from the public for months prior to the demolition, and workers were required to sign non-disclosure agreements.

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

56.     President Trump's expression of surprise at Ms. Ingraham's knowledge of the planned painting of the EEOB suggests that similar secrecy surrounds his current plan to paint the EEOB.

57.     This pattern of sudden execution following public denial or minimization provides strong evidence that President Trump's stated intention to paint the EEOB is not hypothetical or speculative, but imminent.

**D.  <u>Imminent and Irreparable Harm</u>**

58.     Major federal actions and federal undertakings include alterations to historic districts, iconic federal buildings, and visual changes that may impair historic values.

59.     The EEOB's exterior walls are constructed of granite from the Green quarry in central Virginia and the Vinalhaven and Hurricane Island quarries in Maine. The EEOB's interior walls are constructed of brick masonry and Seneca stone rubble, and the walls sit on a foundation made of American natural hydraulic cement, as described in contemporary accounts. The window sashes on the building are made of wood.

60.     Painting the EEOB's exterior stone—whether white or another modern paint scheme—would constitute a permanent alteration of historic fabric and irreversibly damage the building's architectural integrity.

61.     Once applied, paint cannot be removed from the EEOB's stone exterior without extensive and potentially destructive treatment, resulting in loss of original material. Removal of paint from historic buildings is challenging and cannot always be accomplished without significant damage to underlying materials. For a building on the scale of the EEOB

**COMPLAINT  -  Page 17**

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

(approximately 285 by 523 by 134 feet), removing paint from the natural granite and slate would require immense expense. Painting the building is therefore, in practice, a permanent change.

62.    Improper cleaning and repointing of historic masonry can likewise cause harmful changes, including erosion or loss of historic stone surfaces, damage to mortar joints, staining or discoloration, and cracking or spalling caused by incompatible mortar mixes or excessive pressure in cleaning.

63.    The Secretary of the Interior's Standards for Rehabilitation and related Illustrated Guidelines on Sustainability for Rehabilitating Historic Buildings state that "repairs and alterations must not damage or destroy materials, features, or finishes that are important in defining the building's historic character," and specifically warn that improper repointing, exterior masonry cleaning techniques, and changes to the color of exterior building finishes are interventions that do not meet the Standards. U.S. Dep't of Interior – N.P.S., *The Secretary of the Interior's Stds for Rehab. & Illustrated Guidelines on Sustainability for Rehab. Historic Buildings* vii (2011).

64.    The harm threatened by the proposed repainting and associated work on the EEOB extends beyond the building itself to the broader historic setting of the Lafayette Square NHLD. Painting the EEOB would constitute an adverse visual effect to all listed or eligible historic properties with a vantage point onto the EEOB, including the Lafayette Square NHLD, the Cosmos Club, the Richard Cutts House, the Benjamin Ogle Tayloe House, the Howard T. Markey National Courts Building, the War Risk Insurance Bureau Building, Ashburton House, St. John's Episcopal Church, the U.S. Chamber of Commerce Building, the Renwick Gallery, the Department of the Treasury, and the White House, all of which are listed in the National Register

**COMPLAINT  -  Page 18**

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

of Historic Places and many of which are individual National Historic Landmarks or contributing resources to the Lafayette Square NHLD.

65.     Without court intervention, Defendants are likely to proceed rapidly, without lawful compliance with NEPA and NHPA, repeating the pattern of misdirection and secretive action previously used in connection with the demolition of the East Wing, and causing imminent, irreparable, and permanent harm to the EEOB and its historic setting.

**E.  Federal Agency Responsibility and Project Implementation**

66.     The EEOB is owned and managed by the GSA. Any substantial cleaning, repointing, or repainting of the EEOB's exterior would be carried out by or under the authority of GSA, using federal funds and federal procurement processes, and therefore constitutes a federal project subject to NEPA, NHPA, and the APA.

67.     President's Park and Lafayette Square NHLD, including the historic setting immediately surrounding the EEOB, are managed by NPS as units of the National Park System. Undertakings that alter the appearance, setting, or views within President's Park and the Lafayette Square NHLD require review and consultation consistent with NHPA and NPS's responsibilities for National Historic Landmarks.

68.     Based on President Trump's public statements, the existence of digital illustrations of the EEOB painted white, and Plaintiffs' experience with federal preservation and environmental review, Plaintiffs allege on information and belief that staff within GSA and NPS have begun internal planning and coordination for an EEOB exterior project that includes cleaning, repointing, and repainting the building's exterior, including exploring procurement and scheduling options for such work.

