# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CULTURAL HERITAGE PARTNERS, PLLC, et al.**, | Civil Action No. 1:25-cv-03969-DLF |
| Plaintiffs, | |
| v. | DECLARATION OF MARION FORSYTH WERKHEISER |
| **DONALD J. TRUMP, et al.**, | |
| Defendants. | |

### DECLARATION OF MARION FORSYTH WERKHEISER

I, MARION FORSYTH WERKHEISER, under 28 U.S.C. § 1746, hereby declare on my own behalf and on behalf of Cultural Heritage Partners, PLLC ("CHP"):

1. My name is Marion Forsyth Werkheiser. I have personal knowledge of the matters stated herein. I am authorized to make this declaration on behalf of CHP.

2. I am an attorney residing in Richmond, Virginia. I am a founder and equity partner of Cultural Heritage Partners, PLLC ("CHP"), an international law firm. I have practiced law for twenty-two years.

3. CHP focuses our practice on the protection of cultural heritage, including architecture, art, landscapes, sacred places, and traditional practices, including federal threats to those resources arising under the National Environmental Policy Act ("NEPA") and the National Historic Preservation Act ("NHPA").

4. I have practiced law for twenty-two years and routinely advise clients on compliance with NEPA, the NHPA, and other preservation statutes. I also regularly teach continuing legal education courses to train other attorneys on these statutes and their application.

**DECLARATION OF MARION FORSYTH WERKHEISER**                                                               1

5. I travel to Washington, D.C. often for professional meetings, court appearances, speaking engagements, and recreational activities. I regularly walk through the White House complex, the Lafayette Square National Historic Landmark District ("Lafayette Square NHLD"), President's Park, and the area around the Eisenhower Executive Office Building ("EEOB") to enjoy their historic architecture and setting. The EEOB's gray granite façade, mansard roofs, and ornate details are among the reasons I am drawn to the area. I use these spaces for aesthetic, recreational, professional, and educational purposes, and I intend to continue doing so. If the EEOB's exterior is painted, my experience of this historic setting will be permanently diminished.

6. In my role at CHP, I use the EEOB and its surroundings in my work. I meet clients and colleagues in and around Lafayette Square and President's Park, lead or participate in visits in the EEOB area to illustrate federal preservation issues, and I use the building's unpainted masonry and relationship to the White House complex as an illustrative example of the success of historic preservation. The repainting project would diminish the value of this setting for my work and for CHP's mission.

7. CHP maintains its headquarters in Richmond, Virginia and has a Washington, D.C. office located approximately two blocks from the EEOB. CHP has been a registered limited liability company in the District of Columbia since 2012. CHP regularly uses Lafayette Square, President's Park, and the area around the EEOB for client meetings and other professional activities related to our preservation law practice. CHP deliberately located its Washington, D.C. office near the EEOB and the White House complex because of the value we place on proximity to these historic resources.

**DECLARATION OF MARION FORSYTH WERKHEISER**     2

Docusign Envelope ID: 202D3719-756F-4826-885A-BEA937B6E581

8. I observed a post by President Donald J. Trump dated August 7, 2025, on the social media platform Truth Social featuring renderings of the EEOB painted white. The post stated: "The beautiful Executive Office Building, opposite the White House, as it would have looked in white stone but, nevertheless, is still beautiful in its original grey stone. What a great beauty it is!" A true and correct copy of that post is attached hereto as Exhibit 2.

9. Subsequently I viewed a televised interview of President Trump on the *Seen and Unseen* segment of the *The Ingraham Angle* (Fox News Channel). During the interview he displayed before and after images of the EEOB painted white, described the existing building as "a really ugly building," and asserted that repainting it would bring out its detail. He stated that he was "getting bids right now from painters" and that the project would involve cleaning, repointing, and painting. A true and correct copy of the interview transcript is attached as Exhibit 3.

10. In the past year, the Trump Administration has undertaken several rapid and largely secret alterations to the White House grounds. For example, in March 2025 President Trump announced his intention to remove a magnolia tree planted in memory of Rachel Jackson, and press reports confirm that the tree was cut down in April 2025. A true and correct copy of an article entitled "A Timeline of Donald Trump's Shocking Changes to the White House Since He Took Office in January," *People* Magazine, November 3, 2025, describing this removal and other alterations, is attached as Exhibit 4. Similarly, a *Vogue* article dated August 3, 2025, reports that bulldozers began removing grass from the White House Rose Garden on June 11, 2025 to prepare it for paving, following a remark by the President that he intended to pave the garden to make it easier

**DECLARATION OF MARION FORSYTH WERKHEISER** 3

for women in high heels. A true and correct copy of that article, titled "They Paved Paradise? A Closer Look at Trump's New White House Rose Garden," is attached as Exhibit 5.

11. The EEOB is a National Historic Landmark and a contributing resource to the Lafayette Square National Historic Landmark District ("Lafayette Square NHLD"). According to the U.S. General Services Administration's ("GSA") web page for the building (updated January 16, 2025), the EEOB was constructed between 1871 and 1888 in the French Second Empire style and it features gray granite walls, cast iron trim, and slate roofs. The page notes that the building was designated a National Historic Landmark in 1969 and is a contributing structure within the Lafayette Square NHLD. A true and correct copy of the GSA web page titled "Eisenhower Executive Office Building, Washington, DC," dated January 16, 2025, is attached as Exhibit 6.

