# EXHIBIT 14

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CULTURAL HERITAGE PARTNERS, PLLC**, et al., | Civil Action No. 1:25-cv-03969-DLF |
| Plaintiffs, | |
| v. | DECLARATION OF REBECCA MILLER |
| **DONALD J. TRUMP**, et al., | |
| Defendants. | |

## DECLARATION OF REBECCA MILLER

I, REBECCA MILLER, under 28 U.S.C. § 1746, hereby declare on my own behalf and on behalf of the DC Preservation League ("DCPL"):

1. My name is Rebecca Miller. I have personal knowledge of the matters stated herein. I am authorized to make this declaration on behalf of DCPL as well as on my own behalf.

2. I am the Executive Director of the DC Preservation League ("DCPL"), a nonprofit 501(c)(3) organization dedicated to preserving the historic and cultural resources of the District of Columbia. DCPL advocates for the protection, enhancement, and celebration of Washington's built environment and educates the public about the District's architectural and cultural heritage. I have served in this role since 2005. I submit this declaration in support of Plaintiffs' motion for a temporary restraining order and preliminary injunction.

3. DCPL has more than one thousand members, including residents, workers, and businesses located in and around the Lafayette Square National Historic Landmark

District ("Lafayette Square NHLD") and President's Park. Our members regularly visit and enjoy these spaces, including views of the Eisenhower Executive Office Building ("EEOB"). DCPL itself conducts tours, lectures, advocacy events, and educational programs in Lafayette Square and the surrounding area. The aesthetic and historic character of the EEOB's unpainted gray granite façade is central to the experience our members and the public derive from the area. I personally visit and enjoy Lafayette Square, President's Park, and the area around the EEOB, and the unpainted gray granite façade of the EEOB is an important part of the historic setting I value there.

4. The EEOB is a National Historic Landmark ("NHL") and a contributing building within the Lafayette Square NHLD. The EEOB gained NHL status in 1969, with Lafayette Square and surrounding buildings gaining the NHLD status in 1970. A true and correct copy of documentation reflecting those designations is attached as Exhibit 15. The U.S. General Services Administration's web page for the EEOB, updated January 16, 2025, describes the building as an example of French Second Empire architecture constructed between 1871 and 1888, notes that its exterior walls are granite with cast iron trim and slate roofs. A true and correct copy of that page, titled "Eisenhower Executive Office Building, Washington, DC," dated January 16, 2025, is attached as Exhibit 6. The GSA has described the EEOB as "the most elaborate building in the [agency's] inventory." A true and correct copy of that statement, which can be found on page 87 of the publication titled "U.S. GSA, *Extending the Legacy: GSA Historic Building Stewardship*, 2011," is attached as Exhibit 16.

5. A press release issued by the White House Historical Association on December 13, 2023, for the podcast episode "Palace of State: The Eisenhower Executive Office Building,"

describes the EEOB as a masterpiece of Second Empire design and emphasizes that its granite, slate, and cast-iron exterior has stood for more than 150 years. A true and correct copy of that press release is attached as Exhibit 7. An April 1, 2010 article by the White House Historical Association titled "The President's Park (Give or Take a Few Acres)" explains that the President's House was designed to be flanked by executive office buildings and that Thomas Jefferson later fenced off the White House grounds, leaving the executive office sites (including the present EEOB) outside the fenced reservation. A true and correct copy of that article is attached as Exhibit 8.

6. Federal documents confirm that the EEOB is outside the area exempted by Section 107 of the National Historic Preservation Act ("NHPA"). A draft National Park Service map of the Lafayette Square Historic District (May 2013) states that the White House and its grounds are legally exempt from listing in the National Register pursuant to Section 107, but shows the Old Executive Office Building as a contributing building within the district. A true and correct copy of that map is attached as Exhibit 9. Similarly, a staff report prepared by the District of Columbia Historic Preservation Review Board for Case No. 22-13 (Sept. 29, 2022) notes that the White House and its grounds are exempt pursuant to Section 107 but lists the Old Executive Office Building among the contributing buildings. A true and correct copy of that report is attached as Exhibit 10.

