**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CULTURAL HERITAGE PARTNERS,
PLLC, *et al.,*

             Plaintiffs,

    v.

GENERAL SERVICES
ADMINISTRATION, *et al.*,

           Defendants.

Case No. 1:25-cv-03969-DLF

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING
<u>ORDER, PRELIMINARY INJUNCTION, AND EXPEDITED HEARING</u>**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND......................................................... 3

III.    LEGAL BACKGROUND ....................................................................................... 4

      A.     National Historic Preservation Act ....................................................... 4

      B.     National Environmental Policy Act ....................................................... 5

      C.     Administrative Procedure Act............................................................... 6

      C.     Take Care Clause ................................................................................ 7

IV.     LEGAL STANDARD........................................................................................... 7

V.      ARGUMENT ................................................................................................... 8

      A.     Plaintiffs have failed to demonstrate a likelihood of success on the merits of
              their claims........................................................................................ 8

            1.     Plaintiffs cannot obtain injunctive and declaratory relief against the
                  President for his official conduct, and Plaintiffs fail to state a
                  cognizable claim against the President ....................................... 9

            2.     NPS and Acting Director Bowron are not properly named as
                  defendants because NPS has neither jurisdiction nor maintenance
                  responsibilities over the EEOB ................................................ 11

            3.     Plaintiffs have failed to demonstrate standing to bring any of their
                  claims .................................................................................. 13

             4.     Plaintiffs' claims are unripe for judicial review because any future
                  cleaning, painting, or repointing of the EEOB is uncertain to occur........ 16

             5.     Plaintiffs have failed to identify any final agency action ......................... 19

      B.     Plaintiffs failed to demonstrate a likelihood of imminent irreparable harm......... 20

      C.     The balance of harms and the public interest weigh against injunctive relief...... 20

      D.     If an injunction is granted, Plaintiffs should be required to post a bond .............. 21

VI.     CONCLUSION................................................................................................... 22

i

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs v. Garner,*
    387 U.S. 136 (1967) ............................................................................................ 17, 18

*Abdullah v. Obama,*
    753 F.3d 193 (D.C. Cir. 2014) ................................................................................... 20

*Alaska Dep't of Envtl. Conservation v. EPA,*
    540 U.S. 461 (2004) ................................................................................................... 19

*Am. Petroleum Inst. v. EPA,*
    683 F.3d 382 (D.C. Cir. 2012) ................................................................................... 17

*Atl. States Legal Found. v. EPA,*
    325 F.3d 281 (D.C. Cir. 2003) ................................................................................... 17

*Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.,*
    462 U.S. 87 (1983) ....................................................................................................... 6

*Bldg. & Const. Trades Dep't, AFL-CIO v. Allbaugh,*
    295 F.3d 28 (D.C. Cir. 2002) ....................................................................................... 7

*Citizens for Resp. & Ethics in Wash. v. Trump,*
    302 F. Supp. 3d 127 (D.D.C. 2018) ........................................................................... 10

*City of Alexandria. v. Slater,*
    198 F.3d 862 (D.C. Cir. 1999) ..................................................................................... 4

*CityFed Fin. Corp. v. Off. of Thrift Supervision,*
    58 F.3d 738 (D.C. Cir. 1995) ..................................................................................... 20

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ............................................................................................ 16, 17

*Climate United Fund v. Citibank, N.A.,*
    154 F.4th 809 (D.C. Cir. 2025) ................................................................................. 21

*Ctr. for Biological Diversity v. McAleenan,*
    404 F. Supp. 3d 218 (D.D.C. 2019) ........................................................................... 10

*Dalton v. Specter,*
    511 U.S. 462 (1994) ................................................................................................... 10

*Delta Air Lines, Inc. v. Export-Import Bank of the U.S.,*
    85 F. Supp. 3d 250 (D.D.C. 2015) ............................................................................. 18

*Devia v. Nuclear Regul. Comm'n,*
    492 F.3d 421 (D.C. Cir. 2007) ................................................................................... 18

*Doe 2 v. Trump*,
    319 F. Supp. 3d 539 (D.D.C. 2018) .................................................................. 9

*Doe v. Doe Agency*,
    608 F. Supp. 2d 68 (D.D.C. 2009) .................................................................. 16

*Elk Run Coal Co. v. U.S. Dep't of Lab.*,
    804 F. Supp. 2d 8 (D.D.C. 2011) .................................................................. 19

*Fisheries Survival Fund v. Jewell*,
    236 F. Supp. 3d 332 (D.D.C. 2017) .................................................................. 20

*Food & Drug Admin. v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) .................................................................. 13

*Food & Water Watch, Inc. v. Vilsack*,
    808 F.3d 905 (D.C. Cir. 2015) .................................................................. 13

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992) .................................................................. 9, 11

*Giron v. Zeytuna, Inc.*,
    597 F. Supp. 3d 29 (D.D.C. 2022) .................................................................. 16

*Glob. Health Council v. Trump*,
    153 F.4th 1 (D.C. Cir. 2025) .................................................................. 10, 11

*Greater New Orleans Fair Hous. Action Ctr. v. Dep't of Hous. & Urban Dev.*,
    639 F.3d 1078 (D.C. Cir. 2011) .................................................................. 8

*Harris Cnty., Texas v. Kennedy*,
    786 F. Supp. 3d 194 (D.D.C. 2025) .................................................................. 8

*In re Navy Chaplaincy*,
    534 F.3d 756 (D.C. Cir. 2008) .................................................................. 14

*Indian River Cnty. v. U.S. Dep't of Transp.*,
    945 F.3d 515 (D.C. Cir. 2019) .................................................................. 6

*Karst Envt. Educ. & Prot., Inc. v. EPA*,
    475 F.3d 1291 (D.C. Cir. 2007) .................................................................. 6, 11

*Katz v. Georgetown Univ.*,
    246 F.3d 685 (D.C. Cir. 2001) .................................................................. 8

*League of United Latin Am. Citizens v. Exec. Off. of the President*,
    780 F. Supp. 3d 135 (D.D.C. 2025) .................................................................. 8

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .................................................................. 13, 14

*Marsh v. Or. Nat. Res. Council*,
    490 U.S. 360 (1989) .................................................................. 6, 7

