IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CULTURAL HERITAGE PARTNERS, PLLC, et al.**, | Civil Action No. 1:25-cv-03969-DLF |
| Plaintiffs, | |
| v. | DECLARATION OF MARION FORSYTH WERKHEISER |
| **DONALD J. TRUMP, et al.**, | |
| Defendants. | |

**SUPPLEMENTAL DECLARATION OF MARION FORSYTH WERKHEISER
AS AN INDIVIDUAL AND AS AN OWNER OF CULTURAL HERITAGE PARTNERS,
PLLC**

I, MARION FORSYTH WERKHEISER, under 28 U.S.C. § 1746, hereby declare on my own behalf and on behalf of Cultural Heritage Partners, PLLC ("CHP"):

1. My name is Marion Forsyth Werkheiser. I have personal knowledge of the matters stated herein. I am authorized to make this declaration on behalf of CHP. I previously submitted a declaration dated November 17, 2025, in support of Plaintiffs' motion for a temporary restraining order and preliminary injunction. I submit this supplemental declaration to provide additional detail relevant to Article III standing in light of the standards articulated by the Supreme Court and the U.S. Court of Appeals for the D.C. Circuit.

2. I earned a B.A. from Indiana University and a J.D. from Harvard Law School. I have practiced law for twenty-two years and am licensed to practice in California, Virginia, and the District of Columbia. I reside in Richmond, Virginia. I am a founder and equity

DECLARATION OF MARION FORSYTH WERKHEISER                                       1

  partner of Cultural Heritage Partners, PLLC ("CHP"), an international law firm. I have won multiple awards as a result of my legal advocacy for cultural heritage, including the Simons Medal of Excellence, the Register of Professional Archaeologists' Seiberling Award, and the Indiana University Outstanding Young Alumni Award. I have served on the boards of national nonprofit organizations devoted to historic preservation, including the Lawyers' Committee for Cultural Heritage Preservation, which I co-founded, and the SRI Foundation. I was elected an Expert Member from the U.S. to the Legal, Financial and Administrative Committee of the International Council on Monuments and Sites.

3. The District of Columbia, as well as Congress, the White House, and the EEOB specifically, are significant parts of my life and have been for many decades. A native of Memphis, Tennessee, I began visiting the District regularly thirty years ago, beginning in high school, when I spent summers working as a page in the U.S. House of Representatives, as a delegate to Girls Nation, a civic education program run by the American Legion Auxiliary, and as a student of American government at the Junior Statesmen of America summer school at Georgetown University. I worked during my law school summer breaks and January term in the District for a member of the U.S. Senate, for private law firms, and as an intern for the National Trust for Historic Preservation. Upon graduation, I practiced law as an associate at a private law firm in D.C. For the last fifteen years, during which I have kept an electronic calendar, I have made at least 146 trips to D.C. I have spent at least 246 days in D.C. across these numerous visits. The purposes of these trips included advocating to Congressional and federal agency representatives regarding important historic preservation issues, attending and speaking at conferences related to historic preservation and legal issues, and

gathering socially with friends, family, and professional colleagues, often through my memberships in the Harvard Club of D.C. and the University Club, which is located just six-tenths of a mile from the EEOB. These trips frequently include visits to the Lafayette Square NHLD, including the EEOB. On these visits, the setting, appearance, and contrast of the EEOB to the White House and other buildings are important aspects of my visits to Lafayette Square.

4. I anticipate continuing this pattern of frequent visits to Washington, D.C. and enjoyment of the EEOB and surrounding areas. I have several planned trips to Washington, D.C. in early 2026 during which I will walk through Lafayette Square and visit the area around the EEOB.

5. CHP has offices at 1717 Pennsylvania Avenue NW, located two-tenths of a mile from the EEOB. I travel regularly to Washington, D.C. for business meetings, speaking engagements, and many other activities that take place in or proximate to buildings in the Lafayette Square NHLD.

6. CHP's mission, business prospects, and professional credibility, the preservation goals of our clients across the country, and the credibility of the profession of a U.S. preservation lawyer depend on continued enforcement of key preservation provisions in two specific laws: NHPA and NEPA, which will be fundamentally undermined by the example of the government's top officials bypassing their responsibilities under those laws, the physical manifestation of which will be white paint covering one of America's most significant buildings in what is arguably its most recognized historic district.

