# EXHIBIT 13

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**CULTURAL HERITAGE PARTNERS, PLLC, et al.**,

      Plaintiffs,

v.

**DONALD J. TRUMP, et al.**,

      Defendants.

Civil Action No. 1:25-cv-03969-DLF

**DECLARATION OF DEBORAH LINN**

## <u>DECLARATION OF DEBORAH LINN, BA, MA</u>

I, Deborah Linn, under 28 U.S.C. § 1746 hereby declare:

1. My name is Deborah Linn. I am over the age of 18 and competent to testify. I have personal knowledge of the matters stated herein and could and would testify competently thereto if called as a witness.

2. I am a professional art conservator with over 30 years of professional experience in the conservation of art and works of material culture. I am a member of the American Institute for Conservation, the International Institute for Conservation, the International Council of Museums, the American Association of Museums, and the Virginia Conservation Association. I hold a Bachelors in Art History (Tufts University, 1994) and a Master of Arts in Art Conservation and Certificate of Advanced Study in Art Conservation (State University of New York, Buffalo State, 2000). I have worked at numerous institutions as an art conservator, assessing conditions of myriad types of materials (including but not limited to stone, wood, ceramics, paint, paper, and glass),

**DECLARATION OF DEBORAH LINN**

performing conservation treatments, managing large scale conservation projects, and leading teams of conservators and conservation staff.

3.   I was hired by the Virginia Museum of Fine Arts ("VMFA") in 2019 as Assistant Chief Conservator and was promoted to Interim Head of Conservation in 2021. During my six-year tenure with VMFA, I oversaw and managed the museum's team of Conservators, Conservation Technicians, Fellows, and Interns who were responsible for the long-term care and preservation of the museum's encyclopedic collection of approximately 54,000 works of art including the museum's collection of outdoor sculptures. I provided the leadership and expertise to ensure that all treatments and interventions were up to the highest professional standards as established by the American Institute for Conservation's Code of Ethics and Standards for Practice. I also ensured that all treatments were conducted in consultation with living artists or Native American and African Community consultations as necessary to preserve the artist's intent and cultural meaning of the works of art under the museum's care.

4.   Starting in 2002, I served in a number of capacities as a Conservator in the Anthropology Department at the Field Museum in Chicago, Illinois. From overseeing the re-housing and moving of the Anthropology collections to being the Conservator for all temporary, traveling, and permanent exhibitions at the museum, I have assessed thousands of objects of cultural heritage composed of stone, wood, ceramics, glass, paper and paint from ancient to contemporary cultures around the world. It was my responsibility to identify and assess damage and condition issues caused by natural aging, inherent vice, and previous interventions; to perform interventive treatments and document results; to teach

**DECLARATION OF DEBORAH LINN**

Doc ID: 604725053b8005a04c359b88d07c21f95997ec26

documentation and treatment protocols to others; and to oversee and manage project staff.

5. I have served as a grant reviewer for the Institution of Museum and Library Services and the National Endowment for the Humanities for 17 years where it was my responsibility to assess applications for thoroughness and adherence to the highest professional standards of collections care in the proposals to ensure the proper use of public funding.

6. I submit this declaration at the request of Plaintiffs to explain why painting the Eisenhower Executive Office Building ("EEOB") would irreparably damage its historic fabric and setting. The opinions expressed herein are based on my expertise and on my review of publicly available documents cited below.

7. The EEOB, originally called the State, War, and Navy Department Building and previously called the Old Executive Office Building, is one of the Nation's most important examples of French Second Empire civic architecture. According to the U.S. General Services Administration's ("GSA") web page titled *Eisenhower Executive Office Building, Washington, DC* (updated January 16, 2025), the building was constructed between 1871 and 1888, designed by Supervising Architect Alfred B. Mullett, and designated a National Historic Landmark in 1969. The page states that the exterior consists of granite walls with cast-iron trim and slate roofs. *See* ECF No. 7-8.

8. The GSA has described the EEOB as "the most elaborate building in the [agency's] inventory." At the time of its completion, it was one of the largest office buildings in Washington, D.C. ECF No. 7-18 at 87.

**DECLARATION OF DEBORAH LINN**

Doc ID: 604725053b8005a04c359b88d07c21f95997ec26

9. The White House Historical Association's (the "Association") press release dated December 13, 2023, announcing its *Palace of State* podcast episode, calls the EEOB a "masterpiece of Second Empire style" and notes that its granite, slate, and cast-iron exterior has stood for more than 150 years and has survived threats of demolition and alteration. ECF No. 7-9 at 1–2.

