**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CULTURAL HERITAGE PARTNERS, PLLC, et al.,** | Civil Action No. 1:25-cv-03969-DLF |
| Plaintiffs, | **PLAINTIFFS' RESPONSE TO DECEMBER 8, 2025 MINUTE ORDER REGARDING IRREPARABLE HARM** |
| v. | |
| **DONALD J. TRUMP, et al.,** | |
| Defendants. | |

### PLAINTIFFS' RESPONSE TO DECEMBER 8, 2025 MINUTE ORDER REGARDING IRREPARABLE HARM

Plaintiffs submit this response pursuant to the Court's December 8, 2025, Minute Order requesting authorities addressing whether the alleged procedural injury qualifies as imminent irreparable harm in light of GSA's commitment not to take certain physical actions with respect to the exterior of the Eisenhower Executive Office Building ("EEOB") before March 1, 2026, and responding to the Court's invitation to Defendants to expand their commitments to refrain from additional planning activities as identified in language by the court.

### I.    GSA Declaration

The Minute Order asked Defendants in their forthcoming filing and declaration(s) to "indicate whether GSA further commits to 'not issue solicitations for a contract, execute a contract, select a contractor, or draft design or construction drawings related to such work' before March 1, 2026." Should GSA provide such a commitment, Plaintiffs would accept the resulting reduction in risk of imminent irreparable harm in reliance on the expectation that, under Plaintiffs' forthcoming proposed schedule for production of the administrative record and resolution of any

**PLAINTIFFS' RESPONSE TO MINUTE ORDER - Page 1**

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

record-related motions, the Court will be able to decide the case on the merits before the declaration expires on March 1, 2026. To the extent the Court is unable to issue a merits decision by that date for reasons outside Plaintiffs' control—including any delay in compiling the administrative record, resolving record-related motions, or setting a dispositive-briefing schedule—Plaintiffs assume that GSA would agree to a commensurate extension of its commitments until the Court has rendered a decision on the merits. Plaintiffs would reserve their right to renew their Motion for Preliminary Injunction if actions occurred contrary to GSA's commitments or if the President unilaterally proceeds with having the building prepared for painting.

## II.    Clarification of Plaintiffs' Irreparable Harm Theory

The Minute Order states that "for the first time in their reply brief" Plaintiffs argue that, "even putting aside physical alterations to the EEOB, 'the loss of NEPA and NHPA processes is itself irreparable harm' requiring preliminary relief."[1] Respectfully, Plaintiffs understand their irreparable harm theory somewhat differently and note that they raised it in their Memorandum in Support of Plaintiffs' Motion for Temporary Restraining Order, Preliminary Injunction, and Expedited Hearing. ECF No. 7-1.

As Plaintiffs explained there, their irreparable harm showing has two interrelated components: (1) the risk of permanent damage to the historic fabric and appearance of the EEOB and the Lafayette Square National Historic Landmark; and (2) the loss of congressionally mandated NEPA and NHPA procedures that exist to protect those concrete interests as decisions

---

[1] Plaintiffs believe that, at oral argument on December 8, counsel may have misspoken and suggested that procedural harm alone would satisfy the requirement of imminent irreparable harm. To the extent Plaintiffs made any such statement, Plaintiffs respectfully clarify that this is not the argument they intended to advance.

**PLAINTIFFS' RESPONSE TO MINUTE ORDER - Page 2**

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

about this specific project are made. Plaintiffs argued in their initial Motion that Defendants are advancing the President's cleaning, repointing, painting plan "with no NEPA document and no Section 106 or 110(f) consultation, depriving these Plaintiffs of statutory rights to information, comment, and participation before decisions are made," and that once cleaning, repointing, and painting begin, "the window for meaningful NEPA/NHPA participation—and Plaintiffs' ability to use those procedures to protect the concrete interests identified in Section I—will close permanently." ECF No. 7-1 at 46. Plaintiffs' Reply Brief restated that same theory in concise form, explaining that "[t]he harms at issue are irreparable in both their physical and procedural dimensions" and that "on the procedural side, the loss of NEPA and NHPA processes is itself irreparable harm to Plaintiffs" because once Defendants proceed outside those processes for this project, Plaintiffs' rights to informed review, consultation, and participation are permanently lost. ECF No. 16 at 31.

Plaintiffs thus do not contend that a bare procedural violation standing alone is enough. Their position is that where Congress confers specific procedural rights—here, NEPA and NHPA review and consultation—to safeguard concrete, site-specific interests in a particular historic resource, the denial of those procedures as an ongoing project advances constitutes irreparable injury.

## III.    Authorities Supporting Plaintiffs' Position

Courts have recognized that, where Congress created procedural requirements to protect concrete interests in a particular place or right, the denial of those procedures can be a significant component of the irreparable-harm analysis, particularly when coupled with threatened injury to those interests.

