# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CULTURAL HERITAGE PARTNERS, PLLC, *et al.*,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>GENERAL SERVICES ADMINISTRATION, *et al.*,<br><br>　　　　Defendants. | Case No. 1:25-cv-03969-DLF |

### THIRD DECLARATION OF ANDREW HELLER, ACTING COMMISSIONER OF THE PUBLIC BUILDINGS SERVICE

I, Andrew Heller, declare as follows:

1. I am employed as the Acting Commissioner for the Public Buildings Service ("PBS"), U.S. General Services Administration ("GSA"). My work address is 1800 F Street NW, Washington, DC 20405. I have held this position with GSA since August 4, 2025. While not included in my prior declarations, I have been with GSA since 2004, having started my career as an Asset Manager. In addition, I have held various senior level leadership positions within PBS, including Deputy Commissioner, Assistant Commissioner for Strategy and Engagement, Assistant Commissioner for Facilities Management, and Deputy Assistant Commissioner for Portfolio Management.

2. I previously signed two declarations that were filed with the Court in this action on November 18 and 26, 2025. *See* ECF Nos. 11, 15-1. This third declaration updates my prior declarations and is primarily provided in response to the supplemental declaration of Mydelle Wright submitted by Plaintiffs on December 8, 2025. *See* ECF No. 18-1.

3. In my position, I am able to obtain certain information about when a particular employee departed from government service and, after inquiring about such records with GSA's Office of Human Resources, I confirmed that Ms. Wright retired from GSA in or about April 2024. Thus, it has been over 20 months since Ms. Wright may have actively been

1

involved as a federal government employee in any of the four building dispositions mentioned in her supplemental declaration.

4. GSA's authority originates from the Federal Property and Administrative Services Act of 1949 (Property Act), 40 U.S.C. § 101 et seq., which established GSA and provided it with authority over federal real estate, procurement, and disposal of surplus federal property.

5. GSA is a leader in historic preservation and regularly receives recognition for its efforts to preserve historic federal buildings. In the past five years, GSA has received the following awards: the 2024 District of Columbia Award for Excellence in Historic Preservation for the restoration of the Andrew W. Mellon Auditorium; the 2023 Grand Jury Award from the Philadelphia Preservation Alliance and Federal Executive Board Champions Gold Medal for the restoration of the Robert N.C. Nix, Sr. Federal Building and U.S. Courthouse; the 2021 DC Excellence in Preservation, DC Preservation League for the St. Elizabeth's Center Building; the 2020 Federal Partnerships Award from the National Trust for Historic Preservation and the Advisory Council on Historic Preservation for the GSA Historic Outleasing Program.

6. With a portfolio of over 8,500 assets, as part of an overall asset management strategy, PBS is continually evaluating and re-evaluating whether it should sell buildings, invest in buildings, or lease buildings. Here, GSA has not finalized its disposition of any of the four buildings. However, contrary to Ms. Wright's declaration, GSA is currently evaluating those assets for disposal, not demolition.

7. When a federal agency determines that a property is excess to its needs, it reports the property to GSA's Office of Real Property Disposition. Upon acceptance of a Report of Excess, GSA undertakes the process to "dispose" of the property by first offering it to other federal agencies.

8. When GSA determines that there is no federal interest, GSA begins the process to convey the property out of federal ownership. One component of that process includes compliance with the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq., to assess the impacts of the conveyance on the environment.

9. When a property is listed in or eligible for the National Register of Historic Places ("NRHP"), GSA undertakes the process to comply with relevant provisions of the

    National Historic Preservation Act ("NHPA"), 54 U.S.C. § 300101 et seq. and its implementing regulations at 36 C.F.R. Part 800, to ensure that historic resources are not adversely affected by the conveyance.

10. GSA's NEPA Desk Guide sets forth processes for compliance with NEPA depending upon the action being taken. For disposals, Section 5.4(j) permits a categorical exclusion ("CATEX") under the following circumstances: "Disposal of properties where the size, area, topography, and zoning are similar to existing surrounding properties and/or where current and reasonable anticipated uses are or would be similar to current surrounding uses (e.g., commercial store in a commercial strip, warehouse in an urban complex, **office building in downtown area**, row house or vacant lot in an urban area)." Pursuant to NEPA, when a proposed agency action is excluded pursuant to one of the agency's categorical exclusions, the agency is not required to prepare an environmental document.

11. If GSA were to propose significant changes to, or demolition of, a federal building, GSA would be required to do a more comprehensive analysis using an Environmental Analysis ("EA") or Environmental Impact Statement ("EIS").

