UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CULTURAL HERITAGE PARTNERS, PLLC, *et al.*,<br>　　　　Plaintiffs,<br><br>　　v.<br><br>GENERAL SERVICES ADMINISTRATION, *et al.*,<br>　　　　Defendants. | Case No. 1:25-cv-03969-DLF |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'**
**MOTION FOR AN EXPEDITED STATUS CONFERENCE**

Plaintiffs seek an expedited status conference to obtain the impossible—an administrative record in a case that concerns no final agency action. Defendants[1] cannot produce what does not exist. In the interest of transparency, Defendants provided what they do have—relevant documents from GSA, the only agency that could even hypothetically have taken or failed to take the action Plaintiffs complain of. Unsatisfied, Plaintiffs complain that the record is not complete. But that is a result of their own premature litigation—not GSA.[2]

Lacking any factual or legal justification for their request, Plaintiffs make the extraordinary and baseless accusation that GSA has violated its sworn declarations. Plaintiffs' accusation is

---

[1]　Defendants are President Donald J. Trump in his official capacity as President of the United States; the General Services Administration; Edward Forst in his official capacity as Administrator of the General Services Administration ("GSA") (as substituted pursuant to Fed. R. Civ. P. 25(d)); the National Park Service; and Jessica Bowron in her official capacity the NPS Comptroller, exercising the delegated authority of the Director of the National Park Service.

[2]　For ease of reference, Defendants' response uses the same abbreviations for defined terms here as they did in their Memorandum of Points and Authorities in Support of their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. *See generally* Dkt. No. 27-1.

1

patently false. The Court should reject Plaintiffs' efforts to obscure the numerous threshold issues that doom their case.

## BACKGROUND

Just last week, Defendants moved to dismiss Plaintiffs' claims or, in the alternative, for summary judgment. Dkt. No. 27 ("Defs.' Mot."). Yesterday, Plaintiffs moved for an expedited status conference to discuss how Defendants' "filings implicate the current briefing schedule." Dkt. No. 31 at 1. Plaintiffs propose to address what they allege to be "(1) Defendants' refusal to comply with the Court's December 12, 2025 Minute Order to provide an administrative record; and (2) Defendant GSA's violation of its prior sworn declarations committing not to delegate its authority over this matter prior to March 1, 2026." *Id.* Earlier today, the Court ordered Defendants to respond to Plaintiffs' motion by the end of the day and set a telephonic status hearing for February 6 at 9:30 AM. Minute Order (Feb. 5, 2026).

## ARGUMENT

### I.   Defendants cannot lodge an administrative record because they have taken no final agency action.

To challenge the absence of an administrative record, Plaintiffs must show final agency action. Plaintiffs have not made this threshold showing. Plaintiffs' motion itself addresses a problem of their own creation: the lack of an administrative record at this time is a product of their premature lawsuit. There is no final agency action, nor is there a mandatory duty to act that this Court can compel, so there is no administrative record to lodge.

Plaintiffs have raised claims under the APA, alleging agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and "without

2

Case 1:25-cv-03969-DLF   Document 33   Filed 02/06/26   Page 3 of 7

observance of procedure required by law," 5 U.S.C. § 706 (2)(A), (D), and seeking to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1). But as Defendants have explained, *see* Defs.' Br. at 22–24, no Defendant has taken a final agency action subject to challenge under the APA. The preparatory activities GSA took do not constitute final agency action. *See id*. at 24. And OA, which would implement any painting project at the EEOB—if the President decides to move forward with it—is not an agency that can produce an administrative record. *See id.* at 21–22. Accordingly, because there is no action or decision, it is axiomatic that Defendants cannot produce an administrative record.

As to Plaintiffs' failure-to-act claim under 5 U.S.C. § 706(1), "where an agency has failed to act, there simply may not be a record to review because the agency quite literally has done nothing." *Dall. Safari Club v. Bernhardt*, 518 F. Supp. 3d 535, 540 (D.D.C. 2021); *see Nat'l L. Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affs.*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012) ("[I]f an agency fails to act, there is no 'administrative record' for a federal court to review."); *see also Dastagir v. Blinken*, 557 F. Supp. 3d 160, 164 (D.D.C. 2021) (finding that local rule 7(n)(1) does not apply in failure to act cases). This is such a case. Because no decision has been made to paint the EEOB, and because the various administrative processes that will proceed any such decision have yet to occur, there is no underlying agency action that could have generated an administrative record.

The Supreme Court has explained that any challenge to an administrative record should be resolved only after a court has resolved such threshold issues. *See In re United States*, 583 U.S. 29, 32 (2017) ("[T]he District Court should have . . . first resolved the Government's threshold arguments . . . . Either of those arguments, if accepted, likely would eliminate the need for the District Court to examine a complete administrative record."); *see also Env't Def. Fund v. Regan*,

3

No. CV 20-762, 2024 WL 3887383, at *3 (D.D.C. Aug. 20, 2024) (citing same for principle that "the district court must address threshold reviewability questions before examining the administrative record"); *Fund for Animals v. Williams*, 391 F. Supp. 2d 132, 135, n.3 (D.D.C. 2005) ("Courts are not required to consider the administrative record pertaining to a challenged action when deciding whether it has subject matter jurisdiction."). This principle applies with special force where the threshold issues include the absence of final agency action that would generate an administrative record in the first place.

