**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**CULTURAL HERITAGE PARTNERS,
PLLC, et al.**,                                                Civil Action No. 1:25-cv-03969-DLF

Plaintiffs,

v.
                                                                    **FIRST AMENDED COMPLAINT
DONALD J. TRUMP, et al.**,                          **FOR DECLARATORY
                                                                    AND INJUNCTIVE RELIEF**

Defendants.

**FIRST AMENDED COMPLAINT
FOR DECLARATORY AND INJUNCTIVE RELIEF**

  Plaintiffs Cultural Heritage Partners, PLLC; Gregory Alan Werkheiser; Marion Forsyth

Werkheiser; and the DC Preservation League bring this civil action against Donald J. Trump, in

his official capacity as President of the United States; the General Services Administration, a

United States government agency ("GSA"); Edward C. Forst, in his official capacity as

Administrator of GSA; the National Park Service, a United States government agency ("NPS");

and Jessica Bowron, in her official capacity as Comptroller of NPS exercising the delegated

authority of NPS (collectively, "Defendants"), and allege as follows:

**INTRODUCTION**

  1.  This action seeks to prevent the imminent, unlawful, and irreversible alteration of

one of the most historically significant buildings in the United States—the Eisenhower Executive

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 1**

Office Building ("EEOB"), also known as the Old Executive Office Building and the State, War, and Navy Building—without compliance with the National Environmental Policy Act ("NEPA"), the National Historic Preservation Act ("NHPA"), and the Administrative Procedure Act ("APA").

2.    The EEOB is individually designated as a National Historic Landmark ("NHL") and is a contributing resource within the Lafayette Square National Historic Landmark District ("NHLD") surrounding the White House. Its French Second Empire design, gray granite façade, and visual relationship to the White House complex are central to its historic significance. Its monumental gray granite exterior and slate roof have never been painted and are character-defining features of both the building and the NHLD.

3.    Defendants plan to implement a project to paint the EEOB's exterior white and to clean and repoint the building (the "Project" or "EEOB Project").

4.    Defendants have maintained that there is no project—there is merely an "idea," outside of agency control, and thus outside the scope of NEPA and NHPA. Information revealed since Plaintiffs' initial Complaint undercuts Defendants' assertions. Documents Defendants themselves submitted show that beginning on or before August 2025, GSA took concrete planning and preparatory steps to implement the Project, months before Plaintiffs filed this suit. These documents capture significant Project preparations, including estimating costs, defining scope and methods and materials, coordinating vendors, and preparing procurement. GSA initiated these actions without conducting the public review processes required by NEPA and

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 2**

NHPA for a major federal action and federal undertaking, and without coordinating with NPS to fulfill NPS's responsibilities under NHPA. Further, these documents point to and reference numerous other documents that Defendants have refused to disclose without explanation.

5.     On January 29, 2026, GSA executed a Memorandum of Understanding ("MOU") with the Office of Administration ("OA") purporting to delegate authority over the Project to OA as soon as the President orders the Project to be implemented.

6.     Plaintiffs Gregory Alan Werkheiser and Marion Forsyth Werkheiser are attorneys whose practice focuses on cultural heritage and historic preservation law. They regularly visit and experience the White House complex, President's Park, the Lafayette Square NHLD, and the EEOB area. Plaintiff Cultural Heritage Partners, PLLC, maintains an office approximately 0.2 miles from the EEOB. The Project threatens Plaintiffs' aesthetic, recreational, professional, educational, and economic interests and is being advanced without the environmental and historic preservation reviews required by federal law.

7.     Plaintiff DC Preservation League is a nonprofit membership organization dedicated to preserving and enhancing the historic built environment of Washington, D.C., through advocacy and education.

8.     Plaintiffs seek declaratory and injunctive relief.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, including Article II, Section 3 of the United States Constitution (the "Take

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 3**

Care Clause"), NEPA, 42 U.S.C. §§ 4321–4370h; NHPA, 54 U.S.C. §§ 300101–307108; the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202; and the APA, 5 U.S.C. §§ 701–706.

10.    Venue is proper in this District under 28 U.S.C. § 1391(e)(1) because Defendants are officers and agencies of the United States residing in this District and because a substantial part of the events or omissions giving rise to these claims occurred here.

## PARTIES

11.    **Plaintiff Gregory Alan Werkheiser** is an attorney residing in Richmond, Virginia, and a founder and equity partner of Cultural Heritage Partners, PLLC. His practice focuses on cultural heritage, historic preservation, and federal environmental review under NEPA and NHPA. Earlier in his career, Mr. Werkheiser worked in the EEOB and is familiar with the building's interiors, materials, and relationship to the White House complex. That experience gives him a particularized and concrete interest in the preservation of the EEOB's exterior character beyond a generalized interest in historic preservation. For many years, he has regularly visited and experienced the White House complex, Lafayette Square NHLD, President's Park, and the EEOB area. Over the past five years, outside the height of the COVID-19 pandemic, he has traveled to Washington, D.C., approximately monthly and deliberately returned to the EEOB and its surroundings for aesthetic, recreational, professional, and educational purposes. He intends to continue doing so, including for visits planned for March 2026 and thereafter. The permanent painting of the EEOB's granite exterior would directly, concretely, and irreversibly diminish his aesthetic experience of the building, impair his interests

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  –  Page 4**

in a resource central to his preservation practice, and deprive him of the recreational and educational benefits he has derived from this historic setting through years of deliberate visits. The challenged MOU and EEOB Project impair his ability to enjoy and experience this historic setting and deprive him of procedural rights under NEPA and NHPA. These injuries are fairly traceable to GSA's execution of the MOU and Defendants' failure to initiate and complete required review processes, which create an imminent risk of irreversible alteration to the resource he regularly visits and values. A court order requiring statutory compliance and enjoining the MOU would restore his opportunity to participate in those processes and reduce the risk of permanent harm to the specific resource he plans to revisit in March 2026 and beyond.

12.     **Plaintiff Marion Forsyth Werkheiser** is an attorney residing in Richmond, Virginia, and a founder and equity partner of Cultural Heritage Partners, PLLC. Her practice likewise focuses on cultural heritage, historic preservation, and federal environmental and historic preservation review. Over the past fifteen years, she has made at least 146 trips to Washington, D.C., spending at least 246 days there. During those trips, she deliberately and repeatedly visited the EEOB and its immediate surroundings. Her familiarity with the building's gray granite exterior and its defining role within the Lafayette Square NHLD is both personal and professional. She regularly experiences the White House complex, Lafayette Square NHLD, President's Park, and the EEOB area for aesthetic, recreational, professional, and educational purposes; has concrete plans to return in March 2026; and intends to continue doing so thereafter. The permanent painting of the EEOB's granite exterior would directly, concretely,

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 5**

and irreversibly diminish her aesthetic experience of the building and impair her concrete

professional interests in a resource central to her preservation practice. Clients retain her in part

because of her proximity to and expertise regarding this specific historic district, and her ability

to use the EEOB and its surroundings as reference points in her work would be permanently

impaired by the proposed painting. The challenged MOU and EEOB Project harm her aesthetic,

recreational, educational, professional, and economic interests and deprive her of procedural

rights under NEPA and NHPA. Defendants' failure to conduct Section 106 consultation and

NEPA review has deprived her of the opportunity to participate in and influence mitigation

measures that could protect the resource her practice depends upon. That deprivation is fairly

traceable to GSA's execution of the challenged MOU and Defendants' bypassing of required

review processes. A court order requiring compliance would restore her opportunity to

participate and reduce the risk of permanent harm to the resource she has visited repeatedly and

plans to revisit.

   13. **Plaintiff Cultural Heritage Partners, PLLC ("CHP")** is a law firm based in

Richmond, Virginia, that conducts substantial professional activity in Washington, D.C. CHP is

committed to protecting cultural heritage and historic resources and regularly advocates for

compliance with NEPA and NHPA. CHP has maintained a Washington, D.C., presence since

2012 and currently leases office space approximately 0.2 miles from the EEOB. CHP

deliberately located its office near the EEOB and surrounding historic district to situate its

preservation-focused practice in the area with which it regularly engages on behalf of clients.

