UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CULTURAL HERITAGE PARTNERS,
PLLC, *et al.*,

    Plaintiffs,

v.

DONALD J. TRUMP, *et al.*,

    Defendants.

Case No. 1:25-cv-03969-DLF

**DEFENDANTS' NOTICE OF PLANNED TESTING**

Defendants hereby respectfully provide notice of their intent to implement a Façade Condition Assessment and Painting Feasibility Study ("Study") to evaluate (1) the best methods for cleaning, restoring, and preserving the stone masonry of the Eisenhower Executive Office Building ("EEOB"); and (2) the potential effects of applying and removing a mineral silicate coating to the exterior of the EEOB. The Study will consist of visual and hands-on surveys, petrographic analysis, and a painting feasibility study, and it will generate real-world data that will identify appropriate methodologies to address existing areas of degradation and assist the President and the Office of Administration ("OA") in determining how to proceed with beautifying the exterior of the EEOB. *See generally* Ex. A, Third Decl. of Heather Martin ("Third Martin Decl.") (July 20, 2026). Although the Study is not prohibited by any court order—and thus the Court's permission is not required—Defendants provide this notice to be forthcoming with the Court. OA intends to begin testing as described below (and in the attached declaration) no earlier than August 3, 2026. *See* Third Martin Decl. ¶ 20.

1

## I.    Background

In considering the various ways to improve and beautify the EEOB, OA engaged the services of an environmental services contractor ("Environmental Consultant") to provide additional information on the range of potential effects associated with cleaning, repointing, and painting the building. Third Martin Decl. ¶ 4. While working with the Environmental Consultant, OA identified several areas where the EEOB's façade is deteriorating, including areas of granular disintegration, delamination, spalling, cracking, and staining from exposure to various surface contaminants. *Id.* OA and the Environmental Consultant also noted that there is "a dearth of published scientific evidence on the potential effects of using a mineral silicate paint on a granite base and the ability to remove it." *Id.* Given OA's need to ascertain and treat existing causes of degradation to the EEOB's façade and the lack of reliable evidence concerning the potential effects of painting the granite building, OA contracted with a subject matter specialist in civil engineering and applied sciences ("Building Consultant") to develop the Study. *Id.* ¶ 6. Additionally, the Building Consultant intends to hire an independent third-party reviewer to perform a peer review of the testing process and to ensure the scientific findings are accurate. *Id.*

Further, both the Commission of Fine Arts and National Capital Planning Commission ("NCPC") have encouraged OA to engage in thorough testing in connection with OA's consultation with both entities. *Id.* ¶ 17. The NCPC, for example, "[r]equest[ed] the applicant prepare a mock-up of the proposed granite material painted as proposed to reflect the actual site and lighting conditions **in addition to testing**, in advance of the next Commission review." *See* NCPC Commission Action at 3 (May 7, 2026) (emphasis added).[1] While no statute requires such a testing

---

[1]    Accessible at https://www.ncpc.gov/docs/actions/2026May/8777_Eisenhower_Executive_Office_Building_Exterior_Beautification_Project_Commission_Action_May2026.pdf.

protocol, OA seeks "to undertake this testing protocol to (1) better understand the causes of deterioration of the EEOB's façade and inform methodologies for restoring and repairing degraded areas, and (2) to evaluate whether mineral silicate paint can be applied and removed without adversely affecting the national historic landmark."  Third Martin Decl. ¶ 18.

Both NEPA and the NHPA contemplate the option of engaging in testing processes in advance of completing those analyses. *See, e.g.*, *Pub. Emps. for Env't Resp. v. Hopper*, 827 F.3d 1077, 1082 (D.C. Cir. 2016) (describing geophysical surveying and data collection in a NEPA process); *Oglala Sioux Tribe v. U.S. Nuclear Regul. Comm'n*, 45 F.4th 291, 306 (D.C. Cir. 2022) (describing optional field survey in NHPA process).

## II.    The Study

The Study has two components: a façade condition assessment, which will include a visual and hands-on survey and petrographic analysis, and a painting feasibility study on existing stone at the EEOB. *Id.* ¶¶ 8–16.

For the façade condition assessment, the Consultant first intends to conduct a complete visual and hands-on survey of representative areas of the granite façade of the EEOB to identify the causes, types, and extent of damage, deterioration, and staining. *Id.* ¶ 8. As described in the Third Martin Declaration, OA intends for the survey to "provide information on the surface condition of the façade, inform OA's approach to any cleaning or other surface treatments, and provide a basis to predict the long-range effects of those treatments to the building" and to "provide guidance on potential paint application approaches and any surface preparations that could minimize potential negative effects." *Id.* ¶ 9. After the survey, the Consultant will extract up to ten core samples of two inches in depth and diameter from the EEOB's exterior from targeted areas on the building's façade, including areas that are experiencing visible deterioration. *Id.* ¶ 10. They "will

be lab-tested to evaluate the microstructural condition of the stone (e.g., microfractures, grain separation), stone mineral composition, surface condition, including the presence of preexisting coatings and contaminants, and weathering effects." *Id.*

Along with the façade condition assessment, OA intends to carry out a painting feasibility study. *Id.* ¶ 11. Because similarly weathered stone samples are not available, "OA intends to establish a small testing area on the EEOB composed of four 2 foot by 2 foot panels at an inconspicuous location" and test two different mineral silicate paints for adhesion and removal. *Id.* ¶ 14. Additionally, three further core samples will be taken from the tested areas for petrographic analysis and compared to the samples taken from unpainted areas. *Id.* ¶ 15. All tested areas will be cleaned by the gentlest possible means to remove the paint from test areas, and any partial depth core holes or damaged stone will be prepared with traditional stone repair techniques using materials that match the existing materials as closely as feasible. *Id.* ¶¶ 10, 14, 16.

## III.   Conclusion

Defendants provide this notice  to avoid potential confusion about the nature of the activity that will occur. None of the preliminary testing activities outlined above constitute a decision to proceed with a painting project at the EEOB. Defendants remain committed to the representations made in the First and Second Declarations of Heather Martin, Dkt. Nos. 27-2 and 38-2, and are actively engaged in the relevant NEPA and NHPA analyses, along with public processes before the CFA and NCPC. Third Martin Decl. ¶ 19.

* * *

Dated: July 20, 2026

Respectfully submitted,

Adam R.F. Gustafson
Principal Deputy Assistant Attorney General

Marissa Piropato
Deputy Chief, Natural Resources Section

*/s/ Michelle Nkeng*
Michelle Nkeng
Mark Widerschein
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Michelle.Nkeng@usdoj.gov
Mark.Widerschein@usdoj.gov

*Counsel for Defendants*

5