# EXHIBIT 1

BEFORE THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CULTURAL HERITAGE PARTNERS, PLLC, et al., Plaintiffs,

vs.

DONALD J. TRUMP, et al., Defendants.

Case Number 25-cv-3969

Washington, D.C.
February 6, 2026
9:33 a.m.

- - - - - - - - - - - - - - - - -

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE DABNEY L. FRIEDRICH
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiffs:
GREGORY WERKHEISER, ESQ.
MARION WERKHEISER, ESQ.
JESSIE BARRINGTON, ESQ.
LYDIA DEXTER, ESQ.
CAITLIN MCCURDY, ESQ.
Cultural Heritage Partners, PLLC
1811 East Grace Street
Suite A
Richmond, Virginia 23223

For the Defendants:
ADAM GUSTAFSON, ESQ.
MARISSA PIROPATO, ESQ.
U.S. Department of Justice
950 Pennsylvania Avenue Northwest
Washington, D.C. 20530

Official Court Reporter:
SARA A. WICK, RPR, CRR
333 Constitution Avenue Northwest
Room 4704-B
Washington, D.C. 20001
202-354-3284

Proceedings recorded by stenotype shorthand.
Transcript produced by computer-aided transcription.

P R O C E E D I N G S

(Call to order of the court.)

(All participants present telephonically.)

COURTROOM DEPUTY: We are on the record with Civil Case 25-3969, Cultural Heritage Partners, PLLC, et al., versus Donald Trump, et al.

Counsel starting with the plaintiff, please identify yourself.

MR. WERKHEISER: This is Greg Werkheiser for the plaintiffs, joined by Marion Werkheiser, Jessie Barrington, Lydia Dexter, and Caitlin McCurdy, all counsel of record in the case.

THE COURT: Good morning.

MR. GUSTAFSON: Good morning, Your Honor. This is Adam Gustafson for the federal defendants. I am here with Marissa Piropato.

THE COURT: I scheduled this telephonic hearing to discuss the current briefing schedule that's in effect to address the defendants' motion to dismiss or, in the alternative, motion for summary judgment.

Since the Court set the briefing schedule, the Office of Administration and the GSA have entered into a Memorandum of Understanding in which the Office of Administration will exercise full control of the EEOB project.

In the declarations that are attached to the defendants'

motion, the Office of Administration has voluntarily committed to complying with the statutory and regulatory processes provided for in the National Historic Preservation Act and in the National Environmental Policy Act and consulting with and participating in public processes established by the Commission on Fine Art, the Advisory Council on Historic Preservation, the National Capital Planning Commission, and the D.C. State Historic Preservation Office.

The Office of Administration has not committed to not taking action on the EEOB project before March 15, as GSA had previously done, but the Office of Administration has informed, through its chief financial officer and deputy director, that it will not take any action to implement the EEOB project unless and until the president directs it to do so and the National Historic Preservation Act and the National Environmental Policy Act processes have been completed.

Mr. Gustafson, can I take it that these commitments still remain true?

MR. GUSTAFSON: They do, Your Honor, and those processes will take us well past February 15.

THE COURT: You mean March 15?

MR. GUSTAFSON: I'm sorry, Your Honor. March 15.

THE COURT: March 15. All right.

Have you begun those processes, or you believe they're still premature?

MR. GUSTAFSON: It's still premature, Your Honor. We've started initial outreach to the relevant bodies, but that process is still really in its infancy.

THE COURT: All right. The plaintiffs suggested in their emergency scheduling motion that they may file an amended complaint based on these latest facts and that the current briefing schedule may need to be adjusted.

They also argue that the defendants have not complied with the Court's December 12 order directing the defendants to provide the administrative record and that GSA has violated its declaration committing not to delegate its authority over this matter before March.

As I see it, the administrative record issue is very much tied up with the Court's consideration of the defendants' pending dispositive motion, and as for GSA allegedly violating its commitment to not delegate its authority before March, that, too, in my view, depends on forthcoming briefing and whether the Office of Administration does indeed have independent authority under a separate statute to oversee this project without any GSA delegation. But I think both of those legal issues need further briefing before the Court can really address them.

But, Mr. Werkheiser, I did schedule this hearing because I understand that with this change in facts, you may want to file an amended complaint. We may need to reset the briefing schedule. So that's why we are on this call.

So tell me what you're thinking at this point.

MR. WERKHEISER: Yes, Your Honor. Thank you for convening us on short notice and for making it open to the public.

To cut to the chase, we do believe new facts and circumstances have been introduced that would require us to file an amended complaint to deal with what we will certainly allege is an unlawful attempt to delegate GSA's authority to a nonfederal agency, which is prohibited by the exact language that defendants cite for their authority.