**COMPLAINT  -  Page 19**

69.     Upon information and belief, Defendants have not prepared any Environmental Assessment, Environmental Impact Statement, or other NEPA document for the EEOB project; have not invoked or documented any categorical exclusion; and have not provided any public notice or opportunity for comment on the environmental effects of the proposed work.

70.     Upon information and belief, Defendants have not, for the EEOB project, (a) defined an area of potential effects, (b) identified historic properties within that area, (c) evaluated the effects of the proposed work on those historic properties, or (d) consulted with the Advisory Council on Historic Preservation, the District of Columbia State Historic Preservation Office, the NPS in its capacity as steward of National Historic Landmarks, or other consulting parties, as required by Section 106 and Section 110(f) of the NPHA and their implementing regulations.

**F.  Plaintiffs' Interests and Injuries**

71.     Plaintiffs Gregory Werkheiser and Marion Werkheiser regularly visit and experience the White House complex, Lafayette Square NHLD, President's Park, and the area around the EEOB for aesthetic, recreational, professional, and educational purposes, and they intend to continue doing so. The EEOB and its historic setting are important to them personally and professionally; Mr. Werkheiser previously worked in the EEOB and both Plaintiffs use the building and its surroundings in their cultural heritage and preservation practice.

72.     Plaintiff CHP relies on the continued historic character and integrity of the EEOB and its setting in its work on cultural heritage and historic preservation matters, including advocacy relating to NEPA and NHPA compliance for federal actions affecting historic properties. CHP and its attorneys use the White House and Lafayette Square NHLD area for

**COMPLAINT  -  Page 20**

meetings, site visits, and educational activities, and CHP maintains a Washington, D.C. office located approximately 0.2 miles from the EEOB. CHP deliberately located its office in close proximity to the EEOB and the surrounding federal historic district to situate its preservation-focused practice in the heart of the area with which it regularly engages. Defendants' proposed repainting of the EEOB and failure to follow NEPA and NHPA processes will directly impair CHP's ability to use its office location and surrounding historic setting for these purposes and will harm CHP's professional and organizational interests.

73.    Plaintiff DC Preservation League has members who live, work, and recreate in and around Lafayette Square NHLD, President's Park, and the EEOB area and who regularly view and enjoy the EEOB and its historic setting. DPL and its members have long-standing interests in the preservation of the White House complex and the surrounding historic districts.

74.    Plaintiffs and DPL's members would, if given the opportunity, participate in NEPA and NHPA processes for the EEOB project, including by reviewing environmental documents, submitting comments, and engaging in Section 106 consultation. Defendants' failure to initiate and complete those processes deprives Plaintiffs of procedural rights and information to which they are legally entitled and directly impairs their ability to protect their aesthetic, recreational, professional, economic, and organizational interests in the EEOB and its historic setting.

## CLAIMS FOR RELIEF

### COUNT I – Violation of the NEPA and the APA

75.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

**COMPLAINT  -  Page 21**

76.     NEPA is a procedural statute enacted "to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man." 42 U.S.C. § 4321; *see also id*. § 4331. NEPA requires federal agencies to take a hard look at the environmental consequences of their proposed actions before making decisions that will affect the environment.

77.     NEPA directs federal agencies, "to the fullest extent possible," to include in every "major Federal action[] significantly affecting the quality of the human environment" a detailed statement on, among other things, the environmental impact of the proposed action, alternatives to the proposed action, and any irreversible and irretrievable commitments of resources. 42 U.S.C. § 4332(C). NEPA requires agencies to consider effects on both the natural and physical environment and the way people experience that environment, including effects on historic and cultural resources and the settings in which those resources are experienced.

78.     Defendants' plan to clean, repoint, and repaint the exterior of the EEOB, thereby permanently altering the appearance and historic character of a National Historic Landmark and its setting within President's Park and the Lafayette Square NHLD, constitutes a "major Federal action" within the meaning of NEPA and therefore requires environmental review before the action is approved or implemented. *See* 42 U.S.C. § 4332(C).

79.     On information and belief, Defendants, acting through the GSA and NPS, have formulated a plan to repaint the EEOB and, in light of the President's public statements about "getting bids" from painters, have begun or are preparing to begin concrete steps to implement that plan. These steps include internal planning and coordination for a federal project that will alter the EEOB's exterior and therefore constitute "agency action" within the meaning of the

**COMPLAINT  -  Page 22**

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

APA. This "agency action" is subject to NEPA's requirements and to judicial review. 5 U.S.C.