12. A press release issued by the White House Historical Association on December 13, 2023, about a podcast episode entitled "Palace of State: The Eisenhower Executive Office Building" states that the EEOB is a masterpiece of French Second Empire design and emphasizes that its granite, slate, and cast iron exterior has endured for more than 150 years. A true and correct copy of that press release is attached as Exhibit 7.

13. An article published by the White House Historical Association on April 1, 2010, titled "The President's Park (Give or Take a Few Acres)," explains that from the early years of the capital the President's House was intended to stand at the center of a larger President's Park with executive offices flanking it on the east and west. The article describes a 1798 map showing a planned executive office building on the site now occupied by the EEOB and notes that Thomas Jefferson later fenced off the White House

grounds as a separate precinct within the larger park. A true and correct copy of the article is attached as Exhibit 8.

14. The EEOB is outside the area exempted by Section 107 of the NHPA. A 2013 National Park Service map of the Lafayette Square Historic District states that the White House and its grounds are legally exempt from listing in the National Register "according to Section 107 of the National Historic Preservation Act of 1966," but shows the Old Executive Office Building (the EEOB) as a contributing building inside the district. A true and correct copy of the draft National Park Service map entitled "Lafayette Square Historic District" (May 2013) is attached as Exhibit 9. The District of Columbia Historic Preservation Review Board's staff report for Case No. 2213 (September 29, 2022) notes that the White House and White House grounds are legally exempt but identifies the Old Executive Office Building as a contributing building within the district. A true and correct copy of that staff report is attached as Exhibit 10.

15. Based on my professional knowledge and review of federal preservation standards, painting the EEOB would irreparably damage its historic materials and setting. The Secretary of the Interior's Standards for Rehabilitation discourage painting previously unpainted masonry and caution that harsh cleaning methods can permanently harm historic stone. The EEOB's polished granite and slate walls have never been painted, and painting them would require abrasive preparation, which would destroy the original surfaces and trap moisture, leading to cracking and spalling. Once painted, the building would need to be repainted every five to seven years (as explained in a 2025 article titled "How Often Should You Repaint Your Commercial Property?" Federal Performance Contracting Coalition, attached as Exhibit 11), causing ongoing disturbance to the

**DECLARATION OF MARION FORSYTH WERKHEISER**                                                    5

historic fabric. Chemical and mechanical paint removal would further damage the stone (as described in Anne E. Grimmer, *The Cleaning and Waterproof Coating of Masonry Buildings* (1984), attached as Exhibit 12).

16. Neither I nor CHP has received any notice of NEPA or NHPA review for the EEOB repainting project. To my knowledge, no environmental assessment, environmental impact statement, Section 106 consultation, or Section 110(f) process has been initiated. Plaintiffs and the public have been denied the opportunity to comment on the proposed project and to consult on alternatives and mitigation. This denial of procedural rights is itself a harm because we cannot participate in the decision-making process before the project commences.

17. If the EEOB's exterior is painted, CHP and I will suffer immediate and irreparable harm. The unpainted gray stone and contrast with the White House are central to the aesthetic experience we value when attending professional meetings and engaging in recreational activities in Lafayette Square and President's Park. Painting the building will permanently diminish our enjoyment of the area and reduce its value as a recreational and professional setting. It will also impair CHP's ability to conduct business—altering the building will require us to expend additional time and resources to explain the damage to clients and to advocate for remediation. We will also lose the opportunity to participate in NEPA and NHPA processes and to influence the selection of alternatives and mitigation measures.

18. During the Ingraham Angle interview, President Trump stated that he is "getting bids right now from painters" for the EEOB project. Based on my experience with federal projects involving historic buildings, a statement that bids are being solicited typically

**DECLARATION OF MARION FORSYTH WERKHEISER**  6

means that the responsible agency here, the General Services Administration ("GSA"), which manages the EEOB, is taking concrete procurement steps to identify and hire contractors. On that basis, I understand and believe that preparations for the work are already underway and that the project could begin imminently. I am therefore seriously concerned that surface preparation, cleaning, repointing, or painting could commence before the Court has an opportunity to rule on this motion.

19. If the EEOB's historic unpainted granite and slate exterior is painted, I will suffer immediate and irreparable harm. The unpainted gray stone and contrast with the White House are central to the aesthetic experience I value when visiting and working in Lafayette Square NHLD. Painting the EEOB will permanently diminish my enjoyment and professional use of the area. Once the granite is abraded and coated, the original finish cannot be restored. I would suffer personal and professional harm that cannot be compensated with money damages.

20. As a preservation attorney, I am aware that NEPA and NHPA require federal agencies to evaluate the environmental and historic preservation impacts of major federal actions and federal undertakings and to consult with the public before initiating projects that may affect historic properties.

21. If Defendants initiated NEPA and NHPA review for the EEOB project, CHP and I would participate by reviewing environmental and historic preservation documents, submitting written comments, and engaging in any available Section 106 and Section 110(f) consultations, including meetings or site visits. The absence of these processes deprives us of information and opportunities to influence the decision-making process before irreversible work begins.

**DECLARATION OF MARION FORSYTH WERKHEISER**                                                7

22. If the Court enjoins Defendants from proceeding with the EEOB repainting project unless and until they comply with NEPA and NHPA, that relief will reduce the risk of harm to my and CHP's aesthetic, recreational, professional, and organizational interests, and will restore our opportunity to participate in the required environmental and historic-preservation review processes before any irreversible work occurs.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 17, 2025, in Richmond, Virginia.

*Marion Werkheiser*
BB5630CDFCFA436...

_____

Marion Forsyth Werkheiser, Managing Partner
Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW, Suite 1025
Washington, D.C. 20006