7. DCPL is concerned about a pattern of rapid, secretive changes to the White House grounds that undermine public confidence in preservation processes. Press accounts report that President Donald J. Trump ordered the removal of a historic magnolia tree from the White House grounds in March 2025; the tree was cut down in April 2025. A *People* magazine article dated November 3, 2025, titled "A Timeline of Donald Trump's

Shocking Changes to the White House Since He Took Office in January," describes this removal and other alterations. A true and correct copy of that article is attached as Exhibit 4. Another article, published by *Vogue* on August 3, 2025 and titled "They Paved Paradise? A Closer Look at Trump's New White House Rose Garden," reports that bulldozers began tearing up the White House Rose Garden on June 11, 2025 to pave it, following President Trump's comment about making it easier for women in high heels. A true and correct copy of that article is attached as Exhibit 5.

8. On August 7, 2025, President Trump posted renderings on Truth Social showing the EEOB "as it would have looked in white stone." A true and correct copy of that post is attached as Exhibit 2. Shortly thereafter he appeared on *The Ingraham Angle* and again touted his plan, stating that he was "getting bids right now from painters" and that the project would involve cleaning, repointing, and painting. A true and correct copy of the interview transcript is attached as Exhibit 3.

9. Neither DCPL nor its members have received any notice of NEPA or NHPA review for the EEOB project. We are not aware of any environmental assessment, environmental impact statement, Section 106 consultation, or Section 110(f) process. No public meetings or comment opportunities have been announced. To our knowledge, no invitations to consult have been issued to DCPL, other preservation organizations, or interested members of the public. The public is being excluded from the decision-making process.

10. Painting the EEOB would cause irreparable harm to DCPL and its members. The unpainted granite and slate façade of the EEOB are key elements of the Lafayette Square NHLD's character and contribute to the visual and historical experience our members

cherish. Painting the building would permanently alter its appearance, undermine its integrity, and diminish the historic setting of Lafayette Square. Once the original granite and slate surfaces are abraded and coated, they cannot be restored without further damage. *See* Exhibit 18 at 168.

11. If Defendants initiated NEPA and NHPA review for the EEOB project, DCPL would participate by reviewing environmental and historic-preservation documents, submitting written comments, and engaging in any available Section 106 and Section 110(f) consultations, including meetings or site visits. DCPL seeks to advocate for alternatives and mitigation measures that would avoid or minimize harm to the EEOB and the Lafayette Square NHLD. The absence of these processes deprives DCPL and its members of information and of an opportunity to influence the decision-making process before irreversible work begins.

12. As an organization dedicated to preserving Washington's built heritage, DCPL would need to divert time and resources to respond to the EEOB project: monitoring and commenting on after-the-fact actions, educating the public about the loss, and advocating for mitigation or remedial measures. That diversion of resources would frustrate our mission and harm our ongoing programs elsewhere in the District.

13. DCPL's members will also be denied their procedural rights under NEPA and NHPA. Many of our members live, work, or recreate near the EEOB and desire to participate in the Section 106 consultation and NEPA review processes for any project that may alter a National Historic Landmark and the Lafayette Square NHLD. By moving forward without those processes, Defendants deprive our members of information and the

14. opportunity to comment on alternatives and mitigation measures. Once the building is painted, that opportunity will be lost, and the harm cannot be undone.

14. For these reasons, painting the EEOB without lawful review would cause concrete aesthetic, recreational, and informational injuries to DCPL's members and organizational injury to DCPL itself.

15. If the Court enjoins Defendants from proceeding with the EEOB painting project unless and until they comply with NEPA and NHPA, that relief will reduce the risk of harm to DCPL's and its members' aesthetic, recreational, and informational interests, and will restore their opportunity to participate in the required environmental and historic preservation review processes before any irreversible work occurs.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 17, 2025, in Washington, D.C.

Signed by:
*Rebecca Miller*
078A1D2D954A4B1...

Rebecca Miller, Executive Director
DC Preservation League
1328 Florida Ave NW
Washington, D.C. 20009