*Mazurek v. Armstrong*,
520 U.S. 968 (1997) ............................................................................................... 8

*Mississippi v. Johnson*,
71 U.S. 501 (1867) ................................................................................................. 9

*Munaf v. Geren*,
553 U.S. 674 (2008) ............................................................................................... 7

*Myers v. United States*,
272 U.S. 52 (1926) ................................................................................................. 7

*N. Am.'s Bldg. Trades Unions v. Dep't of Def.*,
783 F. Supp. 3d 290 (D.D.C. 2025) ..................................................................... 21

*Nat'l Ass'n for Advancement of Colored People v. U.S. Dep't of Educ.*,
779 F. Supp. 3d 53 (D.D.C. 2025) ....................................................................... 13

*Nat'l Ass'n for Fixed Annuities v. Perez*,
219 F. Supp. 3d 10 (D.D.C. 2016) ......................................................................... 8

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
538 U.S. 803 (2003) ............................................................................................. 16

*Nat'l Parks Conserv. Ass'n v. Semonite*,
916 F.3d 1075 (D.C. Cir. 2019) ............................................................................. 5

*Nat'l Treasury Emps. Union v. United States*,
101 F.3d 1423 (D.C. Cir. 1996) ........................................................................... 18

*Neighborhood Ass'n of the Back Bay, Inc. v. FTA*,
463 F.3d 50 (1st Cir. 2006) .................................................................................... 5

*Newdow v. Roberts*,
603 F.3d 1002 (D.C. Cir. 2010) ............................................................................. 9

*Nken v. Holder*,
556 U.S. 418 (2009) ............................................................................................... 8

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) ............................................................................................... 11

*Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Hum. Servs.*,
656 F. Supp. 3d 137 (D.D.C. 2023) ..................................................................... 16

*POET Biorefining, LLC v. EPA*,
970 F.3d 392 (D.C. Cir. 2020) ............................................................................. 17

*Presidio Historical Ass'n v. Presidio Trust*,
811 F.3d 1154 (9th Cir. 2016) ............................................................................... 5

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*,
489 F.3d 1279 (D.C. Cir. 2007) ..................................................................... 13, 14

*Pursuing Am.'s Greatness v. Fed. Election Comm'n*,
 831 F.3d 500 (D.C. Cir. 2016) ................................................................ 21

*R.J. Reynolds Tobacco Corp. v. U.S. FDA.*,
 810 F.3d 827 (D.C. Cir. 2016) ................................................................ 17

*Robertson v. Methow Valley Citizens Council*,
 490 U.S. 332 (1989) .................................................................................. 6

*Seila L. LLC v. Consumer Fin. Prot. Bureau*,
 591 U.S. 197 (2020) .................................................................................. 7

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*,
 605 U.S. 168 (2025) .................................................................................. 6

*Sierra Club v. Costle*,
 657 F.2d 298 (D.C. Cir. 1981) .................................................................. 7

*Swan v. Clinton*,
 100 F.3d 973 (D.C. Cir. 1996) .................................................................. 9

*Texas v. United States*,
 523 U.S. 296 (1998) ................................................................................ 16

*Toilet Goods Ass'n v. Gardner*,
 387 U.S. 158 (1967) ................................................................................ 17

*United Keetoowah Band of Cherokee Indians in Okla. v. FCC*,
 933 F.3d 728 (D.C. Cir. 2019) .................................................................. 5

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
 559 F.2d 841 (D.C. Cir. 1977) .................................................................. 8

*WildEarth Guardians v. Jewell*,
 738 F.3d 298 (D.C. Cir. 2013) .................................................................. 6

*Winter v. Nat. Res. Def. Council, Inc.*,
 555 U.S. 7 (2008) ........................................................................... 7, 8, 21

*Wis. Gas Co. v. FERC*,
 758 F.2d 669 (D.C. Cir. 1985) ................................................................ 20

**Statutes**

5 U.S.C. § 704 ...................................................................................... 17, 25

5 U.S.C. § 706(2)(A) ................................................................................. 10

16 U.S.C § 470f ......................................................................................... 5

42 U.S.C. § 4332 ...................................................................................... 17

42 U.S.C. § 4332(2)(C) ............................................................................... 7

42 U.S.C. § 4336 ........................................................................................ 8

42 U.S.C. § 4336(a) ................................................................................................ 8

42 U.S.C. § 4336(b)(1) ........................................................................................... 8

42 U.S.C. § 4336(b)(2) ........................................................................................... 8

54 U.S.C. § 300320 ................................................................................................ 5

54 U.S.C. § 306108 ........................................................................................... 5, 17

54 U.S.C. § 307104 ................................................................................................ 6

22 Stat. 531 (1883) .............................................................................................. 18

Pub. L. No. 68-478, 43 Stat. 983 (1925) ............................................................. 18

Pub. L. No. 73-109, 48 Stat. 362 (1934) ............................................................. 18

Pub. L. No. 81-152, 63 Stat. 377 (1949) ............................................................. 19

**Rules**

Fed. R. Civ. P. 65(c) ............................................................................................ 21

**Regulations**

36 C.F.R. § 800.3 ................................................................................................... 4

36 C.F.R. § 800.4 ................................................................................................... 5

36 C.F.R. § 800.5 ................................................................................................... 5

36 C.F.R. § 800.6 ................................................................................................... 5

36 C.F.R. §§ 800.2-800.6 ...................................................................................... 5

36 C.F.R. Part 800 (2025) ..................................................................................... 4

**Other Authorities**

4 Fed. Reg. 2727 (July 1, 1939) .......................................................................... 12

## I.    INTRODUCTION

Plaintiffs seek to enjoin the President and agency defendants[1] (collectively, "Defendants") based entirely on a casual remark made in a Fox News interview about painting the Eisenhower Executive Office Building ("EEOB"). Even though the President also said that he might not paint the EEOB at all, Plaintiffs ran to court right after the interview—and now seek to immediately enjoin Defendants from cleaning, painting, or repointing the EEOB pending compliance with the National Environmental Policy Act ("NEPA"), the National Historic Preservation Act ("NHPA"), and the Administrative Procedure Act ("APA"). Compl., ECF No. 1.