**DECLARATION OF MARION FORSYTH WERKHEISER**                                3

Doc ID: bf84e9d05521539f62f3f17d418e80a924de2c48

**Experts Confirm Irreparable Harm to EEOB**

7. In addition to the declarations that have been filed today with Plaintiff's Reply, we wish to inform the Court that we have twenty-two (22) experts also ready to provide a sworn declaration to the Court. These individuals are leading experts in the fields of historic preservation, architecture, conservation, archaeology, and building management who are respected both nationally and internationally. Each expert has confirmed that his or her declaration will verify one or more of the following facts: a) the EEOB is fully subject to the processes of NEPA and NHPA (not exempt under Section 107); b) the GSA should have initiated NEPA and NHPA processes as soon as the agency became aware that the President of the United States was contemplating alterations to the EEOB and that the delay is injurious to the public; and c) painting the EEOB will result in permanent, irreparable harm to the building. Below we identify fifteen (15) of the experts who are willing to file public declarations (in addition to the three submitted to the court contemporaneously with this supplemental declaration). An additional seven (7) experts wish to submit declarations under seal because they have rational fears of reprisal in their current and/or future professional endeavors.

    a. Shantia Anderheggen – a historic preservation consultant with over thirty (30) years of professional experience in the conservation of historic buildings with experience working for the Society for the Preservation of New England Antiquities ("SPNEA", now Historic New England) in the roles of Stewardship Manager, Director of Stewardship, and as Historic Preservation Team Leader. Shantia has also served as Historic Preservation Planner for the City of Newport, Rhode Island, and as the Easement Administrator and Director of Easements at the National Trust for Historic Preservation.

    b. Sarah Brummett – a licensed architect and preservation specialist with over sixteen (16) years of professional experience in the conservation of historic masonry buildings. Sarah is the director of the Preservation Architecture Studio at Page & Turnbull, a legacy preservation architecture and planning firm.

**DECLARATION OF MARION FORSYTH WERKHEISER**                                4

    c. Samuel Duff Combs – a licensed architect and architectural historian preservation consultant with over forty-eight (48) years of professional experience in the conservation of historic buildings. Samuel is the Vice President of Preservation Alaska, a statewide historic preservation organization and is a member of the American Institute of Architects and the National Council of Architectural Registration Boards.

    d. Milford Wayne Donaldson Jr. – a licensed architect, architectural historian, and preservation consultant with over forty-eight (48) years of professional experience in the conservation of historic masonry buildings. Milford served as the California State Historic Preservation Officer from 2004-2012 and as the Chair of the Advisory Council on Historic Preservation from 2010-2019.

    e. Richard Grant Gilmore III – an archaeologist, architectural historian, and building conservation expert with over thirty (30) years of professional experience in the analysis and conservation of historic masonry buildings. Richard currently directs the Historic Preservation & Community Planning Program at the College of Charleston and is a Fellow of the Society of Antiquaries of London.

    f. Jana Gross – a retired federal building manager and preservation specialist with a degree in architecture with over thirty-eight (38) years of professional experience in the maintenance and conservation of historic masonry buildings. Jana worked for the National Park Service for thirteen (13) years and was the lead architectural inspector on national significance preservation and new construction projects. Jana was also hired to be the lead architectural inspector on the EEOB in 2004.

    g. Anne Holford-Smith – a licensed architect and preservation consultant with over thirty-nine (39) years of professional experience in the conservation of historic masonry buildings. Anne is a partner at Platt Byard Dovell Covell Architects LLP and has been admitted as a Fellow of the American Institute of Architects. Jana also served as a Commissioner on the New York Landmarks Preservation Commission from 2018 to 2024.

    h. Kirk Huffaker – an architectural historian, historic preservation planner, and preservation consultant with over 30 years of professional experience in the conservation of historic masonry buildings. He is a Principal of Kirk Huffaker Preservation Strategies in Salt Lake City, Utah, and has conducted documentation, rehabilitation, and planning for numerous National Register-listed landmarks, three National Historic Landmarks (Fort Douglas, the Brigham Young

**DECLARATION OF MARION FORSYTH WERKHEISER**    5

Complex, and the Central Utah Relocation Camp (Topaz)), and other significant properties.

i. Judith M. Jacob – a retired Senior Conservator with over forty (40) years of professional experience in the conservation of historic masonry buildings and monuments, much of it at the National Parks Service where she worked on the restoration and stabilization of numerous National Monuments, Memorials, and Sites. She has spent her career evaluating the condition of historic masonry, developing treatment recommendations consistent with the Secretary of the Interior's ("SOI") Standards for Rehabilitation, and executing and overseeing restoration work.

j. Sarah Love – an architectural historian and preservation consultant with over 10 years of professional experience in the conservation of historic masonry buildings. Sarah has worked as a Historic Preservation Specialist and architectural historian at both state and federal programs since 2015 and recently worked as a Historic Preservation and Fine Arts Specialist at the General Services Administration ("GSA").