10. To my knowledge, the granite exterior walls and slate roof elements of the EEOB have never been painted. Historically, the aesthetic values of these materials and their value and cost would typically mean that their builders would not paint these materials. The appearance, including the color and construction details that would be obscured from painting, are important character-defining aspects of the EEOB.

11. According to the Executive Office of the President's 1984 publication *The Old Executive Office Building: A Victorian Masterpiece*, Alfred Mullett, the building's primary architect, selected the exterior granite for the basement (a pinkish granite from Maine) and for the rest of the exterior walls (a gray granite from the Green Quarry just north of Richmond) very deliberately and described the result as a "pleasing contrast." Exhibit 6 at 25.

12. The color, texture, marks of workmanship, and overall appearance of the granite and the slate are important character-defining features of the EEOB facade as described in the 1969 National Register Nomination for the EEOB. Exhibit 7 at 2–3.

13. Granite and slate are both exterior coverings that require little ongoing maintenance compared with painted materials. The GSA technical guideline *Specifications for Slate Shingles* describes slate as a "permanent material that is waterproof, fireproof, resistant to climatic changes, and requires no preservative coatings or paint, and no cleaning,

**DECLARATION OF DEBORAH LINN**

resulting in lower insurance premiums, higher property values, little or no maintenance costs, and a high salvage value." ECF No. 7-21 at 1.

14. The National Park Service's ("NPS") Preservation Brief 29, *The Repair, Replacement, and Maintenance of Historic Slate Roofs*, states that "Slate is one of the most aesthetically pleasing and durable of all roofing materials…. Some slates have been known to last over 200 years." A true and correct copy of that publication is attached as Exhibit 14 at 1.

15. Federal preservation documents confirm that the EEOB is subject to the National Historic Preservation Act ("NHPA"). A draft NPS map of the Lafayette Square Historic District (May 2013) explains that the White House and its grounds are legally exempt under Section 107 of the Act, but shows the Old Executive Office Building (the EEOB) as a contributing building within the District. *See* ECF No. 7-11

16. The 1970 National Historic Register of Historic Places ("NHRP") nomination form specifically lists the EEOB as part of the southwest corner of the Lafayette Square Historic District.  It separately states that the White House is omitted from the district. ECF No. 7-17 at 3.

17. District of Columbia Historic Preservation Review Board's staff report for Case No. 22-13, the Lafayette Square Historic District (Additional Documentation and Boundary Increase), dated September 29, 2022, similarly states that the White House and its grounds are exempt, but does not exclude the EEOB from the district. *See* ECF No. 7-12. Because the EEOB is a National Historic Landmark and a contributing resource to the Lafayette Square National Historic Landmark District ("Lafayette Square NHLD"), any work affecting its exterior is subject to Section 106 and Section 110(f) of the NHPA.

**DECLARATION OF DEBORAH LINN**

Doc ID: 604725053b8005a04c359b88d07c21f95997ec26

18. The EEOB's historic character depends on its unpainted gray granite and slate exterior. Granite is a dense, nonporous stone that has a naturally smooth surface. Slate is a fine-grained, slightly porous metamorphic stone. Both materials have performed well for more than 150 years precisely because they have been allowed to breathe, naturally aging and responding to the environment, and have not been coated. Painting these materials would require altering their surfaces and would dramatically change their appearance.

19. Under all the preservation standards and technical guidance with which I am familiar and to which I have contributed, historic masonry buildings are to be maintained in their original materials and not coated or otherwise painted. One reason for masonry to remain unpainted is because painting a building that was not originally painted is an action that changes the building's historic character by introducing an appearance different from how the building has traditionally looked over time. Painting a historic masonry building is therefore an adverse effect that damages one of the characteristics, the exterior wall appearance, that contributes to its eligibility for the National Register of Historic Places.

20. Technical procedures and guidance from the GSA indicates an awareness of the types of damage that can be caused by inappropriate cleaning, repointing, and painting. The technical procedures titled *Granite: Characteristics, Uses And Problems* notes that mortar chipping and spalling can be caused by repairs, especially the use of too hard a pointing mortar; that improper chemical cleaning can cause efflorescence of soluble salts on the granite; and that applications of water-repellent coatings (such as paint) may cause flaking of the granite by trapping moisture beneath the surface. Exhibit 8 at 2–5.