**PLAINTIFFS' RESPONSE TO MINUTE ORDER - Page 3**

In *Foundation on Econonomic Trends v. Heckler*, 756 F.2d 143, 157 (D.C. Cir. 1985), the D.C. Circuit held that the failure to undertake NEPA analysis prior to agency action causes a present, irreparable injury. The court explained that the "NEPA duty is more than a technicality; it is an extremely important statutory requirement to serve the public and the agency *before* major federal actions occur." *Id.* (emphasis in original). When analyzing the plaintiffs' request for a preliminary injunction, the court noted: "If plaintiffs succeed on the merits, then the lack of an adequate environmental consideration looms as a serious, immediate, and irreparable injury." *Id.* Thus, this Circuit has recognized procedural injury as part of the larger irreparable harm necessary to meet the standard for a preliminary injunction.

Building on *Heckler*, courts in this Circuit have held that NEPA's procedural duties are "more than a technicality" and that the loss of NEPA-compliant review as decisions are made constitutes irreparable harm, particularly where environmental or aesthetic interests are at stake. *See, e.g.*, *Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1, 24–25 (D.D.C. 2009) ("Although a procedural violation of NEPA is not itself sufficient to establish irreparable injury, it is certainly a relevant consideration...When a procedural violation of NEPA is combined with a showing of environmental or aesthetic injury, courts have not hesitated to find a likelihood of irreparable injury.").

Courts have likewise recognized that NEPA's procedural rights exist to protect concrete environmental and aesthetic interests, and that their denial is itself an injury to those interests. *Fund for Animals v. Norton*, 281 F.Supp.2d 209, 221 (D.D.C. 2003) ("although defendants appear to be correct in their assertion that the procedural harm arising from a NEPA violation is insufficient, *standing alone*, to constitute irreparable harm justifying issuance of a preliminary

**PLAINTIFFS' RESPONSE TO MINUTE ORDER - Page 4**

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

injunction, when combined with the irreparable aesthetic injuries alleged by plaintiffs, such procedural harm does bolster plaintiffs' case for a preliminary injunction").

NHPA cases reflect the same principle in the historic preservation context. In *National Trust for Historic Preservation v. Blanck*, 938 F.Supp. 908 (D.D.C. 1996), the court described NHPA as having an "overwhelming procedural thrust," and explaining that "Congress has decided as a legislative matter, however, to institutionalize the national commitment to historic preservation by creating certain planning, consultation and decision making procedures to assure adequate consideration of preservationist concern." *Id.* at 922, 925. At the preliminary-injunction stage, the court noted that "[p]laintiffs have persuaded the Court on the irreparable harm prong of the test for preliminary injunctive relief," *id.* at 910 n.2, and later recognized that "the Army's noncompliance has caused real harm." *Id.* at 924. Nonetheless, the court ultimately concluded that § 110 did not itself authorize ordering additional preservation expenditures once the agency was in present compliance, underscoring that the Act's procedures are the mechanisms Congress provided to safeguard plaintiffs' interests in historic properties. *Id.* at 924–27.

More recently, in *Oglala Sioux Tribe v. U.S. Nuclear Regulatory Comm'n*, 896 F.3d 520, (D.C. Cir. 2018), the D.C. Circuit, on a petition for review rather than a preliminary-injunction motion, set aside the NRC's practice of conditioning NEPA compliance on the Tribe's failure to demonstrate "irreparable harm." *Id.* at 523. The NRC left a uranium-mining license in effect despite a "significant deficiency" in its NEPA review, on the ground that the Tribe had not shown "immediate and irreparable harm," importing an "irreparable harm" requirement derived from the standard courts apply when deciding whether to grant injunctive relief. *Id.* at 525, 531, 535, 538. The court held that NEPA obligates agencies to complete an adequate environmental review *before*

**PLAINTIFFS' RESPONSE TO MINUTE ORDER - Page 5**

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

taking major federal action and "does not permit an agency to act first and comply later" or to "condition performance of its obligation on a showing of irreparable harm," because "[t]here is no such exception in the statute." *Id.* at 523, 531–35.

Outside of this Circuit, other circuits have found similar results. For example, in *Sierra Club v. Marsh*, 872 F.2d 497 (1st Cir. 1989), then-Judge Breyer, reviewing the denial of a preliminary injunction, held that the harm NEPA is concerned with occurs when a decision to which NEPA applies is made without the informed environmental analysis NEPA requires, not only when irreversible physical damage has already occurred. The court explained that NEPA "is designed to influence the decisionmaking process" and that "when a decision to which NEPA obligations attach is made without the informed environmental consideration that NEPA requires, the harm that NEPA intends to prevent has been suffered," and it instructed district courts to take account of this "decisionmaking risk" when assessing irreparable harm in NEPA cases, rejecting the view that only irreparable physical injury to the environment can justify preliminary relief. *Id.* at 500–01.

Likewise, in *National Parks & Conservation Association v. Babbitt*, 241 F.3d 722, 733 (9th Cir. 2001), the Ninth Circuit enjoined the implementation of an agency plan until an Environmental Impact Statement was developed. The court recognized that although injunctive relief is not always appropriate for violations of procedural statutes, it is an available remedy because the harm *itself* is the failure to follow the appropriate procedures. *Id.* at 737 n.18.