12. GSA is the federal landholding agency with the statutory authority to manage the following four properties discussed in Ms. Wright's supplemental declaration:
    a. GSA Regional Office Building, 301 7th Street SW, Washington, DC 20407;
    b. Liberty Loan Building, 401 14th Street SW, Washington, D.C. 20227;
    c. Robert C. Weaver Federal Building, 451 7th Street SW, Washington, DC 20410;
    d. Wilbur J. Cohen Federal Building, 330 Independence Avenue SW, Washington, DC 20237.

13. The four buildings listed in the prior paragraph are managed by GSA and are included in GSA's real estate portfolio. Said differently, GSA is the federal landholding agency for these properties. Thus, it is the agency with express statutory authority to make real property-related decisions for these facilities, including any disposition or demolition. Any final decision to convey these buildings out of federal ownership or to demolish these buildings is vested in the Administrator of General Services. GSA is currently in the process of conveying the four buildings out of federal ownership. GSA is not demolishing those buildings.

14. I have not received any direction from the White House or the Executive Office of the President to demolish any of the four buildings referenced in Ms. Wright's declaration. Furthermore, I have not been in any meetings or discussions in which others discussed receiving direction from the White House or the Executive Office of the President to demolish the four buildings referenced in Ms. Wright's declaration. In addition, I have not received any direction from the Administrator or Acting Administrator of GSA to demolish any of the buildings in question.

15. The four buildings listed above have been reported excess by GSA to the Office of Real Property Disposition; the status of NHPA and NEPA compliance for the conveyance action is set forth below. Again, GSA has not finalized its disposition of any of the four buildings.

    a. A Report of Excess for the GSA Regional Office Building was submitted on March 11, 2025. The building is not listed in or eligible for listing in the NRHP and thus is not subject to the provisions of the NHPA. Under NEPA, GSA has identified the proposed agency action—conveying out of federal ownership—as subject to a CATEX. *See supra* ¶ 10. GSA is using a third-party commercial brokerage firm to assist with the disposition, and as clearly noted in the public advertisement, "Jones Lang LaSalle Americas, Inc. ('JLL'), as exclusive representative for the U.S. General Services Administration ('GSA'), is pleased to present the opportunity **to purchase 7th & D Federal Office Building**…." *See* https://invest.jll.com/us/en/listings/office/7th-d (emphasis added).

    b. During the prior Biden Administration, a Report of Excess for the Liberty Loan Building was submitted on August 8, 2024. GSA announced its intention to dispose of the building in a press release dated April 24, 2024. *See* https://www.gsa.gov/about-us/newsroom/news-releases/gsa-announces-plans-to-dispose-of-the-liberty-loan-building-in-washington-dc-04292024. The building has been determined eligible for listing in the NRHP. GSA has completed consultation with the State Historic Preservation Officer for the District of Columbia ("DC SHPO"), as required by Section 106 of the NHPA and on April 30, 2025, received a determination from the DC SHPO that the conveyance will have no adverse effect on historic properties. Under NEPA, GSA has identified

4

      the proposed agency action—conveying out of federal ownership—as subject to a CATEX. *See supra* ¶ 10. Like the GSA Regional Office Building, GSA is using a third-party broker to assist with the disposal of the Liberty Loan Building. *See* https://www.cbre.com/press-releases/cbre-appointed-as-exclusive-sales-agent-for-the-liberty-loan-building-in-heart-of-washington-dc. While the disposition has not been finalized yet, there is significant market interest with over 100 registrations and over two dozen tours. Initial offers are due later this month.

    c. A Report of Excess for the Weaver Building was submitted on March 25, 2025. The Weaver Building is listed on the NRHP. GSA is currently evaluating the Weaver Building for disposal and has not yet initiated compliance with NHPA and NEPA.

    d. A Report of Excess for the Cohen Buildings was submitted on April 15, 2025. The Cohen Building is listed on the NRHP. GSA is currently evaluating the Cohen Building for disposal and has not yet initiated compliance with NHPA and NEPA.

16. GSA commits to not issue solicitations for a contract, execute a contract, select a contractor, or draft design or construction drawings related to any power washing/cleaning, painting, and/or repointing of the exterior of the Eisenhower Executive Office Building prior to March 1, 2026.

17. This certification is signed under the provisions of 28 U.S.C. § 1746. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 10th day of December, 2025, in the City of Washington, District of Columbia.

ANDREW HELLER
Digitally signed by ANDREW HELLER
Date: 2025.12.10 22:05:21 -05'00'

Andrew Heller