While Defendants did not—and could not—certify an administrative record, they provided the Court and Plaintiffs with GSA documents describing their limited activities relevant to this lawsuit, which have since concluded. *See* Dkt. No. 27-4 ¶¶ 8–14. Although not required by principles of administrative law or this Court's order, the information Defendants provided is sufficient for the Court to make an informed decision about whether Defendants have taken some surreptitious final agency action or failed to act on a mandatory duty. They have not.

Plaintiffs claim that purported gaps in GSA's submission and "new facts" in Defendants' submissions prejudice their ability to respond to Defendants' dispositive motion. *See* Dkt. No. 31 at 3. But these purported gaps and "new facts" underscore the fundamental problem inherent in Plaintiffs' case: they sued to challenge an action that has not been taken—indeed, that is still under preliminary consideration—so there is no record to lodge, and the relevant facts will continue to evolve until a decision is made about whether to paint the EEOB.

**II.     The MOU does not alter the Defendants' commitments.**

This Court should not countenance Plaintiffs' outrageous accusation that "GSA is seeking to contravene the commitment it made in prior sworn declarations to the Court: not to delegate its authority to alter the EEOB before March 1." Dkt. 31 at 4. The MOU between OA and GSA does

not change GSA's prior commitments. *See* Dkt. No. 27-2, Attach. A; Dkt. No. 27-4, Attach. A (hereinafter, "MOU").

GSA initially committed that it would "not authorize or engage in the physical actions of power washing/cleaning, painting, or repointing the EEOB before March 1, 2026," and that it would not "delegate its authority pursuant to 40 U.S.C. § 121(d), or use its gift authority pursuant to 40 U.S.C. § 3175, to perform any such actions before March 1, 2026." Dkt. No. 15-1 ¶ 6. On January 16, GSA extended these commitments to run until March 15, 2026. Dkt. No. 26-1 ¶ 3. GSA has not violated—and will not violate—these commitments.

Plaintiffs' allegation that "GSA attempts to delegate its authority to [OA] to paint the EEOB" by way of the MOU is misleading. Dkt. No. 31, at 5. GSA and OA have separate and independent statutory authority over renovations at the EEOB. *See* 40 U.S.C. § 3305 (GSA authority); Pub. L. No. 100-461, 102 Stat. 2268 § 590 (Oct. 1, 1998) (OA authority). Nevertheless, employing conditional language, the parties agreed that "*should* the President decide to move forward with the Project," "OA *would* handle project management for the Project," and "GSA *would* delegate any and all necessary authority for the Project to OA." Dkt. No. 27-2, at 7-8 (emphases added). The MOU's use of "should" and "would" clarify that any delegation to OA is future and conditional, so GSA has not delegated any authority *at all* to OA.

Moreover, OA has committed not to take any action to implement the Project "unless and until . . . the President decides to move forward with the Project" and OA completes the applicable NEPA and NHPA processes. *See* Dkt. No. 27-2 ¶¶ 10–12. Specifically, OA voluntarily agreed to "comply with any statutory and regulatory processes that might apply to the Project if it did not involve the EEOB and if OA were not managing it, to include [NEPA] and the [NHPA]," Dkt. No. 27-2 ¶ 10; to "consult with, and participate in public processes established by, the Commission of

5

Fine Arts, the Advisory Council on Historic Preservation, the National Capital Planning Commission, and the D.C. State Historic Preservation Office," *id.* ¶ 11. To leave no doubt, OA committed to "not authorize or take any action to implement the Project unless and until" the President directs and the processes in paragraphs 10 and 11 are complete, *id.* ¶ 12.

GSA has thus not violated its commitment not to delegate any authority to complete the Project before March 15, 2026. Dkt. No. 26-1 ¶ 3. Even if the President directed OA to proceed with the Project today, OA has committed not to take any action to implement the Project before completing the applicable NEPA and NHPA processes, which will not be complete before March 15, 2026. An agency's sworn declarations are entitled to a presumption of regularity. But if this Court desires, GSA can file another sworn declaration reaffirming its previously sworn commitments.

* * *

For the foregoing reasons, there is no need for the Court to address record issues at this time, and Defendants remain in full compliance with the commitments in their previously-filed sworn declarations.

* * *

Dated: February 5, 2026                    Respectfully submitted,

                                           Adam R.F. Gustafson
                                           Principal Deputy Assistant Attorney General

                                           Peter M. Torstensen
                                           Deputy Assistant Attorney General

                                           */s/ Marissa Piropato*
                                           Marissa Piropato
                                           Deputy Chief
                                           Environment and Natural Resources Division

United States Department of Justice
950 Pennsylvania Ave NW
Washington, D.C. 20530
Marissa.Piropato@usdoj.gov

*Counsel for Defendants*