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 6**

CHP's attorneys use the White House complex, Lafayette Square NHLD, President's Park, and the EEOB area in their professional work, including client meetings, site visits, and educational activities. In direct response to GSA's execution of the challenged MOU and Defendants' failure to comply with NEPA and NHPA, CHP has diverted attorney time and firm resources away from existing client representations and scheduled preservation work to monitor, evaluate, and respond to the legal and preservation implications of the EEOB Project. These resources would not have been expended but for Defendants' conduct. The challenged MOU and Project impair CHP's professional activities and procedural interests in ensuring lawful federal review. Permanent alteration of the EEOB's granite exterior would directly impair CHP's ability to use the building and its surroundings in its preservation practice and diminish the professional and economic value of its office location, which was chosen specifically because of its proximity to this historic resource. These harms are fairly traceable to GSA's execution of the challenged MOU and Defendants' failure to initiate and complete review processes, not merely to the President's stated preferences. A court order requiring compliance would restore CHP's opportunity to participate in review and reduce the risk of irreversible alteration of the resource on which its practice depends.

14.     **Plaintiff DC Preservation League** ("DCPL") is a nonprofit, tax-exempt § 501(c)(3) membership organization headquartered in Washington, D.C. DCPL's mission is to preserve, protect, and enhance the built environment of Washington, D.C., through advocacy and education. DCPL's members live, work, and recreate throughout the District, including in and

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 7**

around the White House complex, Lafayette Square NHLD, President's Park, and the EEOB

area. At least one DCPL member, Executive Director Rebecca Miller, regularly uses and enjoys

the EEOB and its surrounding historic districts and intends to continue doing so. Ms. Miller has

concrete plans to return in February 2026. She would directly experience the aesthetic and

historic harm caused by permanent painting of the building's granite exterior. Ms. Miller is a

member of DCPL and has standing to sue in her individual capacity. In direct response to GSA's

execution of the challenged MOU and Defendants' failure to comply with NEPA and NHPA,

DCPL has diverted organizational resources away from existing preservation advocacy programs

and educational initiatives to monitor and respond to the proposed Project. These diversions

would not have been necessary absent Defendants' conduct. The challenged MOU and Project

harm DCPL's members' aesthetic and recreational interests and frustrate DCPL's mission.

Permanent alteration of the EEOB would irreversibly damage one of the most significant historic

resources within the built environment DCPL exists to protect. Defendants' failure to initiate

NEPA and NHPA review has deprived DCPL and its members of procedural rights and

opportunities for participation. These harms are fairly traceable to GSA's execution of the MOU

and failure to initiate required review. A court order requiring compliance would restore those

rights and reduce the risk of irreversible harm.

      15.    **Defendant Donald J. Trump** is the President of the United States. In that

capacity, he is responsible for ensuring that the laws of the United States are faithfully executed.

He has publicly announced and promoted the EEOB Project as driven by his personal aesthetic

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 8**

preferences. Consistent with that personal direction, the challenged MOU executed by GSA expressly reserves to the President the authority to decide whether the Project moves forward, confirming that this is not routine agency action, but a project personally directed by the President in a manner that bypasses the statutory obligations Congress has imposed on the agencies he oversees. He is sued in his official capacity.

16.     **Defendant Edward C. Forst**[1] is the Administrator of the General Services Administration ("GSA Administrator"). He is responsible for GSA's management of federal real property, including the EEOB, and for ensuring compliance with NEPA and NHPA when approving or overseeing alterations. He is sued in his official capacity.

17.     **Defendant General Services Administration** ("GSA") is an independent agency of the United States headquartered in Washington, D.C. GSA owns and manages the EEOB (Building No. DC0035ZZ) and is responsible for approving and overseeing alterations to the building's exterior. GSA is sued in its official capacity for declaratory and injunctive relief.

18.     **Defendant National Park Service** ("NPS") is an agency of the United States within the Department of the Interior, headquartered in Washington, D.C. NPS manages President's Park and properties within the Lafayette Square NHLD and has responsibilities under NHPA, including Sections 106 and 110(f), for undertakings affecting those resources. NPS is sued in its official capacity for declaratory and injunctive relief.

---

[1] In this Amended Complaint, Edward C. Forst is substituted for Michael J. Rigas, former Acting Administrator of the General Services Administration, who was named in the original Complaint, ECF No. 1.

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 9**

19.     **Defendant Jessica Bowron** is the Comptroller of the National Park Service,

exercising the delegated authority of the Director of the National Park Service ("NPS Director").

She oversees responsibilities relating to President's Park and the Lafayette Square NHLD and

compliance with NHPA, including Sections 106 and 110(f), for undertakings affecting NHLs and

historic districts. She is sued in her official capacity.

## LEGAL FRAMEWORK

### Administrative Procedure Act ("APA")

20.     The APA, 5 U.S.C. §§ 701–706, governs judicial review of federal agency action

and inaction. It authorizes "[a] person suffering legal wrong because of agency action, or

adversely affected or aggrieved by agency action within the meaning of a relevant statute," to

seek relief in federal court. 5 U.S.C. § 702.

21.     Courts may review "final agency action for which there is no other adequate

remedy in a court," *id.* § 704, and may also "compel agency action unlawfully withheld or

unreasonably delayed." *Id.* § 706(1). Courts must "hold unlawful and set aside agency action"

that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,"

"in excess of statutory jurisdiction, authority, or limitations," or taken "without observance of

procedure required by law." *Id.* §§ 706(2)(A), (C), (D).

22.     The APA defines "agency action" to include "the whole or a part of an agency

rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act[.]" 5

U.S.C. § 551(13).

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 10**

23.     Agency action must (1) "mark the 'consummation' of the agency's decisionmaking process"—rather than action that is of "merely tentative or interlocutory nature"—and (2) be action "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow'" to be considered "final." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

24.     Judicial review under the APA is based on the administrative record, which includes the materials directly or indirectly considered by the agency as part of its decision-making. *See* 5 U.S.C. § 706; *Oceana, Inc. v. Pritzker*, 217 F.Supp.3d 310, 316 (D.D.C. 2016) ("As a general matter, '[t]he task of the reviewing court is to apply the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court.'" (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985))).

25.     An administrative record includes everything that was "before the [agency] at the time [it] made [its] decision." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). The D.C. Circuit has interpreted the "whole record to include all documents and materials that the agency directly or indirectly considered and nothing more nor less." *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F.Supp.2d 1, 4 (D.D.C. 2006) (internal quotations omitted). "[T]he focal point of judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 11**

26.     Judicial review is based on an administrative record whether a plaintiff challenges agency action or agency inaction. *See Dall. Safari Club v. Bernhardt*, 518 F.Supp.3d 535, 539–40 (D.D.C. 2021) ("The better reading of the APA is that its record review requirement 'applies [regardless of] whether a court is reviewing agency action or inaction.'"). "Nothing in the [APA's] statutory text distinguishes the scope of record review based on whether the claim is directed at agency action or inaction." *Id.* at 539.

## National Environmental Policy Act ("NEPA")

27.     Judicial review under NEPA is governed by the APA. 5 U.S.C. §§ 701–706.

28.     NEPA seeks to "promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man." 42 U.S.C. § 4321. Federal agencies must "fulfill the responsibilities of each generation as trustee of the environment for succeeding generations" and "preserve important historic, cultural, and natural aspects of our national heritage." *Id.* §§ 4331(b)(1), (4).

29.     To achieve these purposes, federal agencies must prepare a "detailed statement" known as an Environmental Impact Statement ("EIS") for any "major Federal actions significantly affecting the quality of the human environment." *Id.* § 4332(C). An EIS must "address the significant environmental effects of [the] proposed project and identify feasible alternatives." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 172 (2025). A draft EIS must be published for public review and comment on the proposed action's potential environmental impacts and alternatives. 42 U.S.C. § 4336a(c).

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  –  Page 12**

30.     The term "major Federal action" is defined as an action "subject to substantial Federal control and responsibility." *Id*. § 4336e(10)(A). Major federal actions include alterations to historic districts, iconic federal buildings, and visual changes that may impair historic values. The Advisory Council on Historic Preservation's ("ACHP") regulations encourage early coordination of NEPA review with Section 106 review of NHPA. *See* 36 C.F.R. § 800.8(a)(1).