THE COURT: Do you disagree that the -- again, I'm not going to decide this today, but the statute that the defendants cite seems, just on its face, to give the Office of Administration authority to oversee a project such as this at the EEOB.

Do you interpret that statute differently? Do you believe that the Office of Administration cannot oversee the job without GSA's involvement? Tell me -- preview for me what your position is on that.

MR. WERKHEISER: Yes, Your Honor.

There are two problems with the citations that the Court provides. Fundamentally, the statute that GSA relies on allows delegation in the first instance only to a federal agency. It says, quote, "The administrator may delegate authority conferred on the administrator by this subtitle to an official in the

General Services Administration or to the head of another federal agency."

Defendants themselves take the position that the Office of Administration is not a federal agency. We certainly agree. That should be the end of the inquiry. They do not have the authority to take an agency that has responsibilities and give it to an agency that does not have responsibilities.

But defendants then go on to mischaracterize that office as having separate independent authority to oversee EEOB renovations. The law defendants cite says no such thing. It only authorizes OA to act essentially as a fiscal agent, accepting private money and gifts in support of such renovations, not to supervise them or to assume GSA's responsibility to ensure that the project complies with federal laws.

Indeed, the independent authority quote they cite still is subject to GSA's authority. The code says that any use of funds accepted by OA is subject to the disapproval of the General Services Administration. So GSA retains both its authority and responsibility.

This, Your Honor, reveals, I think, the point of this attempted maneuver at this last stage by trying to shift the responsibility Congress gave GSA to an entity that is not an agency. Defendants are attempting to place decisionmaking authority beyond judicial reach while the case is pending.

At minimum, whether that delegation is lawful is a pure question of law that requires judicial resolution. It cannot be brushed aside as irrelevant or a hypothetical.

THE COURT: Mr. Gustafson, again, the Court is going to need briefing on this, but I was confused at the defendants' position. If the Office of Administration does indeed have separate and independent statutory authority to manage this project at the EEOB, why does the last section of the MOU state that GSA would delegate any and all necessary authority for the project to the Office of Administration?

MR. GUSTAFSON: Your Honor, that is --

THE COURT: And GSA did commit to not delegate any authority until at least March. I understand that it has -- this is a "would," not that GSA has delegated the authority, but answer my first question.

Are you taking the position that the Office of Administration has the independent authority to oversee this project without GSA's involvement?

MR. GUSTAFSON: Yes, Your Honor. We think that is clear from the text of the statute that's quoted in the Memorandum of Understanding. Contrary to what Mr. Werkheiser has said, it does not merely mean allow OA to act as a fiscal manager but, rather, allows OA both to accept and utilize gifts as money, et cetera, for renovation and other activities.

So clearly, the statute empowers the Office of

Administration not only to accept but also to utilize those gifts. And so we think that's a separate and independent basis of its authority.

The provision of the MOU that you referred to at the end, that's really just a catchall safe harbor. We don't anticipate that GSA will need to delegate any authority to the Office of Administration or to anyone else.

THE COURT: Is there historic -- sorry to interrupt, but is there historic practice in the EEOB in which the OA has managed projects similar to this without GSA involvement?

MR. GUSTAFSON: The OA certainly does exercise a management function for EEOB, and we would be happy to provide details on that in our future briefing.

The D.C. Circuit has recognized that the Office of Administration serves this kind of management function, including through procurement. And so the Office of Administration is the chief tenant of the Eisenhower Executive Office Building. So in that role, it often is acting on behalf of the other federal tenants of that building for this sort of thing.

Of course, no project precisely like this one has been undertaken. But in our future briefing, we would be happy to provide examples of other instances in which the Office of Administration has exercised its management role.

THE COURT: All right. Well, Mr. Werkheiser, it

sounds like the next step is for you to file your amended complaint and the Court set a briefing schedule following the filing of that complaint. And I would ask that the parties meet and confer, because I do think time is of the essence.

I am accepting the government at its word that the Office of Administration is not going to take any action until the processes under the National Historic Preservation Act and the National Environmental Policy Act have been completed.

So despite the definitive March 15 hold date that GSA has committed to, I am comfortable proceeding, given the commitment that the government is making not to proceed on this project until these processes are completed.

And this is the relief that you seek in your current complaint. So unless you determine that actions are happening that suggest that that's not in fact occurring, that the government has taken steps that trigger these statutory processes and the Office of Administration is not complying, then obviously, you should seek emergency relief, as you did initially.

MR. WERKHEISER: We understand Your Honor's perspective, and we would just note two things for the record, if we could.