§§ 702, 704, 706.

80.      Defendants have not prepared an EA or EIS for the EEOB repainting project.

Defendants have not taken a hard look at the project's direct and indirect effects on the human

environment, including effects on historic properties, viewsheds, and the President's Park and

Lafayette Square NHLD; have not evaluated a reasonable range of alternatives; and have not

provided public notice or an opportunity for public comment as required by NEPA.

81.      Defendants have not properly invoked or documented any categorical exclusion

under NEPA for the EEOB project, and, in any event, the nature, scale, and context of the

proposed repainting and associated work preclude reliance on a categorical exclusion because the

project may significantly affect the quality of the human environment and historic resources.

82.      By failing to initiate, conduct, and complete the NEPA process before proceeding

with planning and implementation of the EEOB repainting project, Defendants have unlawfully

withheld and unreasonably delayed agency action required by law, in violation of 5 U.S.C. §

706(1), and have failed to observe procedures required by NEPA, in violation of 5 U.S.C. §

706(2)(D).

83.      To the extent Defendants contend that any form of NEPA review has been

undertaken for the EEOB repainting project, any such review is inadequate, fails to satisfy the

required "detailed statement" necessary for NEPA review, and does not constitute a hard look at

the effects the project will have. Defendants have not reasonably evaluated the significance of

the project's impacts, have not considered a reasonable range of alternatives, and have not

meaningfully considered mitigation, rendering any decision to proceed with the project

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

"arbitrary, capricious, an abuse of discretion, [and] not in accordance with law." *See* 5 U.S.C. § 706(2)(A).

84.     Defendants' decision and continuing intent to proceed with planning, contracting for, and implementation of the EEOB repainting project without first complying with NEPA is "without observance of procedure required by law." 5 U.S.C. §§ 706(2)(D).

85.     As a direct and proximate result of Defendants' violations of NEPA and the APA, and absent declaratory and injunctive relief from this Court, Plaintiffs' concrete interests in the historic, cultural, aesthetic, recreational, and professional values of the EEOB and its historic setting have been and will continue to be harmed.

## COUNT II – Violation of Section 106 of the NHPA and APA

86.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

87.     The EEOB is a National Historic Landmark and is listed in the National Register of Historic Places. It is a contributing resource within the Lafayette Square NHLD, containing historic properties of exceptional national significance, and the White House complex.

88.     The EEOB is owned and managed by the United States through the GSA and is located within President's Park and the Lafayette Square NHLD managed by the NPS. The EEOB is therefore a federal historic property subject to the requirements of the NHPA.

89.     Defendants' plan to clean, repoint, and repaint the exterior of the EEOB, and to undertake related work on the building's exterior, constitutes an "undertaking" within the meaning of the NHPA and its implementing regulations, because it is a project or activity carried

**COMPLAINT  -  Page 24**

out under the jurisdiction of federal agencies and funded with federal resources. *See* 54 U.S.C. § 306108; 36 C.F.R. § 800.16(y).

90.     Section 106 of the NHPA, codified at 54 U.S.C. § 306108, requires federal agencies, prior to approving an undertaking, to "take into account the effect of the undertaking on any historic property" listed in or eligible for the National Register of Historic Places and to afford the Advisory Council on Historic Preservation a reasonable opportunity to comment.

91.     The regulations implementing Section 106 require an agency proposing an undertaking to: (a) determine and document the area of potential effects; (b) identify and evaluate historic properties that may be affected; (c) assess whether the undertaking will have adverse effects on those properties; and (d) consult with the State Historic Preservation Officer, the Advisory Council on Historic Preservation, local governments, and other consulting parties to avoid, minimize, or mitigate adverse effects, typically through a Memorandum of Agreement or other binding instrument. *See* 36 C.F.R. §§ 800.4–800.6.

92.     Under those regulations, an "adverse effect" occurs when an undertaking may alter, directly or indirectly, any of the characteristics of a historic property that qualify it for inclusion in the National Register in a manner that would diminish its integrity of location, design, setting, materials, workmanship, feeling, or association. 36 C.F.R. § 800.5(a)(1). Examples of adverse effects include physical damage to a historic property and changes to physical features within a property's setting that contribute to its historic significance. *Id*. § 800.5(a)(2).

93.     The planned cleaning, repointing, and repainting of the EEOB's exterior stone and wood features, and the dramatic change in the building's color and appearance, are likely to

**COMPLAINT  -  Page 25**

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

cause physical damage to historic materials and to diminish the EEOB's integrity of design, setting, materials, workmanship, feeling, and association, and to adversely affect the broader Lafayette Square NHLD. These impacts constitute adverse effects under Section 106 and its implementing regulations.