But there is nothing for this Court to enjoin. The General Services Administration ("GSA")—the agency with statutory authority to manage the EEOB—has now made clear that it will not take any of the above actions before March 1, 2026, if at all. Ex. A ¶ 6 (Decl. of Andrew Heller) (Nov. 26, 2025). The National Park Service ("NPS") and Acting Director Jessica Bowron, moreover, lack statutory authority to take those actions. That leaves the President, but it is beyond cavil that courts may not enjoin the President for official conduct, much less under the APA and for hypothetical future conduct that may not even occur.

Even if there were a defendant to enjoin, Plaintiffs do not satisfy the standards for preliminary injunctive relief for at least four reasons. First, Defendants have taken no final agency action. Second, Defendants have taken no action that is ripe for judicial review. Third, Plaintiffs point to no action by Defendants causing Plaintiffs an actual or imminent injury giving

---

[1]    Agency defendants are the GSA; Michael J. Rigas, in his official capacity as Acting Administrator of GSA; the NPS, and Jessica Bowron, in her official capacity as Acting Director of NPS. ECF. No 1, Compl.

rise to standing. And fourth, Plaintiffs otherwise fail to satisfy the standard for preliminary injunctive relief.

For all these reasons, preliminary injunctive relief is entirely unwarranted. The President's passing isolated statements about possible future projects at the EEOB are entirely preliminary and not attributable to any of the Defendants in this action against whom Plaintiffs may allege a colorable claim. Rather, GSA has attested that, as of this filing, it "has not authorized or engaged in the physical actions of cleaning, painting, or repointing the EEOB" and "has not issued solicitations for a contract, executed a contract, selected a contractor, or drafted design or construction drawings related to such work." Ex. A ¶ 5. It has also stated that it will not engage in cleaning, painting, or repointing the EEOB, or delegate its authority or utilize its gift authority for the same, prior to March 1, 2026. *Id.* ¶ 6.

Moreover, Defendants intend to file a motion to dismiss Plaintiffs' entire Complaint by the January 20, 2026 deadline to do so.[2] This case should proceed on a typical Rule 12 briefing schedule under this Court's rules. Because GSA has committed to taking no action until March 1, 2026, the Court would be in a position to resolve both Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction ("PI Motion") and the United States' anticipated motion to dismiss at the same time. This counsels in favor of holding a combined hearing in February 2026, rather than the current expedited December 8th hearing.

---

[2]    The USAO for the District of Columbia was served with Plaintiffs' Complaint on November 18, 2025. Pursuant to this Court's rules, Defendants' deadline to file a Rule 12 motion is January 20, 2026, with briefing concluding on February 10, 2026, nearly three weeks before the earliest date by which GSA may clean, paint, or repoint the EEOB, if it decides to do so. Ex. A, ¶ 6.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs allege five causes of action. Compl. ¶¶ 75–129. In Count 1, Plaintiffs allege that GSA and NPS have violated NEPA and the APA by planning to paint the exterior of the EEOB without first conducting a NEPA process. *Id.* ¶¶ 75–85. In Count 2, Plaintiffs allege that Defendants have violated Section 106 of the NHPA and the APA by planning to clean, paint, and repoint the exterior of the EEOB without first initiating the review process laid forth in the regulations implementing Section 106. *Id.* ¶¶ 86–98. In Count 3, Plaintiffs allege that Defendants have violated Section 110(f) of the NHPA and the APA by planning to clean, paint, and repoint the exterior of the EEOB without first initiating the review process laid forth in the regulations implementing Section 110(f). *Id.* ¶¶ 99–110. In Count 4, Plaintiffs allege that GSA and NPS have violated the APA by planning to clean, paint, and repoint the exterior of the EEOB without first initiating processes under NEPA and Sections 106 and 110(f) of the NHPA. *Id.* ¶¶ 111–21. In Count 5, Plaintiffs allege that the President has violated Article II, Section 3, of the United States Constitution, which "obligates [him] to 'take Care that the Laws be faithfully executed,'" by directing federal officers and agencies to clean, paint, and repoint the exterior of the EEOB without first complying with NEPA and the NHPA. *Id.* ¶¶ 122–29 (citation omitted).

On November 17, 2025, the Court issued a Minute order stating that, "to the extent [P]laintiffs intend to seek emergency relief, they shall file any such motion" by November 21, 2025. Minute Order (Nov. 17, 2025). Later that same day, Plaintiffs filed their PI Motion. ECF. No. 7. Plaintiffs' Motion seeks relief based on all counts in their Complaint. ECF. No. 7-1, Pls.' Mem. of P. & A. in Support of Pls.' Mot. for Temp. Restraining Order, Prelim. Inj., and Expedited Hr'g ("Pls.' Mem."). Plaintiffs seek the same relief in their Complaint and their PI Motion. *Compare* Compl, Prayer for Relief ¶¶ A–E, *with* Pls.' Mem. at 11, 51–52, 54.

On November 18, 2025, Defendants filed a declaration executed by Andrew Heller, Acting Commissioner of the Public Buildings Service, GSA. ECF. No. 11. Mr. Heller stated in his declaration that "GSA will not authorize or engage in the physical actions of power washing/cleaning, painting, or repointing the Eisenhower Executive Office Building before December 31, 2025." ECF. No. 11-1 ¶ 4. Shortly after Defendants filed Mr. Heller's declaration, the Court issued a Minute Order setting a briefing schedule for Plaintiffs' PI Motion and ordering Defendants to respond on or before November 26, 2025. Minute Order (Nov. 18, 2025). GSA extended its commitment not to proceed with any exterior cleaning, painting, or repointing at the EEOB until March 1, 2026. Ex. A ¶ 6. Defendants communicated this extended timeframe to Plaintiffs' counsel via email on November 25, 2025.

## III.    LEGAL BACKGROUND

### A.    National Historic Preservation Act

Section 106 of the NHPA is "essentially a procedural statute" that does not impose substantive standards but "requires that agencies 'take into account the effect of [an] undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register [of Historic Places].'" *City of Alexandria. v. Slater*, 198 F.3d 862, 871 (D.C. Cir. 1999) (alteration in original) (citing 16 U.S.C. § 470f (1999).[3] The NHPA defines an undertaking as any "project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a Federal agency." 54 U.S.C. § 300320.