k. Kirk Huffaker – an architectural historian, historic preservation planner, and preservation consultant with over thirty (30) years of professional experience in the conservation of historic masonry buildings. Kirk is a Principal of Kirk Huffaker Preservation Strategies in Salt Lake City, Utah, and has conducted documentation, rehabilitation, and planning for numerous National Register-listed landmarks, three National Historic Landmarks (Fort Douglas, the Brigham Young Complex, and the Central Utah Relocation Camp (Topaz)), as well as other significant properties.

l. Thomas G. McDowell – a retired architectural conservator and preservation consultant with over forty-five (45) years of professional experience in the conservation of historic masonry buildings. Thomas worked for the General Services Administration's ("GSA") National Capital Region ("NCR") for fifteen (15) years as one of three historic preservation officers. Thomas has been admitted as a Professional Member of the American Institute for Conservation and an associate member of the American Institute of Architects.

m. Susan West Montgomery – a historic preservation and non-profit management consultant with over twenty-five (25) years of professional experience historic preservation serving as Vice President of the National Trust for Historic Preservation and Executive Director of Preservation Action.

**DECLARATION OF MARION FORSYTH WERKHEISER**  6

Doc ID: bf84e9d05521539f62f3f17d418e80a924de2c48

    n. Neela K. Wickremesinghe – an architectural conservator with over fifteen (15) years of professional experience in the conservation of historic masonry buildings. Neela is the Director of Restoration and Preservation at Green-Wood Cemetery and has spent ten (10) years of her career evaluating the condition of historic masonry, developing treatment recommendations consistent with the SOI's Standards for Rehabilitation, and overseeing restoration projects. Neela is a Recognized Professional of the Association for Preservation Technology International and a Professional Associate of the American Institute for Conservation.

    o. Jessica R. Wobig – a senior architectural historian and preservation consultant with over fifteen (15) years of professional experience in the conservation of historic masonry building. Jessica currently works at HDR, Inc., where she specializes in historic preservation and cultural resources management. Jessica has served as a national educator and public speaker for the National Trust for Historic Preservation and the National Alliance for Preservation Commissions and has developed Building Preservation Plans for the GSA for historic masonry buildings, such as the granite and limestone clad Joseph F. Weis, Jr. U.S. Courthouse in Pittsburgh, Pennsylvania.

In the interest of judicial economy and in light of the expedited briefing schedule, Plaintiffs will be prepared to file the public declarations with the Court at the December 8th hearing, if requested/permitted.

**Additional Evidence Supporting Significant and Irreversible Harm to the EEOB**

8. With regard to the harm that would occur if the EEOB project moves forward without following the proper processes, the 1993 Historic Building Preservation Plan for the EEOB states that "[a]ll exterior facade elements and site features contribute to the very high level of architectural and historical significance of this building." A true and correct copy of this report is attached as Exhibit 17 at 10. The report goes on to state that:

> Exterior facades (North, South, East and West) are comprised of an elaborate assemblage of carved granite paired columns, classical order window architraves and projecting crown mold belt courses at

**DECLARATION OF MARION FORSYTH WERKHEISER**      7

each floor level. This wall assembly is topped with a slate mansard roof with very ornate cast iron trim, cornice and railing elements. **The overall result is a facade with very heavy relief patterns of shade and shadow which has been called one [of] the most robust examples of Second Empire style architecture in America.**

*Id.* (emphasis added).

9. The 1993 Preservation Plan also details that the granite used for the exterior walls of the EEOB include very large blocks (up to 11 feet high by 5 feet wide) coursed in an ashlar pattern; that is, granite blocks that are finely cut and prepared to have a smooth and uniform surface, often from buffing or sanding. The exterior contains very intricate granite elements such as columns, pilasters, window architraves, lintels, and denticulated cornices. The Building Preservation Plan states that "[t]his stonework is probably the most elaborate example of the stone mason's and stone carver's crafts in Washington." *Id.* at 26.