21. The document *Guidelines for Using High Pressure Cleaning Equipment on Masonry* acknowledges that "For typical masonry cleaning, the pressure rating can range from 500

**DECLARATION OF DEBORAH LINN**

to 1,000 psi. NOTE: FOR OLDER AND DELICATE SURFACES, MUCH LOWER PRESSURES MUST BE USED." Exhibit 9 at 1–2.

22. GSA guidance for repairing slate roofs states that "[c]olor and appearance shall match existing as closely as possible."  Exhibit 10 at 2.

23. In my professional experience, preservation standards and technical guidance recommend against painting or otherwise sealing or coating masonry is because these activities commonly lead to future moisture entrapment and deterioration. As moisture becomes trapped beneath the surface of the paint layer, freezing and thawing cycles can cause differential expansion and contraction between the two surface layers. This can lead to more cracking and peeling of the paint layer, providing an opportunity for biological material to form, disfiguring the surface and causing more damage to layers beneath. There is a long history of masonry buildings suffering future deterioration after being painted. As stated in the NPS Preservation Brief 1, *Assessing Cleaning and Water-Repellent Treatments for Historic Masonry Buildings*, "Inappropriate cleaning and coating treatments are a major cause of damage to historic masonry buildings." A true and correct copy of that publication is attached as Exhibit 15 at 1.

24. The Secretary of the Interior's ("SOI") Standards for Rehabilitation caution against painting masonry that has historically been unpainted and warn that such treatments, as well as abrasive cleaning or improper repointing, can irreversibly damage historic materials.

25. Once the stone's finish has been altered by painting, it cannot be restored without removal of additional material, resulting in permanent loss of historic fabric. These concerns are reflected in preservation guidance such as Anne E. Grimmer's *The Cleaning*

**DECLARATION OF DEBORAH LINN**

*and Waterproof Coating of Masonry Buildings* (1984), a publication of NPS's Technical Preservation Services, which explains that painting previously unpainted masonry can trap moisture and cause spalling and that chemical paint removal can further damage the stone. ECF No. 7-14 at 35, 41–42.

26. Painting slate or granite creates a vapor-impermeable barrier. Because slate and historic lime-based mortars are designed to allow moisture to migrate through the wall assembly, applying paint traps moisture behind the coating. Trapped moisture freezes and thaws, leading to cracking, scaling, and spalling of the stone. The Link Solutions article *How to Rejuvenate Old Slate Stone with Paint* (2025) notes that slate's porosity makes it vulnerable to cracking and spalling when moisture becomes trapped beneath paint; the article also describes the need for chemical treatments and sanding to prepare slate for painting, which alters its surface. ECF No. 7-19 at 2.

27. If painting proceeds, the building will require ongoing maintenance; a 2025 article by the Federal Performance Contracting Coalition titled *How Often Should You Repaint Your Commercial Property?* advises that large commercial buildings should be repainted every five to seven years, meaning the EEOB would be placed on a continual repainting cycle. ECF No. 7-13 at 1.

28. If the EEOB is painted white, it can never be returned to its current historic state as it was intended when it was first constructed. Removal of the white paint would be impossible on all of the different types of building materials and amidst all of the complex surface details of the EEOB. The surface of this historic building and its appearance would be forever altered and compromised, robbing future generations from fully understanding and appreciating the significance of this iconic structure.

**DECLARATION OF DEBORAH LINN**

Doc ID: 604725053b8005a04c359b88d07c21f95997ec26

29. Having heard President Trump mislead the American public about the impact of the construction of the new ballroom on the East Wing of the White House and his disregard for following proper protocols before destroying said structure, I have little faith that a condition assessment of the entire exterior of the EEOB has been completed. A full assessment of the building materials is critical to ensure that the cleaning and/or power washing needed prior to painting will not result in damage to any weakened or compromised masonry elements. Proceeding with the cleaning without a full understanding and documentation of the masonry condition will also likely lead to additional losses of the original surface, causing further irreparable harm to the historic structure.

30. Repointing the EEOB with incompatible mortars would likewise damage the masonry. The building's original mortar likely contains lime and natural hydraulic cement, which are softer and more vapor permeable than modern Portland cement. Using a hard, impermeable mortar in repointing can trap moisture and cause stresses that lead to cracking and spalling of adjacent stone. Cleaning with high-pressure water or abrasive blasting will erode the surface and force water into the stone. Painting over repointed joints would further exacerbate moisture problems. Preservation standards require that mortar composition and cleaning methods be compatible with the original materials. The EEOB's masonry is a complex and delicate system that has functioned successfully without coatings for more than a century; altering that system risks irreversible failure.