Taken together, these decisions distinguish between a bare, technical procedural violation and the denial of statutorily required procedures that exist to safeguard concrete interests in specific environmental or historic resources. In the latter situation—presented here—courts treat the loss

**PLAINTIFFS' RESPONSE TO MINUTE ORDER - Page 6**

of those procedures, as decisions are being made about a particular project, as an irreparable injury supporting injunctive relief.

### IV.    Distinguishing *Fisheries Survival Fund* and *Alcresta Therapeutics*

The Minute Order cites *Fisheries Survival Fund v. Jewell*, 236 F.Supp.3d 332 (D.D.C. 2017), and *Alcresta Therapeutics, Inc. v. Azar*, 318 F.Supp.3d 321 (D.D.C. 2018), for the proposition that "courts generally will not base a finding of irreparable injury on a procedural violation standing alone." Plaintiffs agree with that general statement. However, both cases involved materially different circumstances than those presented here.

In *Fisheries Survival Fund*, the court considered a NEPA challenge to a federal lease for an offshore wind energy project. Construction and associated environmental impacts remained years away, and the plaintiffs had not shown any imminent environmental harm or that they would be deprived of future opportunities to participate in later-stage environmental review. *Id.* at 336–39. In that context, the court held that plaintiffs need "to allege some concrete injury beyond the procedural injury caused by [the agency's] alleged failure to comply with NEPA when it conducted its environmental assessment." *Id.* at 336. Here, by contrast, Plaintiffs have alleged concrete, site-specific interests in a single, irreplaceable National Historic Landmark and an active presidential project focused squarely on that building. Defendants' position is not that Plaintiffs will have another NEPA/NHPA process later, but that no such processes are required at all. The opportunity to exercise NEPA and NHPA rights for this project will be permanently lost if Defendants continue to plan and potentially commit the project outside those statutes, which is exactly the type of harm courts recognized in *Heckler* and *Brady*.

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

*Alcresta Therapeutics* is even further afield. There, the court evaluated whether a CMS coding decision caused irreparable harm to a pharmaceutical manufacturer through economic and competitive injuries. 318 F.Supp.3d at 325–28. The court reiterated the general principle that courts will not ordinarily find irreparable harm based solely on a procedural violation, but its analysis turned on whether alleged economic harms—lost sales and market share—were sufficiently certain and great. *Id.* at 327–28. *Alcresta* did not involve NEPA, NHPA, or any statutory participation rights designed to protect environmental or historic resources, and it did not suggest that the denial of such rights, as applied to concrete, non-monetary interests in a particular resource, cannot constitute irreparable harm.

Accordingly, while *Fisheries* and *Alcresta* caution against treating purely abstract or technical procedural violations as irreparable, they do not control where, as here, the procedures at issue are the very mechanisms Congress provided to protect Plaintiffs' concrete interests in a specific National Historic Landmark, and where Defendants' failure to invoke those procedures threatens to permanently deprive Plaintiffs of their statutory rights to inform and influence the project before irreversible decisions are made.

Date: December 10, 2025

Respectfully submitted,

/s/ Gregory Alan Werkheiser, Bar No. VA210
CULTURAL HERITAGE PARTNERS, PLLC
1717 Pennsylvania Avenue NW, Suite 1025,
Washington, DC 20006
Tel: (703) 408-2002
Email: greg@culturalheritagepartners.com

/s/ Marion Forsyth Werkheiser, Bar No. 486465

**PLAINTIFFS' RESPONSE TO MINUTE ORDER - Page 8**

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW, Suite 1025
Washington, DC 20006
Office: 202-567-7594

CULTURAL HERITAGE PARTNERS, PLLC
1717 Pennsylvania Avenue NW, Suite 1025,
Washington, DC 20006
Tel: (202) 567-7594
Email: marion@culturalheritagepartners.com

/s/ Lydia Dexter, Bar No. 233151 (OR)
CULTURAL HERITAGE PARTNERS, PLLC
1717 Pennsylvania Avenue NW, Suite 1025,
Washington, DC 20006
Tel: (202) 567-7594
Email: lydia@culturalheritagepartners.com
*Pro Hac Vice*

/s/ Jessie Danielle Young Barrington, Bar No.
100685 (VA)
CULTURAL HERITAGE PARTNERS, PLLC
1717 Pennsylvania Avenue NW, Suite 1025,
Washington, DC 20006
Tel: (202) 567-7594
Email: jessie@culturalheritagepartners.com
*Pro Hac Vice Admission Pending*

COUNSEL FOR PLAINTIFFS

**PLAINTIFFS' RESPONSE TO MINUTE ORDER – Page 9**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on

Plaintiffs via CM/ECF electronic notice.

/s/ *Gregory Alan Werkheiser*

*GREGORY ALAN WERKHEISER*

Attorney for Plaintiffs

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594