31.     If significance is uncertain, an agency may prepare an Environmental Assessment ("EA"), setting forth public review of its determination of whether an EIS is required. 42 U.S.C. § 4336(b)(2). EAs and EISs must take a hard look at the impacts of a proposed action, including environmental impacts, *before* issuing a decision that will allow the action to occur. *See id.* §§ 4332(C), 4336(b)(1)–(2).

32.     In limited circumstances, agencies may apply a categorical exclusion ("CE")[2] and avoid developing an EIS or EA. CEs are "a category of actions that a Federal agency has determined normally does not significantly affect the quality of the human environment," *id.* § 4336e(1), and are adopted by federal agencies after undergoing public notice and comment. However, agencies may not apply CEs where "extraordinary circumstances" exist, even where actions would not normally have a significant environmental effect. 43 C.F.R. § 46.205(c); GSA NEPA Guide 3.3.1. In such cases, "further analysis and environmental documents must be

_____

[2] The applicable regulations and guidance governing categorical exclusions in this case are those developed by the Department of the Interior, 43 C.F.R. pt. 46, which apply to NPS, and the GENERAL SERVICES ADMINISTRATION, PBS NEPA DESK GUIDE (1999) ("GSA NEPA Guide"), which applies to GSA.

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 13**

prepared for the action," 43 C.F.R. § 46.205(c)(1), through either an EA or EIS. GSA NEPA Guide 3.4.3.

33.     NEPA also requires federal agencies to disclose those effects to other agencies and the public before proceeding with that action. Public participation and disclosure are central features of NEPA, meant to: (1) ensure that agencies have carefully and fully contemplated the environmental effects of their actions before they make decisions, and (2) ensure that the public has sufficient information to review, comment on, and—if necessary—challenge these agency actions. *See id.* §§ 4321, 4332.

34.     NEPA "ensures that the agency will not act on incomplete information, only to regret its decision after it is too late to correct." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 371 (1989). As the Supreme Court has explained, "the broad dissemination of information mandated by NEPA permits the public and other government agencies to react to the effects of a proposed action at a meaningful time." *Id*. at 371.

**National Historic Preservation Act ("NHPA")**

35.     Through NHPA, 54 U.S.C. § 306101–307108, Congress established a national policy to preserve historic and cultural resources and imposed mandatory duties on federal agencies.

36.     Section 106 of NHPA, codified at 54 U.S.C. § 306108, requires federal agencies to: define an area of potential effects; identify historic properties within that area; assess the undertaking's effects; consult with required parties; and seek ways to avoid, minimize or

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 14**

mitigate adverse effects. 36 C.F.R. § 800.1(a). Federal agencies "must complete the section 106

process" prior to approving a federal undertaking or expending federal funds, because the

agency's actions must not "restrict the subsequent consideration of alternatives to avoid,

minimize or mitigate the undertaking's adverse effects on historic properties." *Id.* § 800.1(c); *see*

54 U.S.C. § 306108.

37.     Accordingly, courts have characterized Section 106 as a "stop, look, and listen"

provision; it does not dictate a particular substantive outcome, but it requires federal agencies to

consider fully the effects of their actions on historic properties before proceeding. *See*

*Muckleshoot Indian Tribe v. U.S. Forest Serv.,* 177 F.3d 800, 805 (9th Cir. 1999).

38.     NHPA defines "undertaking" as "a project, activity, or program funded in whole

or in part under the direct or indirect jurisdiction of a Federal agency, including—(1) those

carried out by or on behalf of the Federal agency; (2) those carried out with Federal financial

assistance; (3) those requiring a Federal permit, license, or approval; and (4) those subject to

State or local regulation administered pursuant to a delegation or approval by a Federal agency."

54 U.S.C. § 300320.  As defined in the Section 106 regulations, "effect means any alteration to

the characteristics of a historic property qualifying it for inclusion in or eligibility for the

National Register," 36 C.F.R. § 800.16(i).

39.     An "adverse effect" occurs when an undertaking may alter characteristics that

qualify a property for inclusion in the National Register in a manner that diminishes the

property's integrity of location, design, setting, materials, workmanship, feeling, or association.

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 15**

*Id.* § 800.5(a)(1). Examples include "[p]hysical destruction of or damage to all or part of the property," and "[c]hange of the character of the property's use or of physical features within the property's setting that contribute to its historic significance." *Id*. §§ 800.5(a)(2)(i), (iv).

40.     NHPA Section 110(f), 54 U.S.C. § 306107, imposes a heightened duty when an undertaking may directly and adversely affect an NHL. In such circumstances, the responsible agency must, to the maximum extent possible, undertake planning and actions necessary to minimize harm prior to approval and must afford ACHP an opportunity to comment. 36 C.F.R. § 800.10.

41.     Section 110(f) applies these duties "prior to the approval of any Federal undertaking"—not after decisions have been made. 54 U.S.C. § 306107.

42.     Section 107 exempts only the White House and its grounds, the Supreme Court building and its grounds, and the United States Capitol and its related buildings and grounds from NHPA. 54 U.S.C. § 307104. The EEOB is not included in that exemption.

43.     The EEOB is separately designated, separately managed, and located on its own lot west of the White House. 54 U.S.C. § 307104. Unlike the White House, it is individually designated as an NHL and listed in the NRHP. Nothing in Section 107 provides a textual basis to treat the EEOB as part of "the White House and its grounds."

44.     Moreover, there is a legal distinction between the broader "White House Complex" and the more narrowly defined "White House grounds" for purposes of 18 U.S.C. § 1752(c)(1)(A). In *United States v. Jabr*, this Court held that the "White House grounds" refers to

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  –  Page 16**

an eighteen-acre area, while the "White House Complex" encompasses a broader geographic

area bounded by "15th Street on the east, 17th Street on the west, E Street on the south, and

Pennsylvania Avenue on the north." No. 18-0105 (PLF), 2019 U.S. Dist. LEXIS 238718, at *20–

21, n.9 (D.D.C. May 16, 2019). On appeal, the D.C. Circuit concurred with this interpretation of

18 U.S.C. § 1752, thereby affirming Congress did not intend to equate "White House or its

grounds" with the larger "White House complex" and confirming the Treasury Building, which

was at issue in that case, is located outside of the White House grounds. *United States v. Jabr*, 4

F.4th 97, 102 (D.C. Cir. 2021).

     45.     Agency documents likewise confirm that the EEOB lies outside the White House

grounds. NPS's 2013 map of the Lafayette Square NHLD identifies the EEOB as a contributing

building within the Lafayette Square NHLD and, while specifying that the White House and its

grounds are "legally exempt from listing in the NRHP, according to Section 107 of [NHPA],"

the map does not include the EEOB as part of that exemption. ECF Nos. 7-16 ¶ 6; 7-11 at 2.

Similarly, a 2022 staff report of the District of Columbia Historic Preservation Review Board on

the Lafayette Square NHLD amendment describes the White House and its grounds as "critical

features adjacent to the historic district" and as specifically "legally exempt from listing in the

[NRHP]," but it does not identify the EEOB, a contributing resource to the NHLD, as exempt.

ECF Nos. 7-16 ¶ 6; 7-12 at 2.

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 17**

**The Office of Administration ("OA")**

46.     OA was established by Executive Order to consolidate administrative functions within the Executive Office of the President ("EOP"). Exec. Order No. 12,028, 42 Fed. Reg. 62895 (Dec. 12, 1977). OA is a component of the EOP.

47.     OA is not a federal agency. Federal agencies are created by Congress and possess only the authority granted by statute. *See Nat'l Fed'n of Indep. Bus. v. Dep't of Lab.,* 595 U.S. 109, 117 (2022).

48.     The D.C. Circuit has held that entities within the EOP are not agencies unless they exercise "substantial independent authority." *Citizens for Resp. & Ethics in Wash. v. Off. of Admin.*, 566 F.3d 219, 223–24 (D.C. Cir. 2009). OA performs tasks that are "entirely operational functions and administrative in nature." *Id.* at 224; *see also Soucie v. David*, 448 F.2d 1067, 1073 (D.C. Cir. 1971) (explaining that an executive entity within the EOP does not qualify as an agency if it cannot act on independent authority).