There is nothing in the MMU, other than our collective trust in assurances by the government, that prevents the president, in his sole discretion, from activating that

delegation at any moment, including while this litigation is ongoing. Defendants have said, in essence, don't worry, this is a springing delegation, it only goes into effect when the president decides he wants to paint the EEOB. That is cold comfort since defendants have already told the Court that the Court is powerless to constrain the president.

The language of the MOU does not say OA will determine or GSA will determine when the delegation is effective. It puts it ultimately in the hands of, and only the hands of, the President of the United States.

So he is not here. GSA may be represented. We're not sure if OA is represented separately. They're not defendants here. And I would just say, in the larger context of what we know about these cases and controversies around procedures and historic preservations, that is quite a leap of faith for us, to suggest that the president alone should be trusted when he won't be the one showing up to answer for it if something goes wrong.

And then secondly, Your Honor, just for the record, defendants also say don't worry, the OA will voluntarily conduct NEPA and NHPA review. How is that enforceable and against whom when they change their mind?

Defendants explicitly argue in their January 29th memo that OA is not subject to APA, and therefore, there will be no opportunity to review or challenge these voluntary processes. In their response last night, they argue that OA is not, quote,

"an agency that can produce an administrative record."

So we, of course, defer to Your Honor's instincts about how stable the environment is to allow us to go back and recomplain. But we do want to note those concerns for the record.

THE COURT: All right. Well, as we've discussed before, Mr. Werkheiser, these arguments and the extent to which the Court has any power to order the president to take any specific action or the Office of Administration, these are difficult legal issues that I would expect to be briefed.

MR. WERKHEISER: Yes, Your Honor. We absolutely will, and certainly, to the extent that if we're asked what relief we will be seeking now, to the extent that there will be any enjoining of any agency, it would be sufficient to enjoin GSA from acting on that delegation until and unless we've resolved the questions of the administrative record and/or the new complaint and the legal issues as to whether that delegation is legal.

THE COURT: As I understand it, the government is saying that the Office of Administration is acting independently. And I understand you disagree that they have the statutory authority to do so, but I don't see what an injunction on GSA does to further the relief that you seek.

MR. WERKHEISER: Understood.

Finally, Your Honor, in the pleadings, we will also answer the question that you asked Mr. Gustafson: Is there any

historic precedent for this? And we'll just note that we'll be talking about the fact that the EEOB was renovated in the 1980s. There was a collaboration between GSA and the OA. But under those circumstances, it's our understanding that GSA never ceded its ultimate responsibility. And in fact, the very specific language of the statute that we're talking about says that GSA cannot and it must retain under any delegation, presumably even if that delegation is to a qualified federal agency, which is not the case here.

So we look forward to briefing. We appreciate Your Honor's time, and we will await your specific instructions.

THE COURT: All right. Well, how soon do you expect to file an amended complaint? I can't schedule until you do that.

MR. WERKHEISER: Understood. If we could have until February 9th -- sorry, Your Honor, February 19th. It's our understanding in reading, as a matter of course, we have until that date. So if that date is good for Your Honor, we will make it work on or before February 19.

THE COURT: All right. I haven't done the calculations myself.

The defendants, I take it, have no issue with that particular date?

MR. GUSTAFSON: No, Your Honor, no issue there.

THE COURT: All right. So if the plaintiffs will file

their amended complaint on or before February 19. I would ask that the parties meet and confer once that complaint is filed and submit a schedule for further briefing on the issues raised in the complaint.

And I will deny without prejudice the defendants' motion to dismiss or, in the alternative, its motion for summary judgment once that complaint is filed.

The other option, of course -- and I don't think the plaintiffs are saying they want to do that, but the other option would be to continue on the current briefing schedule. But I agree with the plaintiffs that that doesn't make a lot of sense, in light of the new facts.

But just understand, when the imminent complaint is filed, that motion will be mooted out, and then you all can confer on a briefing schedule on an expedited basis, and we will go from there. And if you can't agree, you can give me your respective positions.

Why don't you file a joint status report on or before February 20 proposing a schedule for further proceedings, and if you're unable to agree, state your respective positions in that joint status report, and I will promptly set a schedule.

MR. GUSTAFSON: Understood, Your Honor.

MR. WERKHEISER: Thank you, Your Honor.

THE COURT: All right. Thank you, all.

(Proceedings adjourned at 9:54 a.m.)

CERTIFICATE OF OFFICIAL COURT REPORTER

I, Sara A. Wick, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Sara A. Wick February 17, 2026

SIGNATURE OF COURT REPORTER DATE