94.    Defendants have failed to initiate or complete the Section 106 review process for the EEOB undertaking. Defendants have not determined and documented an area of potential effects; have not identified or evaluated all historic properties that may be affected by the undertaking; and have not assessed adverse effects, including visual effects, to the EEOB and to other contributing properties within the Lafayette Square NHLD.

95.    Defendants have failed to consult with the Advisory Council on Historic Preservation, the District of Columbia State Historic Preservation Office, the NPS in its capacity as steward of National Historic Landmarks, local governments, or other consulting parties regarding the EEOB undertaking, and have not sought to resolve adverse effects through a Memorandum of Agreement or other appropriate means, as required by Section 106 and its implementing regulations.

96.    By proceeding with planning, approval, and implementation of the EEOB undertaking without first complying with Section 106 and its implementing regulations, Defendants have unlawfully withheld and unreasonably delayed agency action required by law, in violation of 5 U.S.C. § 706(1), and have acted "without observance of procedure required by law," in violation of 5 U.S.C. § 706(2)(D).

97.    To the extent Defendants contend that any form of Section 106 review has been undertaken for the EEOB undertaking, any such review is inadequate and fails to meet the

**COMPLAINT  –  Page 26**

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

requirements of NHPA and its implementing regulations because Defendants have not properly determined an area of potential effects, identified and evaluated historic properties, assessed adverse effects, consulted with required parties, or developed measures to avoid, minimize, or mitigate adverse effects. Any decision to proceed with the EEOB undertaking under those circumstances is "arbitrary, capricious, an abuse of discretion, [and] otherwise not in accordance with law" within the meaning of 5 U.S.C. § 706(2)(A).

98.     As a direct and proximate result of Defendants' violations of Section 106 of the NHPA and the APA, and absent declaratory and injunctive relief from this Court, Plaintiffs' concrete interests in the historic, cultural, aesthetic, recreational, and professional values of the EEOB and its historic setting have been and will continue to be harmed.

## COUNT III – Violation of Section 110(f) of the NHPA and APA

99.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

100.     The EEOB is a National Historic Landmark listed in the National Register of Historic Places and is located within the Lafayette Square NHLD, a historic district containing resources of exceptional national significance.

101.     The EEOB is owned, controlled, and managed by the United States through the GSA, and is situated within President's Park and Lafayette Square NHLD, which are managed by the NPS. The EEOB is therefore a federal historic property of national significance subject to the requirements of Section 110 of the NHPA.

102.     Defendants' plan to clean, repoint, and repaint the exterior of the EEOB, and to undertake related work on the building's exterior, is a federal undertaking that may directly and

**COMPLAINT  -  Page 27**

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

adversely affect a National Historic Landmark and the National Historic Landmark district in which it is located.

103.    Section 110 of the NHPA requires federal agencies to assume responsibility for the preservation of historic properties under their jurisdiction and control and to manage those properties in a way that considers the preservation of their historic, archaeological, architectural, and cultural values. For properties of national significance, agencies must give special consideration to the preservation of those values. *See* 54 U.S.C. § 306102(b)(2).

104.    Section 110(f) of the NHPA, codified at 54 U.S.C. § 306107, requires that, for any undertaking that may directly and adversely affect a National Historic Landmark, the responsible agency official must, "to the maximum extent possible," undertake such planning and actions as may be necessary to minimize harm to the landmark. Compliance with Section 110(f) is explained in 36 C.F.R. § 800.10, which calls for early and careful consideration of alternatives and mitigation measures, consultation with NPS and the Advisory Council on Historic Preservation, and public reporting of efforts to minimize harm.

105.    Defendants have failed to comply with Section 110(f)'s heightened requirements for National Historic Landmarks. Defendants have not, to the maximum extent possible, undertaken planning and actions necessary to minimize harm to the EEOB or to the Lafayette Square NHLD; have not adequately considered alternatives that would avoid or substantially reduce adverse effects; and have not developed or adopted measures to minimize harm to the EEOB or to the Lafayette Square NHLD.

106.    Defendants have failed to properly consult with the NPS in its role as steward of National Historic Landmarks, with the Advisory Council on Historic Preservation, or with other

**COMPLAINT – Page 28**

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

appropriate consulting parties, and have not prepared or made public any report or documentation demonstrating that they have considered and adopted all possible planning and actions to minimize harm to the EEOB as required by Section 110(f) and 36 C.F.R. § 800.10.