Advisory Council on Historic Preservation ("Council") regulations govern federal agency compliance with Section 106. *See* 36 C.F.R. Part 800 (2025). The regulations set forth a four-step process: (1) initiation (36 C.F.R. § 800.3); (2) identification of historic properties potentially

---

[3]     16 U.S.C § 470f has been recodified to 54 U.S.C. § 306108 as of December 19, 2014.

affected (§ 800.4) (; (3) assessment of any effects, including adverse effects (§ 800.5) (; and (4) efforts to resolve any adverse effects (§ 800.6) (*See United Keetoowah Band of Cherokee Indians in Okla. v. FCC*, 933 F.3d 728, 745 (D.C. Cir. 2019). Agencies are to consult with the identified consulting parties in the second, third, and fourth steps. 36 C.F.R. §§ 800.2-800.6.

Section 107 of the NHPA exempts certain federal buildings, including the White House and its grounds, from operation of the NHPA, including Section 106. *See* 54 U.S.C. § 307104. In a 1994 Programmatic Agreement between GSA, the Council, and the D.C. State Historic Preservation Office regarding historic preservation in GSA's National Capital Region, the Council "recognizes the Old Executive Office Building as part of 'the White House and its grounds' pursuant to Section 107 of the [NHPA]." Ex. B at 3 (1994 Programmatic Agreement).

Section 110(f) of the NHPA "provides that for any project 'directly and adversely affecting any National Historic Landmark,' the agency must 'to the maximum extent possible undertake such planning and actions as may be necessary to minimize harm to the landmark.'" *Nat'l Parks Conserv. Ass'n v. Semonite*, 916 F.3d 1075, 1088 (D.C. Cir. 2019) (quoting 54 U.S.C. § 306107), *amended on reh'g in part*, 925 F.3d 500 (D.C. Cir. 2019). As with Section 106, courts have held that this provision is not a substantive mandate and instead sets a heightened procedural standard for potential impacts on National Historic Landmarks. *See Presidio Historical Ass'n v. Presidio Trust*, 811 F.3d 1154, 1169 (9th Cir. 2016); *Neighborhood Ass'n of the Back Bay, Inc. v. FTA*, 463 F.3d 50, 64 (1st Cir. 2006).

B.    **National Environmental Policy Act**

NEPA focuses governmental and public attention on potential environmental effects from any proposed "major Federal actions." 42 U.S.C. § 4332(2)(C). But like the NHPA, NEPA does not mandate particular results; it prescribes a process to ensure that federal decision-makers

consider, and that the public is informed about, potential environmental consequences of a proposed action. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989). To meet NEPA's purposes, agencies prepare an environmental review document. 42 U.S.C. § 4336. An agency prepares an environmental impact statement for a proposed action "that has a reasonably foreseeable significant effect on the quality of the human environment," *id.* § 4336(b)(1), or an environmental assessment for a proposed action "that does not have a reasonably foreseeable significant effect on the quality of the human environment, or if the significance of such effect is unknown," *id*. § 4336(b)(2). An agency may also determine that an environmental document is not required if certain exceptions apply. *Id.* § 4336(a).

Judicial review of agency NEPA compliance is deferential. *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 180 (2025); *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 377 (1989). Under NEPA, agencies may decide that "other values outweigh the environmental costs" and may move forward with a proposed action so long as they undergo the necessary process. *Robertson*, 490 U.S. at 350. The court's role is "simply to ensure that the agency has adequately considered and disclosed the environmental impact of its actions and that its decision is not arbitrary or capricious." *Indian River Cnty. v. U.S. Dep't of Transp.*, 945 F.3d 515, 527 (D.C. Cir. 2019) (citing *WildEarth Guardians v. Jewell*, 738 F.3d 298, 308 (D.C. Cir. 2013)); *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 97–98 (1983)).

## C.    Administrative Procedure Act

Because the NHPA and NEPA do not provide a private right of action, judicial review is governed by the APA. *See Karst Envt. Educ. & Prot., Inc. v. EPA*, 475 F.3d 1291, 1295 (D.C. Cir. 2007). The APA authorizes a reviewing court to "hold unlawful and set aside" final agency

actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Marsh*, 490 U.S. at 378.

### D.    Take Care Clause

Article II, Section 3 of the Constitution requires that the President "shall take Care that the Laws be faithfully executed." This provision "'grants to the President' the 'general administrative control of those executing the laws, including the power of appointment and removal of executive officers.'" *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 214 (2020) (quoting *Myers v. United States*, 272 U.S. 52, 164 (1926)). The President's "faithful execution of the laws enacted by the Congress, however, ordinarily allows and frequently requires the President to provide guidance and supervision to his subordinates." *Bldg. & Const. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 32 (D.C. Cir. 2002). Accordingly, the President "may properly supervise and guide their construction of the statutes under which they act in order to secure that unitary and uniform execution of the law which Article II of the Constitution evidently contemplated in vesting general executive power in the President alone." *Sierra Club v. Costle*, 657 F.2d 298, 406, n.524 (D.C. Cir. 1981). Such officers are "duty-bound to give effect to the policies embodied in the President's direction, to the extent allowed by the law." *Allbaugh*, 295 F.3d at 32.

## IV.    LEGAL STANDARD

A "preliminary injunction is an 'extraordinary and drastic remedy.'" *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citation omitted). An injunction should be entered only "upon a clear showing that the [movant] is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the moving party must demonstrate (1) that it is likely to succeed on the merits of its claims; (2) that it is likely to suffer an

irreparable injury in the absence of injunctive relief; (3) that the balance of equities tips in its favor; and (4) that the proposed injunction is in the public interest. *Id.* at 20; *see also Katz v. Georgetown Univ.*, 246 F.3d 685, 687–88 (D.C. Cir. 2001). The same substantive standards apply for both temporary restraining orders and preliminary injunctions. *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977). "The last two factors merge when the government is a party." *Harris Cnty., Texas v. Kennedy*, 786 F. Supp. 3d 194, 203 (D.D.C. 2025), citing *Nken v. Holder*, 556 U.S. 418, 435 (2009). A movant "has the burden to show that all four [*Winter*] factors, taken together, weigh in favor of the injunction." *League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 169 (D.D.C. 2025) (alteration in original) (citation omitted).