10. I am also aware of a National Park Service report, *Preservation Brief 29: The Repair, Replacement, and Maintenance of Historic Slate Roofs,* that states "When repairing or replacing a slate roof, original details affecting its visual character should be retained." Exhibit 14 at 2.  The report also says "[s]ize, shape, color, texture, exposure, and coursing are among the most important characteristics of the original slates which should be documented and matched when repairing or replacing an historic slate roof." *Id.* When slate roofs must be replaced, it is challenging to exactly match the original roof's characteristics because some slate sources are no longer extant and can no longer be quarried. *Id.*

**The EEOB is not "White House grounds" and is not exempt from the NHPA**

11. I was previously aware of a Regional Programmatic Agreement ("PA") from 1994 between the GSA National Capital Region, the DC State Historic Preservation Office, and the Advisory Council on Historic Preservation that states that the EEOB is exempt from Section 106 review under Section 107, and that it is part of "the White House and its grounds." ECF 15-2

12. The GSA's inclusion of the EEOB in the 1994 PA is erroneous. Agency planning documents and even case law have defined the "White House and its grounds" as a discrete 18-acre parcel of land that excludes among other resources the Treasury building and the EEOB. These buildings are instead included in and critical contributing resources to the Lafeyette Square NHLD. *See* Exhibits 7, 16; ECF No. 7-17; *see also United States v. Jabr*, 2019 WL 13110682 at *19; n.9 (D.D.C. May 16, 2019), aff'd, 4 F.4th 97, 102 (D.C. Cir. 2021).

13. A 1990 Historic Condition Report for the EEOB prepared by Howard Needles Tammen & Bergendoff for the GSA National Capital Region describes the requirements of Section 106 of the National Historic Preservation Act and the SOI Standards for Rehabilitation. This report states:

> The Section 106 Review process provides review assistance to federal agencies in evaluating and assisting in the protection and preservation of significant historic properties. (Specifically, those historic properties listed on, or eligible for the National Register of Historic Places.) According to these established federal regulations, any proposed action or undertaking that will have any effect, either beneficial or adverse, is to be reviewed with the appropriate preservation agencies. For the OEOB, this would typically include the GSA Historic Preservation Officer and, as required, the Advisory Council on Historic Preservation. While occasionally cumbersome, this review of proposed projects, either on an individual or programmatic basis, will assist GSA in identifying the

> important character-defining features of the OEOB, and in developing and understanding the techniques and philosophies required to preserve or minimize impact to these important characteristics.

A true and correct copy of the 1990 report is attached as Exhibit 18 at III-3. This report does not state or imply that the EEOB is included in the Section 107 exemption as part of the White House and its grounds.

14. In the 2001 National Park Service *Cultural Landscape Report Site History and Evaluation 1791-1994: The White House & President's Park*, the report repeatedly separates the "White House and its grounds" from both the Treasury building and the EEOB. The report states that:

> In addition to the White House and its grounds, as of 1994 President's Park also included the Treasury Building, the Old Executive Office Building (formerly the State, War, and Navy Building, now known as the Dwight D. Eisenhower Executive Office Building), Lafayette Park, and President's Park South (including the Ellipse, Sherman Plaza, and the First Division Monument).

A true and correct copy of the report is attached as Exhibit 19 at 1. Each of its chapters describes the evolution of "The Grounds of the White House" separately from the building and grounds of both the Treasury and the EEOB.

15. A 2013 NPS map for the revision of the Lafayette Square district boundary includes the "White House and grounds" grayed out and being comprised of the area bounded by Pennsylvania Ave, E St NW, and the southern extensions of Jackson Place and Madison Place. This map excludes the EEOB and the Treasury building from the White House and its grounds. ECF 7-11.

16. A project proposed to the National Capital Planning Commission for a fence around the White House and grounds, submitted by NPS and the Secret Service in 2017, defines the

**DECLARATION OF MARION FORSYTH WERKHEISER**  10

Doc ID: bf84e9d05521539f62f3f17d418e80a924de2c48

improved fence around the "White House Grounds" separately from later fences planned around the entire "complex" including EEOB and Treasury. A true and correct copy of the project report is attached as Exhibit 20 at 1–2.

17. In 2022, the Lafayette Square National Historic Landmark District boundary change amendment was completed and submitted by NPS and approved by the Washington DC, Office of Planning. This amendment includes EEOB and Treasury building within the nomination while excluding the White House and the grounds stating:

> Although the White House and White House Grounds are critical features related to and adjacent to the Lafayette Square Historic District, ***they are legally exempt from listing in the National Register of Historic Places pursuant to Section 107 of the National Historic Preservation Act of 1966, as amended***. Thus, the White House and its grounds are excluded from this historic district boundary.

A true and correct copy of this updated nomination is included as Exhibit 21 at 5 (emphasis added). The EEOB is not included as part the exemption.

**The President's Painting Plan and Pattern of Sudden Action**

18. With regard to the ongoing time sensitives of the proposed EEOB project, the Defendants have a pattern of misleading the public regarding the nature and extent of the work planned on similar projects in its immediate surroundings.