31. Under the regulations at 36 C.F.R. § 800.5(a)(2)(ii), the president's plan for cleaning, pointing, and painting the EEOB will constitute an adverse effect on the EEOB. Examples of adverse effects provided in the regulations include types of

**DECLARATION OF DEBORAH LINN**

Doc ID: 604725053b8005a04c359b88d07c21f95997ec26

alteration, restoration, rehabilitation, repair, and maintenance that are not consistent with

the SOI's standards for the treatment of historic properties and applicable guidelines. 36

CFR § 800.5(a)(2)(ii). The SOI's Standards recommend against applying paint or other

coatings to masonry that has been historically unpainted or uncoated; needlessly

introducing chemicals or moisture into historic materials through unnecessary

cleaning; removing paint that is firmly adhered to masonry; and repointing masonry units

when not needed or in a manner that does not match the original mortar

content and repointing methods. ECF No. 7-20 at 168.

32. Painting the EEOB would also damage the historic setting of the historic properties from

which the EEOB is visible, such as the Lafayette Square NHLD. The building's dark gray

stone façade provides a visual contrast to the White House and anchors the west side of

the square. Painting it white would dramatically alter the district's views and the public's

experience of President's Park. Such a change would diminish the integrity of setting,

feeling, and association that contribute to the district's National Historic Landmark

status.

33. The EEOB is also visible from historic properties located within the National Register-

listed Financial Historic District, Seventeenth Street Historic District, the National Mall,

the Pennsylvania Avenue National Historic Site, and the Washington Monument and

Grounds Historic District, and alteration to the EEOB color is therefore likely to have an

adverse effect on these historic properties. *See* Exhibit 11. Alteration to the EEOB color

will not only affect the EEOB, but it will also have an adverse effect on the other historic

properties.

**DECLARATION OF DEBORAH LINN**

Doc ID: 604725053b8005a04c359b88d07c21f95997ec26

34. If the EEOB were painted, the damage would be permanent and not compensable in money damages. Once historic granite and slate have been abraded, sealed, or coated, the original surfaces and patina cannot be restored. Removal of paint from polished stone risks staining, profiling, and loss of material, and cannot reverse the impact on the building's appearance. Furthermore, painting would commit the government to recurring maintenance expenditures and would divert funds from appropriate preservation work.

35. The Executive Office of the President ("EOP") has not always held the opinion that the EEOB is exempt from the National Historic Preservation Act. In the 1984 publication *The Old Executive Office Building: A Victorian Masterpiece*, the EOP Office of Administration recognized the numerous threats of demolition and heavy alteration the building has faced over time, and then stated:

> Today, however, the future of the OEOB is secure. Protected by federal laws set forth in the Historic Preservation Act of 1966, the building and its site were placed on the National Register of Historic Places in 1971 and on the District of Columbia Inventory of Historic Sites by the Historic Landmarks Office in 1972, status which protects it from any future proposals for major alteration, reconstruction, or demolition and provides for its preservation as an historic monument and important cultural resource.

Exhibit 6 at 29.

36. Similarly, in 2007 in preparation for an extensive modernization, the EOP published a commemorative booklet titled *Eisenhower Executive Office Building: Modernization and Restoration*. This document states "Protected by the National Historic Preservation Act of 1966, the EEOB and its site were placed on the National Register of Historic Places in 1971 and on the District of Columbia Inventory of Historic Sites by the Historic Landmarks Office in 1972." Exhibit 12 at 3.

**DECLARATION OF DEBORAH LINN**

37. To my knowledge, no environmental assessment, environmental impact statement, or

Section 106 consultation has been conducted for the proposed EEOB project. In my

professional opinion, the project constitutes an undertaking with the potential to directly

and adversely affect a National Historic Landmark, requiring consultation pursuant to

Section 106 and Section 110(f) and analysis under NEPA. Proceeding without such

review risks irreversible harm to one of the Nation's most significant historic buildings

and to the Lafayette Square NHLD.

I declare under penalty of perjury that the foregoing is true and correct. Executed on 2 December

2024, in Chicago, Illinois.


_____

DEBORAH LINN, BA, MA

**DECLARATION OF DEBORAH LINN**

Doc ID: 604725053b8005a04c359b88d07c21f95997ec26