49.     Section 590 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act of 1989 (hereinafter "Section 590") authorizes the Director of OA to "accept and utilize voluntary and uncompensated services" and "gifts and bequests of property" to aid work on the EEOB. Pub. L. No. 100-461, 102 Stat. 2268 § 590(a) (Oct. 1, 1988). This authority, however, is not independent. Any use or sale of property accepted under that provision is subject to disapproval by the GSA Administrator. *Id.* § 590(c).

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 18**

50.    Section 590 does not confer independent authority on OA to oversee alterations to the EEOB or to assume responsibility for compliance with NEPA and NHPA, duties that Congress assigns to federal agencies.

### GSA's Authority to Delegate

51.    The Administrator of GSA may delegate authority only "to an official in the General Services Administration or to the head of another federal agency." 40 U.S.C. § 121(d)(1).

52.    A "federal agency" for purposes of that provision means "an executive agency or an establishment in the legislative or judicial branch of the Government," excluding specified entities. 40 U.S.C. § 102(5). An "executive agency" includes executive departments, independent establishments, and wholly owned Government corporations. 40 U.S.C. § 102(4).

53.    Courts and administrative authorities applying these definitions have held that OA is not an executive agency or independent establishment within the meaning of 40 U.S.C. § 102. *See Citizens for Resp. & Ethics in Wash. v. Off. of Admin.*, 566 F.3d 219, 224 (D.C. Cir. 2009); *Matter of Argus Secure Tech., LLC*, B-419422, B-419422.2, 2021 CPD ¶ 84 (Comp. Gen. Feb 22, 2021).

54.    OA is not an executive department, independent establishment, wholly owned Government corporation, or a federal agency created by statute. It therefore does not qualify as a "federal agency" to which GSA may delegate authority under 40 U.S.C. § 121(d)(1).

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 19**

**Constitutional Background and Take Care Clause**

55.    Article II of the United States Constitution provides that the President "shall take

Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. This duty applies to statutes

enacted by Congress, including NEPA, NHPA, and the APA. Executive action must conform to

those statutory requirements.

56.    The President and subordinate officials may not disregard or override statutory

mandates. *See Nat'l Treasury Emps. Union v. Nixon*, 492 F.2d 587, 604–05 (D.C. Cir. 1974); *see

also In re Aiken County,* 725 F.3d 255, 259 (D.C. Cir. 2013) (holding that the "President may not

decline to follow a statutory mandate or prohibition simply because of policy objections").

**FACTUAL ALLEGATIONS**

**A.    The EEOB's Historic Significance**

57.    Constructed between 1871 and 1888, the EEOB is one of the Nation's finest

examples of the French Second Empire style. It originally housed the Departments of State, War,

and the Navy.

58.    The EEOB is an NHL and has been listed in the National Register of Historic

Places ("NRHP") since 1969 (No. 69-06-08-0010). Its dark gray granite façade and purple slate

roof are defining features of both the building and the Lafayette Square NHLD. Actions affecting

the EEOB's exterior appearance affect the building itself and the integrity, setting, and character

of the surrounding NHLD.

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 20**

59.     Preservation standards, including the Secretary of the Interior's Standards for the Treatment of Historic Properties ("SOI Standards"), caution against applying paint coatings to historic masonry unless consistent with documented historic finishes and compatible with the substrate. Painting historically unpainted masonry can trap moisture, accelerate deterioration, and permanently alter or obscure original materials.

**B.   EEOB Project Planning Began on or before August 2025**

60.     On August 7, 2025, President Trump publicly shared renderings depicting all exterior surfaces of the EEOB bright white and commented: "The beautiful Executive Office Building, opposite the White House, as it would have looked in white stone but, nevertheless, is still beautiful in its original grey stone. What a great beauty it is!" ECF Nos. 7-3 ¶ 8; 7-4.

61.     On August 21, 2025, a Public Buildings Service ("PBS") official within GSA transmitted cost estimates to EOP, via email to Heather Martin, Deputy Assistant to the President, for painting the EEOB exterior. ECF No. 27-4 at 23–4.

62.     The scope of those estimates included "[p]aint[ing] the building exterior walls a white color using five (5) coats of acrylic based paint for good adhesion to a granite stone surface." *Id.*

63.     By October 2025, GSA coordinated a contractor site visit, involved its historic preservation staff, and developed a rough order of magnitude ("ROM") cost estimate for the Project. ECF No. 27-4 at 20–21.

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  –  Page 21**

64.     Internal communications reflect that, by mid-October 2025, GSA understood the Project was larger than EOP or GSA had originally anticipated. *Id.* at 20–21 ("this is trending toward a small or capital project…since it's shaping up to be a larger effort, we'll want to develop a more detailed scope and loop in Acquisitions for the bidding process").

65.     In November 2025, during a televised interview, President Trump stated that he intended to paint the EEOB exterior white and that bids were being obtained. He also referenced cleaning and repointing work. *See The Ingraham Angle,* "Seen and Unseen," Fox News, https://www.foxnews.com/video/6385030226112 (hereinafter "*Ingraham*").

66.     The interview reflected that significant consideration and planning had already occurred. President Trump appeared to have digital illustrations on hand showing the entire façade painted white and stated, "Gray is for funerals." *Id.* When asked when this work would occur, President Trump stated, "I'm getting bids right now from painters." *Id.*

67.     During that exchange, President Trump expressed surprise that Ms. Ingraham was aware of the plan, remarking, "You did you hear that? That's amazing." *Id.*

68.     GSA's Acting Commissioner for PBS submitted a Fifth Declaration to the court, in which he admitted that "[i]n or around August of 2025," EOP requested "a range of potential costs" for painting the EEOB, and GSA provided EOP with estimates prepared internally as well as those solicited from external vendors. ECF No. 27-4 ¶ 8.

69.     Despite GSA, by its own admission, having engaged in these planning activities at least as early as August, 2025, the Fifth Declaration contains internal inconsistencies. It states:

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

"In November 2025, I became aware of the President's television interview on Fox News ... As a result, I instructed my team at PBS *to begin* collecting information... In addition, my team prepared additional in-house, rough order of magnitude cost estimates for the Project, if one should occur." ECF No. 27-4 ¶ 11 (emphasis added).

70.    The record reflects that GSA did not begin collecting information only after the Fox News interview. Instead, GSA continued planning activity that had begun in August 2025, including evaluating and comparing costs, comparing costs to other large-scale restoration projects, and discussing which type of paint and how many coats it would apply. ECF No. 27-4 at 19 ("I think this estimate is too low. For comparison, each phase of the Capitol restoration was between 20-30M. And there were 5 phases. This is not a building that we are going to power wash.").

71.    Even as GSA engaged in these planning steps, and the President declared on Fox News that they were gathering bids from painters right now, no EA or EIS has been prepared, and no public notice, Section 106 consultation, or Section 110(f) consultation has been initiated.

72.    Concrete planning and procurement activities toward the end of painting, cleaning, and repointing the EEOB constitute a major federal action under NEPA and a federal undertaking under NHPA, triggering requirements for project review under both laws.

73.    In addition, GSA's purported delegation of authority to carry out the EEOB Project likewise constitutes a major federal action under NEPA and a federal undertaking under

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  –  Page 23**

NHPA, particularly given the Project's potential to directly and adversely affect an NHL and the Lafayette Square NHLD.

74.    The execution of the challenged MOU delegating authority is also a final agency action under the APA. The environmental and historic preservation reviews required by NEPA and NHPA must occur before a final agency action.

**C.  Related Litigation and Freedom of Information Act**

75.    On November 20, 2025, DCPL submitted a Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, request to GSA seeking records related to planning for alterations to the EEOB exterior. GSA has failed to determine whether to grant DCPL's request for expedited processing and failed to promptly disclose responsive records.

76.    DCPL has filed a separate action seeking relief for those FOIA violations. Compl., *D.C. Pres. League v. Gen. Servs. Admin.*, No. 1:26-cv-00032-JDB (D.D.C. Jan. 7, 2026), Dkt. No. 1.