107.     Defendants have failed to ensure that the proposed changes to the EEOB will be carried out in accordance with the Secretary of the Interior's Standards for the Treatment of Historic Properties and related guidance governing work on National Historic Landmarks, including standards that call for preserving character-defining materials, features, finishes, and colors and for avoiding treatments that damage or obscure historic materials.

108.     By failing to meet their affirmative stewardship duties for a National Historic Landmark, and by moving forward with planning and approval of the EEOB undertaking without the planning, consultation, minimization of harm, and adherence to professional preservation standards required by Section 110 and Section 110(f), Defendants are in violation of 54 U.S.C. §§ 306102, 306107 and their implementing regulations.

109.     These failures constitute agency action unlawfully withheld and unreasonably delayed, in violation of 5 U.S.C. § 706(1), and agency action taken "without observance of procedure required by law" and "arbitrary, capricious, [and] not in accordance with law," in violation of 5 U.S.C. § 706(2)(A), (D).

110.     The proposed changes would cause immediate and irreparable harm to the historic character, integrity, and appearance of the EEOB, a National Historic Landmark, and to the Lafayette Square NHLD, undermining the purposes of the NHPA and causing injuries for which, absent injunctive and declaratory relief, Plaintiffs' interests in historic, cultural, aesthetic, recreational, professional, and organizational values have been and will continue to be harmed.

**COMPLAINT  -  Page 29**

## COUNT IV – Violation of the APA

111.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

112.    Defendants GSA and NPS, and the officials heading those agencies, are federal "agencies" and "officers" subject to the APA. *See* 5 U.S.C. §§ 702–706. They are responsible for managing the EEOB and its surroundings in compliance with applicable statutes and regulations, including NEPA, NHPA, and related historic preservation and property management requirements.

113.    The plan to clean, repoint, and repaint the exterior of the EEOB, and to undertake related work on the building's exterior, is an "agency action" within the meaning of the APA because it is a federal project or program carried out under the authority of these agencies. *Id.* The agencies' failure to initiate and complete legally required environmental and historic preservation review processes before advancing that plan is also "agency action" unlawfully withheld or unreasonably delayed. *Id.*

114.    Under the APA, reviewing courts must set aside agency action that is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, taken without observance of procedure required by law, or in excess of statutory jurisdiction or authority. Agencies may not lawfully treat presidential preferences or directives as a substitute for complying with statutory requirements imposed by Congress.

115.    On information and belief, Defendants have begun to formulate and advance the EEOB repainting project in response to the President's publicly announced plan to paint the building white and his statement that he is "getting bids right now from painters." *See Ingraham.*

**COMPLAINT  -  Page 30**

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

In doing so, Defendants have not ensured that their own actions remain within the bounds of statutes that govern federal property, environmental review, and historic preservation.

116.    By moving forward with planning and preparatory steps for the EEOB undertaking without first complying with NEPA's environmental review requirements, NHPA's Section 106 and Section 110(f) consultation and "minimize harm" duties, and related stewardship obligations for National Historic Landmarks, Defendants have acted contrary to law and have failed to observe procedures required by law.

117.    To the extent Defendants rely on presidential direction as sufficient authority to approve or implement the EEOB undertaking without satisfying statutory prerequisites, Defendants are acting in excess of their statutory jurisdiction and authority. Congress has assigned responsibility for the management and alteration of federal property, including historic federal buildings, to agencies subject to explicit procedural and substantive constraints, and has not authorized those agencies to disregard those constraints based on a president's personal preferences.

118.    Defendants' actions are arbitrary and capricious because they have failed to consider important aspects of the problem, including the reasonably foreseeable physical and visual impacts of painting previously unpainted historic masonry, the availability of alternatives and mitigation measures, and the EEOB's status as a National Historic Landmark and contributing resource to a National Historic Landmark district.

119.    The absence of public notice, environmental review documents, and required historic-preservation review for the EEOB undertaking, combined with the president's statements that bids are being obtained and with the recent pattern of sudden execution and lack

**COMPLAINT  -  Page 31**

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

of prior review in connection with demolition of the East Wing of the White House, indicates that the EEOB undertaking has not been planned or evaluated in a reasoned manner consistent with statutory mandates.

120.    Taken together, these actions and omissions constitute agency action unlawfully withheld and unreasonably delayed, agency action taken without observance of procedure required by law, and agency action that is arbitrary, capricious, an abuse of discretion, and not in accordance with law, in violation of the APA.