Preliminary injunctive relief "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). Plaintiffs must satisfy each requirement, and the D.C. Circuit has indicated that "a likelihood of success is an independent, freestanding requirement for a preliminary injunction." *Nat'l Ass'n for Fixed Annuities v. Perez*, 219 F. Supp. 3d 10, 13 (D.D.C. 2016) (citation omitted). "[W]hen a plaintiff has not shown a likelihood of success on the merits, there is no need to consider the remaining factors" required for a preliminary injunction. *Greater New Orleans Fair Hous. Action Ctr. v. Dep't of Hous. & Urban Dev.*, 639 F.3d 1078, 1088 (D.C. Cir. 2011).

V.    **ARGUMENT**

    A.    **Plaintiffs have failed to demonstrate a likelihood of success on the merits of their claims.**

1.      **Plaintiffs cannot obtain injunctive and declaratory relief against the President for his official conduct, and Plaintiffs fail to state a cognizable claim against the President.**

Plaintiffs have not and cannot succeed on their claims against the President because no court may award injunctive and/or declaratory relief for his official conduct. Further, Plaintiffs can state no cognizable claim for relief against the President under the APA, as the President is not subject to the APA. Because relief is not available against the President, Defendants intend to move to dismiss the President as a named Defendant to this action by separate motion.

In naming the President, Plaintiffs seek an order pre-emptively enjoining the President from taking a non-ministerial action. As this Court has explained, "[s]ound separation-of-power principles counsel the Court against granting these forms of relief against the President directly." *Doe 2 v. Trump*, 319 F. Supp. 3d 539, 541 (D.D.C. 2018), citing *Franklin v. Massachusetts*, 505 U.S. 788, 802–03 (1992); *see also Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010) ("With regard to the President, courts do not have jurisdiction to enjoin him."). Indeed, in *Franklin* the Supreme Court affirmed the presumptive unavailability of injunctive relief against the President for performance of his official duties, noting that "in general 'this court has no jurisdiction of a bill to enjoin the President in the performance of his official duties.'" 505 U.S. at 802–03 (quoting *Mississippi v. Johnson*, 71 U.S. 501 (1867)). The same principle applies to declaratory relief, as a "court—whether via injunctive or declaratory relief—does not sit in judgment of a President's executive decisions." *Newdow*, 603 F.3d at 1012; *see also Swan v. Clinton*, 100 F.3d 973, 976 n.1 (D.C. Cir. 1996) ("Although the following discussion is couched in terms of our ability to grant injunctive relief against the President, similar considerations regarding a court's power to issue relief against the President himself apply to Swan's request for a declaratory judgment."). And, to the extent any exception to this rule pre-dating *Franklin*

survives at all, it is limited to claims seeking to mandate ministerial actions, not prospective injunctive relief as sought by the PI Motion. *See Citizens for Resp. & Ethics in Wash. v. Trump*, 302 F. Supp. 3d 127, 130 (D.D.C. 2018) (discussing the distinction between ministerial and policy-making acts in *Mississippi*), *aff'd*, 924 F.3d 602 (D.C. Cir. 2019).

This conclusion applies with particular strength where, as here, Plaintiffs cite no specific statutory duty as to the President, but instead, cite the Take Care Clause of the Constitution and gesture at duties imposed by statute not on the President but on agencies. *See* Pls.' Mem. at 20–21. Plaintiffs' Motion is framed as a constitutional claim but is, in fact, a request that the Court generically order the President to comply with certain procedural statutes——the NHPA and NEPA—that, to boot, do not even bind him. *See infra* § V.A. 2. Plaintiffs may not transform statutory claims into constitutional ones simply by applying a different label to them. *See Dalton v. Specter*, 511 U.S. 462, 474 (1994) ("[I]f every claim alleging that the President exceeded his statutory authority were considered a constitutional claim, the exception identified in *Franklin* would be broadened beyond recognition"); *see also Glob. Health Council v. Trump*, 153 F.4th 1, 16–17 (D.C. Cir. 2025) (finding that "statutory claims cannot be transformed into constitutional ones" and that a claim of the President's violation of the Constitution is not reviewable where "the constitutional claim is predicated on underlying statutory violations").

Even if Plaintiffs could get past the bar on enjoining the President, they would be unlikely to prevail on their claim under the Take Care Clause. In the first place, it is doubtful that the Take Care Clause provides a justiciable basis for raising claims against the President. Whether such claims exist at all is "open to debate." *Citizens for Resp.*, 302 F. Supp. 3d at 130. What is clear is that "separation-of-powers principles … drive evaluations of claims brought under the Constitution's Take Care Clause." *Ctr. for Biological Diversity v. McAleenan*, 404 F.

Supp. 3d 218, 244 (D.D.C. 2019) (citation omitted). And Plaintiffs' proposed injunction would inject the judiciary into a purely executive function—advance planning concerning compliance with relevant laws in the event future executive decisions about the management of executive resources render those laws applicable. This is exactly the sort of "general order[] compelling compliance with broad statutory mandates" that the Supreme Court has stated is unavailable. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66–67 (2004) (discussing limitations on mandamus and APA review).

Plaintiffs' claims against the President are not rescued by the NHPA and NEPA. These statutes govern "[t]he head of any Federal agency," 54 U.S.C. § 306108, and "all agencies of the Federal Government," 42 U.S.C. § 4332, not the President. And neither the NHPA nor NEPA includes a private right of action, so relief can only be had under the APA. *See Karst Env't Educ. & Prot., Inc.*, 475 F.3d at 1295. The APA, in turn, provides for judicial review of only "final agency action," not presidential action. 5 U.S.C. § 704. The Supreme Court has made clear that "the President is not an agency within the meaning of the [APA]." *Franklin*, 505 U.S. at 796. Plaintiffs may not proceed with claims against the President where the statutes they allege to have been violated impose duties on federal agencies. Instead "Presidential action may be reviewed through APA challenges to final agency action by subordinates implementing the President's directives where such review is not otherwise precluded." *Glob. Health Council*, 153 F.4th at 17.

Because the Court cannot grant any relief against the President in this case, Plaintiffs are unlikely to succeed on the merits of their claims against him.