19. In July 2025, Trump said of the White House East Wing Ballroom plans, "It won't interfere with the current building. It won't be. It will be near it but not touching it and pays total respect to the existing building, which I'm the biggest fan of." A true and correct copy of the transcript of this statement as played on Anderson Cooper 360 Degrees is attached as Exhibit 22 at 4. White House Press Secretary Karoline Leavitt evaded questions on the potential damage to the East Wing in July. When

**DECLARATION OF MARION FORSYTH WERKHEISER**                                                                 11

asked how much of the East Wing would be torn down, Leavitt replied only "So, the East Wing is going to be modernized." *Id*. at 5.

20. On August 22, 2025, President Trump discussed plans to renovate the Lincoln bathroom and to paint the Kennedy Center columns and conduct additional interior and exterior renovations at the arts center. *See* Zac Anderson, *Trump adds Kennedy Center, Lincoln bathroom to DC Makeover*, USA TODAY, (August 22, 2025) https://www.usatoday.com/story/news/politics/2025/08/22/trump-white-house-kennedy-center-lincoln-bathroom/85777563007/.

21. Subsequently, President Trump announced the completion of the Kennedy column painting on October 27, 2025, on Truth Social, praising the new columns "beautifully painted in a luxuriant white enamel color, replacing the fake looking gold paint that was there for years." *See* Donald J. Trump (@realDonaldTrump), TRUTH SOCIAL (Oct. 27, 2025 at 3:14AM ET) https://truthsocial.com/@realDonaldTrump/115444894900287475.

22. Four days later, on October 31, 2025, President Trump posted photos of the Lincoln bathroom renovation on Truth Social and noted "The Refurbished Lincoln Bathroom in the White House — Highly polished, Statuary marble!" See Donald J. Trump (@realDonaldTrump), TRUTH SOCIAL (Oct. 31, 2025, at 1:24PM ET) https://truthsocial.com/@realDonaldTrump/posts/115469942090837414.

23. All of these examples demonstrate the extreme speed at which the President is completing his "beautification" projects.

24. President Trump first discussed what his plans for the EEOB would entail in an interview for the Ingraham Angle filmed on November 10, 2025. The segment was posted online in a 'Seen Unseen' segment where he displayed the renderings, dismissed the existing

appearance as "ugly," and boasted that he is "getting bids right now from painters," explaining that the Project will involve cleaning, repointing, and painting. ECF No. 7-5.

25. I am concerned that the President, feeling empowered by his recent success in demolishing the East Wing, thinks his powers are unchecked with regard to renovation of executive buildings. During demolition of the East Wing, he commented "They said, sir, you can start tonight. I said, what are you talking about? You have zero zoning conditions. You're the President, I said, you've got to be kidding. You mean I can actually do something that I really want?" Exhibit 22 at 6.

26. If the EEOB's historic granite and slate exterior are painted, I will suffer immediate and irreparable harm. The unpainted gray stone and contrast with the White House are central to the aesthetic experience I value when visiting and working in Lafayette Square NHLD. Painting the EEOB will permanently diminish my enjoyment and professional use of the area. Once the granite is painted, the original finish cannot be restored. In addition to the damage to the EEOB, the setting and views from other contributing properties in the Lafayette Square NHLD and surrounding historic districts will also be damaged. I would suffer personal and professional harm that cannot be compensated with money damages.

27. As a preservation attorney, I am aware that NEPA and NHPA require federal agencies to evaluate the environmental and historic preservation impacts of major federal actions and federal undertakings and to consult with the public before initiating projects that may affect historic properties.

28. The lack of required public consultation personally affects me given my strong feelings for this building. To be clear, the harm to the American people does not begin when painters open the first can of paint, it begins in the denial of this required process, a

**DECLARATION OF MARION FORSYTH WERKHEISER**　　　　　　　　　　　　　　　13

denial that seems well underway and threatens to be permanent should the president proceed as his has on other renovation projects of late.

29. If the Court enjoins Defendants from proceeding with the EEOB repainting project unless and until they comply with NEPA and NHPA, that relief will reduce the risk of harm to my and CHP's aesthetic, recreational, professional, and organizational interests, and it will restore our opportunity to participate in the required environmental and historic preservation review processes before any irreversible work occurs.

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 2, 2025, in Richmond, Virginia.

*Marion F. Werkheiser*
_____
Marion Forsyth Werkheiser, Managing Partner
Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW, Suite 1025
Washington, D.C. 20006

**DECLARATION OF MARION FORSYTH WERKHEISER**                                   14