77.    GSA's responsive pleading is due on or before February 27, 2026.

**D.  Imminence: Defendants' Pattern of Misdirection and Sudden Execution**

78.    Earlier in 2025, President Trump directed the demolition of a substantial portion of the East Wing of the White House complex.

79.    According to a complaint filed in this District, that demolition occurred without congressional approval, without review by federal commissions charged with oversight of development in the District of Columbia, without sufficient environmental review, and without

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  –  Page 24**

public input. *See* Amended Compl., *Nat'l Tr. for Hist. Pres. v. Nat'l Park Serv.* at 3*,* No. 1:25-
cv-04316-RJL (D.D.C.), Dkt. No. 19. Public reporting further indicated that President Trump
assured the public the East Wing would not be harmed—while demolition preparations were
withheld from the public and workers were required to sign non-disclosure agreements—and
demolition occurred soon thereafter. This sequence demonstrates that significant alterations to
nationally significant federal properties can proceed rapidly once directed.

80.    On January 29, 2026, GSA executed the MOU purporting to delegate its authority
over the EEOB Project to OA at the President's direction. ECF No. 27-4 at 7–8.

81.    The challenged MOU contains no commitment to comply with NEPA or NHPA.
The challenged MOU provides no assurance the EEOB will remain unaltered, and it describes no
guardrails for limiting what planning, procurement, or implementation may occur while this
Court considers Plaintiffs' claims. Upon information and belief, Defendants intend to proceed
with the EEOB Project as soon as conditions permit.

82.    Absent judicial intervention, Defendants will proceed without completing the
environmental and historic preservation reviews required by federal law.

**E.  <u>Irreparable Harm: Painting Will Permanently Damage the EEOB</u>**

83.    The EEOB's exterior walls are constructed of granite from the Green quarry in
Virginia and the Vinalhaven and Hurricane Island quarries in Maine. Its walls sit on a historic
masonry and hydraulic cement foundation. The building's material integrity is central to its
historic character.

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 25**

84.     Under the SOI Standards, repairs and alterations must not damage or destroy

materials that define a building's historic character. The SOI Standards specifically warn against

improper masonry cleaning, repointing, and changes to exterior finishes. Painting historic granite

is inconsistent with that guidance. U.S. Dep't of the Interior – N.P.S., *The Secretary*

*of the Interior's Stds for Rehab. & Illustrated Guidelines on Sustainability for Rehab. Historic*

*Buildings* vii (2011).

85.     The same federal government that has long enforced these standards against

others now proposes to disregard them here.

86.     Leading experts in architectural conservation and masonry uniformly conclude

that painting the EEOB's granite would permanently damage both its structural integrity and

historic authenticity.

87.     The EEOB granite is smooth, dense, and lacks calcium carbonate. Defendants

sought cost estimates to apply acrylic paint as early as August 2025, but acrylic paint can cause

severe damage to a granite façade, including because adhesion requires heavy abrasion. ECF No.

27-4 at 23–4. Even mineral silicate paints—often cited as the market's most technologically

advanced solutions—do not chemically bond with granite; they are designed to chemically bond

with calcium carbonate stones such as limestone or marble. To adhere to granite, they likewise

require primers and significant surface abrasion. Those preparatory steps—sandblasting,

scarifying, or acid etching—would permanently alter the granite façade.

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  –  Page 26**

88.     Once applied, paint does not strengthen granite, repair internal flaws, prevent

cracking, or improve structural durability. At best, it functions as a surface coating. It does not

prevent water infiltration driven by joints, sealants, flashing, mortar, and building movement.

Trapped moisture can freeze and thaw, leading to cracking, flaking, and surface loss. Because

mineral silicate coatings are breathable, they neither block moisture nor prevent staining from

iron leaching or pollutants. Staining would, moreover, be more visible against a white painted

surface.

89.     Paint removal would cause further irreversible harm. Primers and coatings cannot

be fully removed from granite without additional abrasion, scarring, or surface loss. Intricate

joints and carved elements would retain residual paint. The result would be a permanently dulled

and altered façade.

90.     The financial costs are substantial and recurring. Acrylic paints, mineral silicate

systems, and required primers cost significantly more than conventional paints yet yield no

benefit to granite. Abrasion of the façade would require exceptional labor and equipment, and

specially-trained applicators would elevate labor costs. Repainting and cleaning would be

required far more frequently than the building's historic twenty-year cleaning cycle. Because the

harm cannot be reversed, repainting would be required in perpetuity.

91.     The EEOB's white-painted chimneys do not justify painting the building. Those

chimneys are cast iron, not granite. Painting iron elements can be an appropriate preservation

practice; painting historic granite is not.

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 27**

92.      Changing the granite's color would fundamentally alter the EEOB's character and material authenticity. As an NHL designated in part for its original appearance, such a change is historically inappropriate and unnecessary to any exceptional governmental need. While cleaning, maintenance, and lighting improvements may enhance appearance without destroying original material, painting effects a permanent and ahistorical transformation.

93.      Painting the EEOB would also disrupt the historic visual relationship among the EEOB, the White House, and the Treasury Building. The White House is intentionally bright white; its flanking buildings are not. Painting the EEOB would dilute that visual hierarchy and could create pressure to paint the Treasury Building, compounding harm and cost.

94.      The threatened harm extends beyond the EEOB to the broader historic setting of the Lafayette Square NHLD. Painting the EEOB would create an adverse visual effect on all listed or eligible historic properties with a vantage point onto the EEOB, including the Lafayette Square NHLD, the Cosmos Club, the Richard Cutts House, the Benjamin Ogle Tayloe House, the Howard T. Markey National Courts Building, the War Risk Insurance Bureau Building, Ashburton House, St. John's Episcopal Church, the U.S. Chamber of Commerce Building, the Renwick Gallery, and the Department of the Treasury, all of which are listed in the NRHP and many of which are individual NHLs or contributing resources to the Lafayette Square NHLD.

F.   **Federal Agency Responsibility and Project Implementation**

95.      GSA owns and manages the EEOB. Any substantial cleaning, repointing, or painting of the EEOB's exterior would be carried out by or under GSA's authority using federal

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 28**

funds and federal procurement processes and would constitute a major federal action and an undertaking subject to NEPA, NHPA, and the APA. Any lawful delegation of GSA's authority would likewise constitute a major federal action and an undertaking subject to those statutes.

96.      NPS manages President's Park and properties within the Lafayette Square NHLD, which includes the historic setting immediately surrounding the EEOB. Undertakings that alter the appearance, setting, or views within those areas require compliance with NPS's NHPA responsibilities, including duties specific to NHLs.

97.      Based on President Trump's public statements, the preparation of professional digital renderings, internal GSA communications, contractor coordination, and cost estimating, GSA has conducted and continues to conduct internal planning and coordination for the EEOB Project.

98.      Defendants have not prepared any EA, EIS, or other NEPA document for the EEOB Project; have not documented the application of any categorical exclusion; and have not provided public notice or an opportunity for comment regarding the environmental effects of the proposed work.

99.      GSA's internal records reflect that, by October 2025, the EEOB Project had evolved to such a degree that it required cost estimating, contractor engagement, and procurement preparation. ECF No. 27-4 at 20–21. Such pre-approval activities constitute a major federal action subject to NEPA and an undertaking subject to the NHPA.

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 29**

100.    Under NEPA, agencies must take a hard look at environmental impacts *before* making irreversible commitments of resources or foreclosing alternatives.

101.    Upon information and belief, Defendants have not initiated the Section 106 process for the EEOB Project. They have not publicly defined an area of potential effects, identified historic properties within that area, assessed potential adverse effects, or initiated consultation with the ACHP, the District of Columbia State Historic Preservation Office, NPS in its capacity as steward of NHLs, or other consulting parties. To the extent Defendants contend the Project remains in preliminary planning, NHPA requires that the Section 106 process be initiated early in planning so that alternatives may be considered.

102.    Upon information and belief, prior EEOB projects involving OA were undertaken in coordination with GSA, with GSA retaining responsibility for NEPA and NHPA compliance. Plaintiffs are unaware of any prior instance in which GSA delegated its statutory authority and responsibility for the EEOB to OA or in which OA independently exercised authority over such projects under Section 590.

103.    The execution of the January 29, 2026, MOU purporting to delegate authority over the EEOB Project constitutes final agency action within the meaning of the APA.