121.    As a direct and proximate result of Defendants' violations of the APA, and absent declaratory and injunctive relief from this Court, Plaintiffs' concrete interests in the historic, cultural, aesthetic, recreational, professional, and organizational values of the EEOB and its historic setting have been and will continue to be harmed.

**COUNT V – Violation of the Take Care Clause of the United States Constitution**

122.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

123.    Article II of the United States Constitution obligates the president to "take Care that the Laws be faithfully executed." U.S. Const. art. 2, § 3. The "Laws" include statutes enacted by Congress and duly promulgated regulations, including NEPA and the NHPA.

124.    Congress, through NEPA and NHPA, has directed that federal agencies must follow specific procedures before undertaking or approving federal actions that may affect the human environment, including historic and cultural resources. *See, e.g.*, 42 U.S.C. § 4332(C); 54 U.S.C. § 306108. The APA requires that agency action comply with these statutes and their implementing regulations. 5 U.S.C. §§ 701–706.

**COMPLAINT  -  Page 32**

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

125.    Plaintiffs allege that President Trump has personally directed, and continues to direct, a federal project to clean, repoint, and repaint the exterior of the EEOB—an action that will permanently alter the appearance and historic character of a National Historic Landmark and its setting—without regard to the procedures mandated by NEPA and NHPA. In a televised interview, the president publicly stated that he wanted to "paint" the EEOB white and said that he was "getting bids right now from painters," while displaying imagery of the building covered entirely in white paint. *See Ingraham.*

126.    On information and belief, and in light of the president's directive and public statements, GSA and NPS officials have begun or are preparing to begin planning, contracting, and other steps to implement the EEOB repainting project without first initiating or completing the environmental and historic preservation reviews required by NEPA and NHPA.

127.    Rather than ensuring that NEPA and NHPA are faithfully executed, the president's directive, and the actions of his subordinates taken to carry it out, are designed to bypass or disregard those statutes' requirements. In doing so, the president has failed to take care that the laws be faithfully executed and has instead directed executive branch officials to act contrary to law.

128.    The president's actions and directives concerning the EEOB repainting project, as alleged herein, violate Article II, Section 3 of the Constitution because they (a) direct federal officers to proceed with a project in a manner that contravenes NEPA and NHPA, and (b) reflect an abdication of the constitutional duty to ensure that those statutes are enforced and followed in good faith.

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

129.    Plaintiffs seek prospective declaratory relief that the president's directive to implement the EEOB repainting project without complying with NEPA and NHPA is inconsistent with the Take Care Clause, and injunctive relief directed to subordinate officers (including GSA and NPS officials) to prevent them from acting pursuant to or relying on that unconstitutional directive.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

A.  Declare that Defendants' approval, funding, planning, or implementation of the plan to clean, repoint, and repaint the exterior of EEOB without compliance with the Constitution, the APA, NEPA, and NHPA is unlawful;

B.  Enjoin Defendants, and their officers, agents, employees, and those acting in concert with them, from initiating, authorizing, funding, contracting for, or conducting any activity related to cleaning, repointing, repainting, or otherwise altering the EEOB's exterior that could prejudice or predetermine the outcome of required environmental and historic preservation review, unless and until they have fully complied with NEPA, NHPA (including Sections 106 and 110(f)), and the APA;

C.  Order the agency Defendants to initiate, conduct, and complete all legally required NEPA and NHPA processes for the EEOB undertaking, including preparation of appropriate NEPA documentation, public notice and opportunities for comment, and consultation with the Advisory Council on Historic Preservation, the District of Columbia State Historic Preservation Office, the NPS, and other appropriate consulting parties;

**COMPLAINT  -  Page 34**

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

D. Award Plaintiffs their reasonable attorneys' fees and costs as permitted by the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable authority; and

E. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Gregory Alan Werkheiser, Bar No. VA210
CULTURAL HERITAGE PARTNERS, PLLC
1717 Pennsylvania Avenue NW, Suite 1025,
Washington, DC 20006
Tel: (703) 408-2002
Email:  greg@culturalheritagepartners.com

/s/ Marion Forsyth Werkheiser, Bar No.
486465
CULTURAL HERITAGE PARTNERS, PLLC
1717 Pennsylvania Avenue NW, Suite 1025,
Washington, DC 20006
Tel: (202) 567-7594
Email:  marion@culturalheritagepartners.com

COUNSEL FOR PLAINTIFFS

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594