> **2.    NPS and Acting Director Bowron are not properly named as defendants because NPS has neither jurisdiction nor maintenance responsibilities over the EEOB.**

Plaintiffs are also not likely to succeed on the merits of their claims against NPS or Acting Director Bowron because NPS does not have administrative jurisdiction over the EEOB and has had no management responsibility over the EEOB since 1950 at the latest.[4] The Reorganization Plan No. 18 of 1950 transferred "[a]ll functions with respect to the operation, maintenance, and custody" of federal buildings to GSA, with certain exceptions not relevant here. Reorg. Plan No. 18 of 1950, § 2, 64 Stat. 1270, 1270–71. GSA remains responsible for the EEOB to this day. *See id.*; *see also* Ex. A ¶ 3.

The fact that the EEOB sits within a National Historic Landmark District ("NHLD"), *see* Pls.' Mem. at 11, does not change the fact that Reorganization Plan No. 18 placed decision-

---

[4]    NPS's responsibility for the EEOB in fact ended before 1950. Congress initially assigned responsibility for maintenance of EEOB to a "superintendent" to be "detailed" from "the Engineer Corps of the Army or the Navy," acting "under direction of the Secretaries of State, War, and Navy, who are hereby constituted a commission for the purposes of the care and supervision of said building." Act of March 3, 1883, ch. 128, 22 Stat. 531, 553. In 1925, Congress transferred the duties of "the Chief of Engineers of the United States Army" related to "the construction, maintenance, care, custody, policing, upkeep, or repair of public buildings, grounds, parks, monuments, or memorials in the District of Columbia" to "the Director of Public Buildings and Public Parks of the National Capital." Act of Feb. 26, 1925, Pub. L. No. 68-478 § 1, 3, ch. 339, 43 Stat. 983.  In 1933, President Franklin D. Roosevelt reassigned the responsibilities of the agency known as "Public Buildings and Public Parks of the National Capital" to "the Office of National Parks, Buildings, and Reservations of the Department of the Interior." Exec. Order No. 6166, sec. 2, para. 2 (June 10, 1933), *available at* https://www.archives.gov/federal-register/codification/executive-order/06166.html. The following year, Congress renamed the Office of National Parks, Buildings, and Reservations as the National Park Service. Department of the Interior Appropriations Act, Pub. L. No. 73-109, ch. 38, 48 Stat. 362, 389 (1934). Six years later in 1939, section 303(a) of Reorganization Plan No. 1 of 1939 transferred to the Commissioner of Public Buildings, under the supervision of the Federal Works Administrator, NPS's Branch of Buildings Management and its functions (except those related to monuments and memorials) together with NPS's functions in the District of Columbia in connection with the general assignment of space, the selection of sites for public buildings, and the determination of the priority in which the construction or enlargement of public buildings. Reorg. Plan No. 1 of 1939, § 303(a), 4 Fed. Reg. 2727, 2729 (July 1, 1939). Then, in 1949, Congress transferred the duties of the Commissioner of Public Buildings and the Federal Works Administrator to GSA. Federal Property and Administrative Services Act of 1949, Pub. L. No. 81-152, ch. 288, § 103(a), 63 Stat. 377, 380.

making jurisdiction and responsibility for maintenance of the EEOB with GSA—including cleaning, painting, and repointing. While the White House and President's Park are an administrative unit within the National Park System, the EEOB is not part of that administrative unit. *See* Ex. C ¶¶ 5–11 (Decl. of Jennifer T. Nersesian) (Nov. 26, 2025).

Plaintiffs are therefore unlikely to succeed on the merits of any of the Counts as brought against NPS, as the agency and its officials lack decision-making authority over the EEOB and are not responsible for its maintenance. Accordingly, Defendants intend to move to dismiss the NPS and Acting Director Bowron as named Defendants to this action by separate motion.

### 3.      Plaintiffs have failed to demonstrate standing to bring any of their claims.

"To obtain a preliminary injunction, '[a] plaintiff must show a likelihood of success encompass[ing] not only substantive theories but also establishment of jurisdiction, including standing to sue.'" *Nat'l Ass'n for Advancement of Colored People v. U.S. Dep't of Educ.*, 779 F. Supp. 3d 53, 60–61 (D.D.C. 2025) (citation omitted). Standing to sue is part of the constitutional separation of powers that limits the jurisdiction of federal courts to actual cases or controversies and serves to "to identify those disputes which are appropriately resolved through the judicial process," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). The burden of proving standing falls on Plaintiffs, who must "demonstrate (i) that [they have] suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 368 (2024). "In order to have suffered an injury in fact, Plaintiffs must have suffered an injury that is '(1) concrete, (2) particularized, and (3) actual or imminent.'" *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 914 (D.C. Cir. 2015) (quoting *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489

F.3d 1279, 1292 (D.C. Cir. 2007)). To be imminent, the purported injury must be "certainly impending and immediate—not remote, speculative, conjectural, or hypothetical." *Id.*

The injury that Plaintiffs cite is primarily aesthetic. For example, Plaintiff Marion Forsyth Werkheiser, on her own behalf and on behalf of Cultural Heritage Partners ("CHP"), states that she "lead[s] or participate[s] in visits in the EEOB area to illustrate federal preservation issues, and I use the building's unpainted masonry and relationship to the White House complex as an illustrative example of the success of historic preservation." ECF No. 7-3 ¶ 6; *see also* ECF No. 7-15 ¶ 6, Decl. of Greg Werkheiser ("The EEOB's gray granite façade, mansard roofs, and ornate details are among the reasons I am drawn to the area. I use these spaces for aesthetic, recreational, professional, and educational purposes, and I intend to continue doing so."). Plaintiffs assert that the purported "visual and aesthetic losses are personal, concrete injuries, not abstract concerns." Pls.' Mem. at 46.