**G. Plaintiffs' Interests and Injuries**

104.    Plaintiffs Gregory Werkheiser and Marion Werkheiser regularly visit and experience the White House complex, Lafayette Square NHLD, President's Park, and the EEOB area for aesthetic, recreational, professional, and educational purposes, and they intend to

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 30**

continue doing so. The EEOB and its historic setting are important to them personally and professionally. Mr. Werkheiser previously worked in the EEOB, and both Plaintiffs use the building and its surroundings in their preservation practice. Alteration of the EEOB's historic appearance would diminish their use and enjoyment of this historic setting.

105.    Plaintiff CHP relies on the continued historic character and integrity of the EEOB and its surroundings in its cultural heritage and preservation work. CHP maintains an office approximately 0.2 miles from the EEOB and uses the surrounding historic district for meetings, site visits, and educational activities. The challenged Project and Defendants' failure to comply with NEPA and NHPA impair CHP's professional and organizational interests.

106.    Plaintiff DCPL has members who live, work, and recreate in and around the Lafayette Square NHLD, President's Park, and the EEOB area and who regularly view and enjoy the EEOB and its historic setting. Those interests are harmed by the challenged actions.

107.    Plaintiffs and DCPL's members would participate in NEPA and NHPA processes for the EEOB Project if initiated, including reviewing environmental documents, submitting comments, and engaging in consultation. Defendants' failure to initiate and complete those processes deprives Plaintiffs of procedural rights and information necessary to protect their aesthetic, recreational, professional, economic, educational, and organizational interests.

//

//

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 31**

## CLAIMS FOR RELIEF

### COUNT I – Violation of NEPA and APA

108.    Plaintiffs incorporate by reference all preceding paragraphs.

109.    The APA provides a remedy to "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law[.]" 5 U.S.C. §§ 706(1), (2)(A), (C), (D).

110.    NEPA's procedural obligations are triggered as soon as an agency has jurisdiction over a proposal for a major federal action with a known objective and is preparing to choose among ways of accomplishing it. 42 U.S.C. §§ 4332(C), 4336e(12); *Scientists' Inst. for Pub. Info., Inc. v. Atomic Energy Comm'n*, 481 F.2d 1079, 1094 (D.C. Cir. 1973); *Sierra Club v. Peterson*, 717 F.2d 1409, 1414 (D.C. Cir. 1983). This is the point of commitment. *See Bennett*, 520 U.S. at 177–78.

111.    NEPA requires federal agencies to take a hard look at the environmental consequences of their proposed actions before making decisions that will affect the environment. NEPA directs federal agencies, "to the fullest extent possible," to include in every "major Federal action[] significantly affecting the quality of the human environment" a detailed statement on, among other things, the environmental impact of the proposed action, alternatives to the proposed action, and any irreversible and irretrievable commitments of resources. 42

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 32**

U.S.C. § 4332(C). NEPA requires agencies to consider effects on both the natural and physical environment and the way people experience that environment, including effects on historic and cultural resources and the settings in which those resources are experienced.

112.    Defendants have conducted concrete planning and pre-approval actions that will permanently alter an NHL and its setting within President's Park and the Lafayette Square NHLD, committing to a determined Project outcome. Defendants' actions have triggered NEPA's procedural obligations and constitute "major Federal actions" that require environmental review before further planning, approval, or implementation.

113.    In his Third Declaration, Andrew Heller confirms "If GSA were to propose significant changes to, or demolition of, a federal building, GSA would be required to do a more comprehensive analysis using an Environmental Analysis ('EA') or Environmental Impact Statement ('EIS')." ECF No. 21-1 ¶ 11.

114.    Defendants have not prepared an EA or EIS for the EEOB Project; have not documented reliance on a categorical exclusion; have not taken a hard look at the Project's direct and indirect effects on the human environment, including effects on historic properties, viewsheds, and the President's Park and Lafayette Square NHLD; have not evaluated a reasonable range of alternatives; and have not provided public notice or opportunity for comment.

115.    By proceeding with Project activities beyond the point of commitment, Defendants have unlawfully withheld and unreasonably delayed required agency action in

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 33**

violation of 5 U.S.C. § 706(1), and they have acted without observing procedures required by NEPA, in violation of 5 U.S.C. § 706(2)(D).

116.    To the extent that Defendants contend that any NEPA review has been conducted, such review is inadequate and fails to satisfy NEPA's requirements, rendering any decision to proceed with the Project arbitrary and capricious. *See id.* § 706(2)(A).

117.    As a direct result of these violations, Plaintiffs' concrete aesthetic, recreational, educational, professional, and procedural interests have been and will continue to be harmed absent declaratory and injunctive relief.

### COUNT II – Violation of Section 106 of NHPA and APA

118.    Plaintiffs incorporate by reference all preceding paragraphs.

119.    The APA provides a remedy to "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency action, findings, and conclusions found to be. . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law[.]" 5 U.S.C. §§ 706(1), (2)(A), (C), (D).

120.    NHPA's procedural obligations are triggered once there is a federal undertaking. 54 U.S.C. § 300320; 36 C.F.R. § 800.16(y).

121.    Prior to approving federal undertakings, agencies must: (a) determine and document the area of potential effects; (b) identify and evaluate historic properties that may be affected; (c) assess whether the undertaking will have adverse effects on those properties; (d)

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  –  Page 34**

consult with certain parties to develop and evaluate alternatives or modifications to the undertaking that could avoid, minimize, or mitigate adverse effects; and (e) afford the ACHP a reasonable opportunity to comment. *See* 54 U.S.C. § 306108; 36 C.F.R. §§ 800.4–800.6.

122.     An "adverse effect" occurs when an undertaking may alter, directly or indirectly, any of the characteristics of a historic property that qualify it for inclusion in the NRHP in a manner that would "diminish the integrity of. . .location, design, setting, materials, workmanship, feeling, or association." 36 C.F.R. § 800.5(a)(1). Examples of adverse effects include physical damage to a historic property and changes to physical features within a property's setting that contribute to its historic significance. *Id*. § 800.5(a)(2).

123.     Section 106 consultation must occur early in the planning process, before a project begins. 36 C.F.R. § 800.1(c); *Nat'l Tr. for Hist. Pres v. Blanck*, 938 F.Supp. 908, 919–24 (D.D.C. 1996).

124.     The EEOB is an NHL listed in the NRHP, a contributing resource within the Lafayette Square NHLD, and a federal historic property protected by NHPA. It is owned and managed by the United States through the GSA and is located within President's Park and the Lafayette Square NHLD managed by the NPS.

125.     The EEOB Project constitutes an "undertaking" because it is a project carried out under federal authority and subject to federal approval, and it will have adverse effects, because it will physically damage the EEOB and change physical features that contribute to its historic significance. *See* 36 C.F.R. § 800.5(a)(1), (2).

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  –  Page 35**

126.    Defendants have taken concrete planning and pre-approval actions without first initiating or completing the historic preservation review required by Section 106, including defining and documenting an area of potential effects; identifying historic properties; assessing adverse effects; consulting with required parties; or seeking to resolve adverse effects.

127.    By proceeding with Project activities for a federal undertaking that will adversely affect a historic property without first completing Section 106 review, Defendants have unlawfully withheld and unreasonably delayed agency action in violation of 5 U.S.C. § 706(1) and have acted "without observance of procedure required by law," in violation of 5 U.S.C. § 706(2)(D).

128.    To the extent Defendants contend that they have conducted any form of Section 106 review, any such review is inadequate and fails to meet the requirements of NHPA, rendering any decision to proceed under these circumstances arbitrary, capricious, and not in accordance with law under 5 U.S.C. § 706(2)(A).

129.    Plaintiffs' concrete interests are harmed by these violations.

## COUNT III – Violation of Section 110(f) of NHPA and the APA

130.    Plaintiffs incorporate by reference all preceding paragraphs.

131.    The APA provides a remedy to "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 36**

law," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law[.]" 5 U.S.C. §§ 706(1), (2)(A), (C), (D).