Plaintiffs' asserted aesthetic injuries are the sort of "remote, speculative, conjectural or hypothetical" injuries that cannot give rise to standing. *In re Navy Chaplaincy*, 534 F.3d 756, 760 (D.C. Cir. 2008), citing *Lujan*, 504 U.S. at 560. In a futile effort to establish imminence, Plaintiffs engage in two logical jumps: first, they note that the President has posted mockups on social media and described in an interview that he is "getting bids right now from painters." Pls.' Mem. at 53 (citing Pls.' Exs. 2, 3, 14). Plaintiffs conclude without any further evidence that this "description[] leave[s] little doubt that this is not a tentative idea, but an active undertaking he expects to see carried out." *Id.* Next, Plaintiffs note that they have not seen evidence of a NEPA or NHPA process for this hypothetical project and conclude from this lack of evidence that the project will occur without any NEPA or NHPA activities. Plaintiffs fail to demonstrate an imminent injury sufficient for standing, because each of their inferences is faulty.

First, solicitation of bids from painters is a far cry from an order to paint the EEOB. And the President himself confirmed that he was only exploring the idea. In the same interview that Plaintiffs misquote, he said that he did not even know whether the project would be undertaken:

"Q: And when is that planned for?

A: "**I don't even know if I'm going to do it yet…**"[5]

If every preliminary investigation of a potential course of governmental action were sufficient to establish an imminent injury, the standing doctrine would be meaningless.

Second, what Plaintiffs identify as a legal flaw—that there is, *e.g.*, no public NEPA or NHPA analysis—is instead an indicator that no agency action is imminent. Defendants have not committed to a course of action that would trigger obligations to conduct NEPA or NHPA analysis, let alone taken steps to implement such non-existent plans. Even if the factual allegations in Plaintiffs' motion are taken as true, Plaintiffs only describe preliminary and contingent steps in government deliberations. As an instructive example, Plaintiffs identify that the President stated in a media interview that "he is 'getting bids right now from Painters.'" Pls.' Mem. at 27. Plaintiffs cite no caselaw suggesting that getting bids on a hypothetical project triggers NEPA or NHPA obligations. Instead, Plaintiffs simply make the conclusory statement that the President was describing "imminent cleaning, repointing, and painting," *id.* at 31, and invite the Court to preemptively assume that the Government will not comply with relevant statutory mandates. They offer no support for such a sweeping contention.

---

[5]    *See* https://www.foxnews.com/video/6385030226112 at 2:00–2:07. Plaintiffs misquote the segment in a transcript attached as ECF No. 7-5, stating that the President indicated "I don't even know **when** I'm going to do it yet" suggesting incorrectly that it is a question of when rather than if.

It is Plaintiffs' burden to show that their injury is "'certainly impending,' rather than merely 'possible.'" *Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Hum. Servs.*, 656 F. Supp. 3d 137, 150 (D.D.C. 2023), quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). They cannot do so here: GSA has affirmed it will take no action before March 1, 2026, if at all, *see* Ex. A ¶ 6, and the President has said it may not happen. Even if the painting project itself were imminent, Plaintiffs' fear that the project will be undertaken without lawful process rests on mere speculation.

### 4. Plaintiffs' claims are unripe for judicial review because any future cleaning, painting, or repointing of the EEOB is uncertain to occur.

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Doe v. Doe Agency*, 608 F. Supp. 2d 68, 72 (D.D.C. 2009) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). "Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (citation omitted). Ripeness has two facets: constitutional, which asks whether a plaintiff has alleged an injury sufficient to invoke subject-matter jurisdiction, and prudential, which "concerns the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Giron v. Zeytuna, Inc.*, 597 F. Supp. 3d 29, 54 (D.D.C. 2022) (cleaned up).

"Constitutional ripeness is subsumed into the Article III requirement of standing, which requires a petitioner to allege inter alia an injury-in-fact that is 'imminent' or 'certainly

impending.'" *POET Biorefining, LLC v. EPA*, 970 F.3d 392, 403 (D.C. Cir. 2020) (citation omitted); *see also Clapper*, 568 U.S. at 414 (indicating future injury must be "certainly impending," not just hypothetical, to support Article III standing); *R.J. Reynolds Tobacco Corp. v. U.S. FDA.*, 810 F.3d 827, 830 (D.C. Cir. 2016) ("Both doctrines address the imminence issue, using the same focus on contingencies that may render the risk of harm too slight."). Plaintiffs' claims are constitutionally unripe for the same reasons that Plaintiffs lack standing—they have failed to show any actual or imminent injury.

"[T]he doctrine of prudential ripeness ensures that Article III courts make decisions only when they have to, and then, only once." *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012). In evaluating ripeness, courts look to "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs v. Garner*, 387 U.S. 136, 148–49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Under the fitness prong of this test, courts must consider "[1] whether [the claim] is 'purely legal, [2] whether consideration of the issue would benefit from a more concrete setting, and [3] whether the agency's action is sufficiently final.'" *Atl. States Legal Found. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003) (citation omitted). Under the hardship prong, courts must ask whether the challenged administrative action is likely to have a direct and immediate effect on the "primary conduct" of the plaintiff. *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164 (1967). Here, Plaintiffs fail to establish prudential ripeness under both the fitness and hardship prongs of the test.

As to the fitness prong, Plaintiffs' claims are not purely legal because future agency action may supplant the current analysis, and factual issues would undoubtedly benefit from further development. Plainly, many facts—including, crucially, whether painting of the EEOB

will proceed in any form at all, let alone what analyses would support such a project—would benefit from factual development. *See Devia v. Nuclear Regul. Comm'n*, 492 F.3d 421, 424 (D.C. Cir. 2007) ("[W]hen an agency decision may never have 'its effects felt in a concrete way by the challenging parties,' the prospect of entangling ourselves in a challenge to such a decision is an element of the fitness determination as well." (quoting *Abbott Labs*, 387 U.S. at 148–49)). As GSA noted, not only has it not "authorized or engaged in the physical actions of cleaning, painting, or repointing the EEOB," it has also not "issued solicitations for a contract, executed a contract, selected a contractor, or drafted design or construction drawings related to such work. Ex. A ¶ 5. Ultimately, if the decision is made not to clean, paint, or repoint the EEOB, that would eliminate the need for future judicial intervention altogether. *See Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996) ("[T]he usually unspoken element of the rationale underlying the ripeness doctrine: [i]f we do not decide it now, we may never need to.").