132.    Section 110 of NHPA requires federal agencies to assume responsibility for the preservation of historic properties under their jurisdiction and control and to manage those properties in a way that considers the preservation of their historic, archaeological, architectural, and cultural values. For properties of national significance, agencies must give special consideration to the preservation of those values. *See* 54 U.S.C. § 306102(b)(2).

133.    Section 110(f) requires responsible agencies to conduct such planning and actions as may be necessary to minimize harm for any undertaking that may affect an NHL "to the maximum extent possible," and to afford the ACHP an opportunity to comment. 54 U.S.C. § 306107. Compliance with Section 110(f) also calls for early and careful consideration of alternatives and mitigation measures, and public reporting of efforts to minimize harm. 36 C.F.R. § 800.10.

134.    The EEOB is an NHL listed in the NRHP, a contributing resource within the Lafayette Square NHLD and a federal historic property protected by NHPA. It is owned and managed by the United States through the GSA and is located within President's Park and the Lafayette Square NHLD managed by the NPS.

135.    The Project is a federal undertaking that will have adverse effects to the EEOB. *See* 36 C.F.R. § 800.5(a)(1), (2).

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 37**

136.    Defendants' concrete and pre-approval actions do not give special consideration to the historic value of the EEOB and the Lafayette Square NHLD, do not demonstrate a consideration of reasonable alternatives to avoid or reduce harm, and do not minimize harm to the maximum extent possible, violating NHPA Section 110 and 110(f).

137.    By failing to comply with Section 110(f) before advancing the Project, Defendants have unlawfully withheld and unreasonably delayed required agency action and acted without observance of procedure required by law in violation of the APA. 5 U.S.C. §§ 706(1), (2)(D).

138.    To the extent Defendants contend that they have met the requirements of Section 110(f), they have not met their affirmative stewardship duties to an NHL or the heightened requirements for NHLs, and any decision to proceed under these circumstances is arbitrary, capricious, and not in accordance with law under 5 U.S.C. § 706(2)(A).

139.    Plaintiffs will suffer irreparable harm absent declaratory and injunctive relief.

## COUNT IV – Violation of the APA (NHPA and NEPA)

140.    Plaintiffs incorporate by reference all preceding paragraphs.

141.    The APA provides a remedy to "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law[.]" 5 U.S.C. §§ 706(1), (2)(A), (C), (D).

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 38**

142.    "Major federal actions" under NEPA and "federal undertakings" under NHPA are final agency actions under the APA. *See* 5 U.S.C. § 551(13); *Bennett*, 520 U.S. at 177–78.

143.    Defendants GSA and NPS are federal agencies subject to the APA. 5 U.S.C. §§ 701–706. They are responsible for managing the EEOB and its surroundings in compliance with applicable statutes and regulations, including NEPA and NHPA.

144.    Defendants' concrete planning and pre-approval actions—including, but not limited to, cost estimating, contractor coordination, procurement preparation, and execution of the challenged MOU—constitute both a major federal action and a federal undertaking, and thus "agency action" under the APA, 5 U.S.C. § 551(13), that is arbitrary and capricious, contrary to law, and without observance of procedures required by law. 5 U.S.C. §§ 706(2)(A), (D).

145.    Defendants' failure to initiate environmental and historic review processes after triggering NEPA and NHPA while continuing to advance the Project constitutes agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

146.    To the extent Defendants rely on presidential direction as sufficient authority to approve or implement the EEOB Project without satisfying statutory prerequisites, Defendants are acting in excess of their statutory jurisdiction and authority. 5 U.S.C. § 706(2)(C). Congress has assigned responsibility for the management and alteration of federal property, including historic buildings, to agencies subject to explicit procedural and substantive constraints. Congress has not authorized those agencies to disregard those constraints based on a President's personal preferences.

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 39**

147.     As a direct result of Defendants' APA violations, Plaintiffs' concrete aesthetic, recreational, professional, educational, and procedural interests have been and will continue to be harmed absent declaratory and injunctive relief.

## COUNT V – APA Ultra Vires (Unlawful Delegation)

148.     Plaintiffs incorporate by reference all preceding paragraphs.

149.     The APA provides a remedy to "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law[.]" 5 U.S.C. §§ 706(1), (2)(A), (C), (D).

150.     By statute, the GSA Administrator may delegate authority only to an official within GSA or to the head of another federal agency. 40 U.S.C. § 121(d)(1).

151.     Statutory delegation provisions must be read according to their limiting terms; the permissive word "may" does not authorize delegation beyond the terms specified in the statute. *Halverson v. Slater*, 129 F.3d 180, 187–88 (D.C. Cir. 1997). Where Congress imposed specific limitations on delegation, a broader delegation theory cannot be used to "expand the specific delegation" permitted by the statute. *Id.* at 188.

152.     Congress imposed a specific limitation on GSA's delegation authority, and GSA may not expand delegation beyond those limits.

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 40**

153.    The MOU constitutes a final agency action because it reflects the consummation of GSA's decision to transfer Project authority and has immediate legal and practical consequences, including placing responsibility for Project implementation responsibilities with OA. 5 U.S.C. § 551(13); *Bennett*, 520 U.S. at 177–78.

154.    GSA does not have the statutory authority to delegate authority to OA, as OA is not a federal agency. 40 U.S.C. § 121(d)(1). OA is an administrative component within EOP and does not exercise independent authority.

155.    Section 590 does not provide OA with independent authority to implement and oversee major alterations to the EEOB or to assume compliance responsibilities under NEPA and the NHPA. Section 590 provides limited authority to accept voluntary services and gifts for EEOB-related purposes and expressly subjects the use or sale of accepted property and proceeds to GSA's disapproval. Pub. L. No. 100-461, § 590.

156.    GSA's purported delegation is not in accordance with law and is in excess of its statutory authority in violation of 5 U.S.C. §§ 706(2)(A), (C).

### COUNT VI – Violation of NHPA, NEPA, and the APA (Challenged MOU)

157.    Plaintiffs incorporate by reference all preceding paragraphs.

158.    The APA provides a remedy to "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 41**

law," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law[.]" 5 U.S.C. §§ 706(1), (2)(A), (C), (D).

159.    NEPA's procedural obligations are triggered as soon as an agency has jurisdiction over a proposal for a major federal action with a known objective and is preparing to choose among ways of accomplishing it, including at the point of any agency decision that transfers jurisdiction or commits the agency to a course of action such that there will be no later meaningful opportunity for environmental review to inform decision-making. 42 U.S.C. §§ 4332(C), 4336e(12); *Anacostia Watershed Socy v. Babbitt*, 871 F.Supp. 475, 482–83 (D.D.C. 1994). NHPA's procedural obligations are likewise triggered prior to any agency action that constitutes an undertaking affecting historic properties. 54 U.S.C. § 300320; 36 C.F.R. § 800.16(y).

160.    Assuming, *arguendo*, that the MOU was authorized by statute, GSA's execution of the MOU on January 29, 2026, constitutes final agency action within the meaning of the APA because it marks the consummation of GSA's decision-making regarding Project authority and has immediate legal consequences, including transferring responsibility for Project implementation to OA at the President's direction. *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). GSA executed the MOU without first completing mandatory compliance with NEPA and NHPA.

161.    The MOU is a major federal action under NEPA and a federal undertaking under NHPA because it is subject to substantial federal control and responsibility, advances and

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  –  Page 42**

enables a significant federal Project that will directly and adversely affect an NHL and its

historic setting, and requires GSA's continuing approval over the expenditure of funds used to

implement the Project. 42 U.S.C. §§ 4332(C), 4336e(10)(A); 54 U.S.C. §§ 300320, 306108.

NHPA defines undertaking to include "those subject to State or local regulation administered

pursuant to a delegation or approval by a Federal agency." 42 C.F.R. § 431.701.

162.    Where an agency takes action that transfers jurisdiction or commits the agency to

a course of action such that there will be no later meaningful opportunity for NEPA review to

inform decision-making, then NEPA compliance is required at the time of transfer or

commitment to a course of action. *Anacostia Watershed Soc'y*, 871 F.Supp. at 482–83. By

Defendants' own representations, subsequent implementation decisions made by OA through the

MOU would not be reviewable under the APA. ECF No. 27-1 at 30–31. The time for NEPA and

NHPA compliance was therefore at the time of the MOU's execution.