As to the hardship prong, the uncertainty surrounding whether the project challenged will even occur likewise eliminates any hardship to Plaintiffs. They suffer no hardship from deferred judicial review, as they can proceed with claims challenging any final agency action with which they disagree, if and when GSA authorizes a final project to proceed. But delayed review is, by definition, no hardship in and of itself. *See Delta Air Lines, Inc. v. Export-Import Bank of the U.S.*, 85 F. Supp. 3d 250, 272–73 (D.D.C. 2015) ("If the only hardship a plaintiff will endure as a result of delaying consideration of the disputed issue is the burden of having to engage in another suit, this will not suffice to overcome an agency's ripeness challenge." (citation modified)). Any judicial review should await an actual final decision, following the completion of whatever level of NHPA and NEPA compliance GSA determines is appropriate. It should not be based upon

Plaintiffs' speculation as to what that decision and accompanying NHPA and NEPA compliance will be.

In sum, Plaintiffs' claims are constitutionally and prudentially unripe, given the lack of an actual or imminent injury, the fact that the issues would benefit from further factual development before undergoing judicial review, and the lack of harm to Plaintiffs from withholding review until the factual circumstances surrounding the hypothetical project are more developed.

**5. Plaintiffs have failed to identify any final agency action.**

An action can only be brought under the APA where there is a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. It follows that "to properly state a claim under the APA . . . Plaintiffs must first identify the final agency action being challenged." *Elk Run Coal Co. v. U.S. Dep't of Lab.*, 804 F. Supp. 2d 8, 30 (D.D.C. 2011). The identified agency action must "mark the consummation of the agency's decision-making process, and must either determine rights or obligations or occasion legal consequences." *Id.* (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 482 (2004)).

For the same reasons Plaintiffs cannot establish standing and ripeness, Plaintiffs have not identified a final agency action, and accordingly, no justiciable claim under the APA is before the Court. Plaintiffs refer repeatedly to a "plan" to paint the EEOB. *See, e.g.*, Pls.' Mem. at 25 ("Defendants have initiated planning."), 31 ("Defendants' public statements and planning activity."), 33 ("Defendants have publicly described cleaning . . . and painting plans."). But the purported "plan" which Plaintiffs identify merely reflects a preliminary statement made by the President in passing about a project that may or may not ever occur. While at some point in the future the Government may take final agency action, no such final agency action currently exists,

and none is imminent. *See supra* § V.A.3. Accordingly, this Court lacks jurisdiction over Plaintiffs' claims for lack of final agency action.

### B. Plaintiffs failed to demonstrate a likelihood of imminent irreparable harm.

Plaintiffs also cannot demonstrate, as they must as a condition to a preliminary injunction, that they are "likely to suffer irreparable harm in the absence of preliminary relief." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014). The "standard for irreparable harm is particularly high in the D.C. Circuit." *Fisheries Survival Fund v. Jewell*, 236 F. Supp. 3d 332, 336 (D.D.C. 2017). If a party makes no showing of imminent irreparable injury, the Court may deny the motion for injunctive relief without considering the other factors. *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995); *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam) (explaining that because movants could not establish irreparable harm, the court need not address any of the other applicable factors).

Here, for the many reasons already discussed, Plaintiffs have failed to demonstrate irreparable harm. The President has expressed in passing a preliminary interest in potentially painting the EEOB, while acknowledging that he does not know if the project will actually proceed. And GSA has attested that it will not undertake or approve cleaning, painting, or repointing on the EEOB before March 1, 2026, if at all. Plaintiffs evince no irreparable harm that would merit the extraordinary relief of a preliminary injunction.

### C. The balance of harms and the public interest weigh against injunctive relief.

Because Plaintiffs have not shown a likelihood of success on the merits, this Court need not consider the balance of harms and the public interest in issuance of an injunction. However, because this action was filed prematurely, and because GSA has committed to taking no action until March 1, 2026, the balance of harms and the equities is at most neutral.

In assessing these factors, courts "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. Where a "movant seeks to enjoin the government, the final two factors merge 'because the government's interest is the public interest.'" *N. Am.'s Bldg. Trades Unions v. Dep't of Def.*, 783 F. Supp. 3d 290, 314 (D.D.C. 2025), quoting *Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016). Here, because Plaintiffs' sole alleged injury is aesthetic, and GSA has committed to not making irreversible aesthetic changes to the EEOB before March 1, 2026, there is presently no harm to the Plaintiffs to balance.

It is additionally in the public interest to enforce jurisdictional limits on courts, including the doctrines of standing and ripeness, and uphold the separation of powers under the Constitution, which precludes improper infringement on presidential authority. As the D.C. Circuit has noted, "[t]he public interest favors limiting federal courts to the jurisdiction and remedies provided by Congress." *Climate United Fund v. Citibank, N.A.,* 154 F.4th 809, 830 (D.C. Cir. 2025). For these reasons, the balance of the harms and the public interest also weigh against preliminary injunctive relief.

**D.    If an injunction is granted, Plaintiffs should be required to post a bond.**

Before a court may award preliminary injunctive relief, a plaintiff must post a compensatory security bond. Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."). If the Court concludes that injunctive relief is warranted, the Court should require Plaintiffs to post a security in an amount that the Court considers proper to reflect potential litigation costs.

## VI.    CONCLUSION

Plaintiffs have failed to satisfy the standard for preliminary injunctive relief. This court can award no injunctive relief against the President, NPS has no authority to paint the EEOB, and GSA has taken no final agency action that could be challenged under the APA. Plaintiffs have not demonstrated that any action by Defendants has caused them an actual or imminent injury giving rise to standing, nor have they taken any action that is ripe for judicial review. For the foregoing reasons, this Court should deny Plaintiffs' PI Motion.

November 26, 2025                          Respectfully submitted,

                                          Adam R.F. Gustafson
                                          Principal Deputy Assistant Attorney General

                                          */s/ Mark Widerschein*
                                          Mark Widerschein
                                          Michelle Ramus
                                          Natural Resources Section
                                          Environment & Natural Resources Division
                                          United States Department of Justice
                                          950 Pennsylvania Avenue, NW
                                          Washington, D.C. 20530-0001
                                          Mark.Widerschein@usdoj.gov
                                          Michelle.Ramus@usdoj.gov

                                          *Counsel for Defendants*

22

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on Plaintiffs

via CM/ECF electronic notice.

*/s/ Mark J. Widerschein*
MARK WIDERSCHEIN
Trial Attorney