163.    Defendants have not prepared an EA or EIS in connection with the MOU; have

not documented reliance on a categorical exclusion; have not taken a hard look at the direct and

indirect effects of the transfer of Project authority on the human environment, including effects

on historic properties and the Lafayette Square NHLD; and have not initiated the consultation

and minimization-of-harm processes required by NHPA prior to executing the MOU.

164.    By executing the MOU without first completing NEPA and NHPA review,

Defendants have unlawfully withheld and unreasonably delayed required agency action in

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  –  Page 43**

violation of 5 U.S.C. § 706(1), and have acted without observance of procedure required by law in violation of 5 U.S.C. § 706(2)(D).

165.    To the extent Defendants contend that any NEPA or NHPA review has been conducted in connection with the MOU or the Project it authorizes, such review is inadequate and fails to satisfy the requirements of those statutes, rendering any decision to proceed arbitrary, capricious, and not in accordance with law. *See id*. § 706(2)(A).

166.    As a direct result of these violations, Plaintiffs' concrete aesthetic, recreational, educational, professional, and procedural interests have been and will continue to be harmed absent declaratory and injunctive relief.

## COUNT VII – Violation of Article II (Take Care Clause)

167.    Plaintiffs incorporate by reference all preceding paragraphs.

168.    Article II of the United States Constitution provides that the President "shall take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. This includes statutes enacted by Congress and duly promulgated regulations, including NEPA and NHPA.

169.    Congress, through NEPA and NHPA, has directed that federal agencies must follow specific procedures before undertaking or approving federal actions that may affect the human environment, including historic and cultural resources. *See, e.g.*, 42 U.S.C. § 4332(C); 54 U.S.C. § 306108. The APA requires that agency action comply with these statutes and their implementing regulations. 5 U.S.C. §§ 701–706.

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 44**

170.     Plaintiffs allege that President Trump has personally directed, and continues to direct, a federal Project to clean, repoint, and paint the exterior of the EEOB—an action that will permanently alter the appearance and historic character of an NHL without regard to the procedures mandated by NEPA and NHPA. In a televised interview, the President publicly stated that he wanted to "paint" the EEOB white and said that he was "getting bids right now from painters," while displaying imagery of the building colored entirely white. *See Ingraham.* Consistent with those directives, the MOU executed by GSA on January 29, 2026 expressly grants to the President the authority to decide whether the Project moves forward, confirming that the Project is personally directed by the President.

171.     On information and belief, and in light of the President's directive and public statements, GSA and NPS officials began planning, contracting, and taking other concrete steps to implement the EEOB Project without first initiating or completing the environmental and historic preservation reviews required by NEPA and NHPA. Those steps include cost estimating beginning in August 2025, contractor site visits, development of a ROM cost estimate, and procurement planning, all of which occurred without NEPA or NHPA compliance. On January 29, 2026, following that period of pre-approval planning activity and without completing the required review, GSA executed the MOU purporting to delegate authority over the Project to OA at the President's direction, itself an act in furtherance of the Project taken without compliance with NEPA and NHPA.

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 45**

172.    Rather than ensuring that NEPA and NHPA are faithfully executed, the President's directive and the actions of his subordinates taken to carry it out, including pre-approval planning beginning in August 2025 and the subsequent execution of the MOU, are designed to bypass or disregard those statutes' requirements. The President failed to take care that the laws be faithfully executed and has instead directed executive branch officials to act contrary to law, substituting his personal aesthetic preferences for the congressional mandates that govern federal action affecting historic properties.

173.    The President's actions and directives concerning the EEOB Project, as alleged herein, violate Article II, Section 3 of the Constitution because they (a) direct federal officers to proceed with a project in a manner that contravenes NEPA and NHPA, including by initiating planning and procurement activities and executing the MOU without completing required environmental and historic preservation review, and (b) reflect an abdication of the constitutional duty to ensure that those statutes are enforced and followed in good faith, as evidenced by the administration's pattern of advancing the Project outside of public view while bypassing the review processes Congress has mandated.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

A.  Declare that Defendants' approval, funding, planning, contracting for, and implementation of the EEOB Project without compliance with NEPA, NHPA (including Sections 106, 110, and 110(f)), and the APA is unlawful;

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 46**

B.  Declare and hold unlawful the January 29, 2026, MOU between GSA and OA unlawful as in excess of GSA's statutory authority under 40 U.S.C. § 121(d)(1);

C.  Declare that OA lacks independent statutory authority to assume GSA's federal compliance obligations with respect to the EEOB Project under NEPA and NHPA;

D.  Declare that GSA's execution of the January 29, 2026 MOU without first completing the review processes required by NEPA and NHPA violates the APA, including 5 U.S.C. § 706(1) and § 706(2)(A), (C), and (D);

E.  Declare that implementation of the EEOB Project without compliance with NEPA and NHPA is inconsistent with the President's obligation under Article II, Section 3 of the Constitution to take care that the laws be faithfully executed;

F.  Enjoin Defendants, and their officers, agents, employees, contractors, and all persons acting in concert with them, from initiating, authorizing, funding, contracting for, or conducting any activity related to cleaning, repointing, painting, or otherwise altering the EEOB's exterior that would commit resources, foreclose alternatives, or prejudice the outcome of required environmental and historic preservation review, unless and until Defendants have fully complied with NEPA, NHPA (including Sections 106, 110, and 110(f)), and the APA;

G.  Enjoin Defendants and their officers, agents, employees, contractors, and all persons those acting in concert with them from implementing or relying upon the January 29, 2026, MOU between GSA and OA;

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 47**

H.  Enjoin subordinate executive officials, including GSA and NPS officials, from acting pursuant to or in reliance upon any presidential directive to implement the EEOB Project without first completing the review process required by NEPA and NHPA;

I.  Order Defendants to initiate, conduct, and complete all legally required NEPA and NHPA processes for the EEOB Project prior to any further approval, funding, or implementation, including preparation of appropriate NEPA documentation, public notice and opportunities for comment, and consultation with the ACHP, the District of Columbia State Historic Preservation Office, NPS, and other appropriate consulting parties, including as required by Sections 106 and 110(f) of NHPA;

J.  Award Plaintiffs their reasonable attorneys' fees and costs as permitted by the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable authority; and

K.  Grant such other and further relief as the Court deems just and proper.


Respectfully submitted,

/s/ Gregory Alan Werkheiser
Bar No. VA210
CULTURAL HERITAGE PARTNERS, PLLC
1717 Pennsylvania Avenue NW, Suite 1025
Washington, DC 20006
Tel: (703) 408-2002
Email:  greg@culturalheritagepartners.com


Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 48**

/s/ Marion Forsyth Werkheiser
Bar No. 486465
CULTURAL HERITAGE PARTNERS, PLLC
1717 Pennsylvania Avenue NW, Suite 1025
Washington, DC 20006
Tel: (202) 567-7594
Email:  marion@culturalheritagepartners.com

/s/ Lydia Dexter
Bar No. OR0032
CULTURAL HERITAGE PARTNERS, PLLC
1717 Pennsylvania Avenue NW, Suite 1025
Washington, DC 20006
Tel: (202) 567-7594
Email: lydia@culturalheritagepartners.com

/s/ Jessie Barrington
Bar No. VA224
CULTURAL HERITAGE PARTNERS, PLLC
1717 Pennsylvania Avenue NW, Suite 1025
Washington, DC 20006
Tel: (202) 567-7594
Email: jessie@culturalheritagepartners.com

/s/ Caitlin McCurdy, Bar No. NH0004
CULTURAL HERITAGE PARTNERS, PLLC
1717 Pennsylvania Avenue NW, Suite 1025,
Washington, DC 20006
Tel: (202) 567-7594
Email: caitlin@culturalheritagepartners.com

COUNSEL FOR PLAINTIFFS

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 49**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on

Plaintiffs via CM/ECF electronic notice.

/s/ ***Gregory Alan Werkheiser***

*GREGORY ALAN WERKHEISER*

Attorney for Plaintiffs

Cultural Heritage Partners, PLLC
1717 Pennsylvania Avenue NW,
Suite 1025
Washington, DC 20006
Office: 202-567-7594

**FIRST AMENDED COMPLAINT  -  Page 50**