UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CULTURAL HERITAGE PARTNERS, PLLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>Defendants. | Case No. 1:25-cv-03969-DLF |

**DEFENDANTS' SUR-REPLY IN SUPPORT OF OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND EXPEDITED HEARING**

Pursuant to the Court's Minute Order of August 13, 2026, Defendants respectfully provide this sur-reply addressing the D.C. Circuit's decision in *National Trust for Historic Preservation in the United States v. National Park Service*, No. 26-5123, 2026 WL 2276494 (D.C. Cir. Aug. 7, 2026) ("*National Trust*") and the related arguments raised by the Plaintiffs in their reply, Dkt No. 45 ("Reply"). *National Trust* does not help Plaintiffs establish standing or irreparable harm. *National Trust* concerns the actual construction of the 90,000 square-foot ballroom, which the court assumed to be visible from public streets and parks. Here, by contrast, Plaintiffs seek a preliminary injunction to stop a modest study, which will take no more than thirteen two-inch samples of the Eisenhower Executive Office Building ("EEOB") exterior and test mineral coating on four two-foot by two-foot panels, on parts of the building that are not visible from public rights of way. The Study, in turn, will inform the ongoing NEPA and NHPA processes that Plaintiffs believe must be conducted before the EEOB is painted. *National Trust* therefore does not help

Plaintiffs establish standing or irreparable harm.[1]

## I. Standing

Plaintiffs are not similarly situated to Professor Alison Hoagland, the member of National Trust for Historic Preservation in the United States ("NTHP") whom the D.C. Circuit found to have standing to sue in *National Trust*. The plaintiffs in *National Trust* argued that the construction of the 90,000 square-foot ballroom would harm Professor Hoagland's aesthetic, cultural, and historic interests, largely because she is a historian who publishes works on historical architecture in the District of Columbia and routinely walks in front of the White House and through President's Park and attends meetings at the nearby Decatur House. *National Trust*, 2026 WL 2276494, at *13–14. The D.C. Circuit found that Professor Hoagland had standing in part because she would be able to see the addition of the 90,000 square foot ballroom on her walks near the White House and through President's Park and when she attends meetings at the Decatur House. *Id.* at *14–16. The D.C. Circuit emphasized the defendants "own admission of the extensive and permanent architectural, historical-preservation, and other aesthetic harms that the ballroom construction would cause," *id.* at *16, pointing out that the National Park Service concluded "the views of the White House from Lafayette Park and the Ellipse will be *permanently altered* due to the modifications to the East Wing," *id.* (quoting the Finding of No Significant Impact and adding emphasis). The Study here is unlike the 90,000 square foot ballroom, and Plaintiff here is unlike Professor Hoagland.

The Study will not cause any extensive or permanent changes. Plaintiffs say that "[p]ainting the EEOB white would have a comparable effect" to the ballroom project, Reply at 20,

---

[1] *National Trust* was wrongly decided, as explained in the United States's application for a stay of the injunction, filed in the Supreme Court yesterday. *National Park Service v. National Trust for Historic Preservation in the United States*, S. Ct. Docket No. 26A203.

but that is plainly not so. The complete demolition of a building and the construction of another is entirely different from the limited testing at the EEOB at issue here, which will not even be visible from public rights of way. Decl. of Heather Martin, Deputy Assistant to the President ("4th Martin Decl.") ¶ 18, Dkt. No. 44-1. Even if Greg Werkheiser, Marion Wekheiser, Rebecca Miller, and Robert Peck, or anyone else, had alleged concrete plans to walk by the EEOB on public rights of way, they would not be able to see any of the test painting or core sampling done as part of the Study. *See id.* The Study will effect no "fundamental[] change," no alteration of "the character of every view in which the EEOB appears," and no "concrete and extensive" injury, Reply at 20—Plaintiffs would not be able to see the limited testing areas.

And Plaintiffs have not established that any of their past or potential future visits to the EEOB would place them on the White House grounds where they could see the areas that might be affected by the Study. Greg Werkheiser, Marion Wekheiser, Rebecca Miller, and Robert Peck assert that they "regularly visit and experience the EEOB and its surroundings for aesthetic, recreational, professional, and educational purposes." Reply at 5. But none of their declarations to date indicate an intent to view the EEOB other than from public rights of way around the EEOB, let alone state a sufficiently concrete future plan to do so. *See generally* Dkt. Nos. 16-1, 16-2, 39-1, 39-2, 39-3, 39-4.

Plaintiffs' epigram at the beginning of the Reply, quoting the *National Trust* decision, underlines the fatal flaws in their case. They describe "witnessing certain places," "looking upon architectural marvels," and "viewing buildings[,]" Reply at 1—but it is uncontested that they will not be able witness, look upon, or view the effects of the Study. At this stage, what form the Project will take is wholly speculative. Plaintiffs' daisy-chain of injuries falls apart upon inspection, and their assertions fall far short of establishing standing. No decision has been made on whether to

proceed with the Project, and Plaintiffs cannot establish injury by conflating testing on an extremely small area of the EEOB not visible to the public with painting of the building as a whole.

**II. Irreparable Harm**

Plaintiffs allege two forms of irreparable harm: procedural, Reply at 13–19, and aesthetic, *id.* at 19–22. *National Trust* bears only on the latter. Plaintiffs make the baffling assertion that the purported harm they "will suffer because of the Project is indistinguishable from that wrought by the ballroom project, which the D.C. Circuit determined last week constitutes irreparable harm." *Id.* at 19. They quote extensively from the discussion of Professor Hoagland's declarations in that case regarding her regular walks through Lafayette Square and board meetings facing the White House. *Id.* But Plaintiffs totally disregard the core of the D.C. Circuit's analysis: irreparable harm to the *National Trust* plaintiffs accrued primarily because they could, in fact, see what the D.C. Circuit termed "permanent visual destruction." *National Trust*, 2026 WL 2276494, at *17. Here, Plaintiffs cannot even see the Study areas, and the Study would not make any permanent or significant change to the EEOB. The D.C. Circuit also explained that the aesthetic changes were "factually found by the National Park Service itself to be material and permanent results of the ballroom's planned size and scale." *Id.* at *36. Here, no federal entity has made such findings—in part because those reviews, which Plaintiffs explicitly sought and the Study will aid, are actively underway.

While Plaintiffs state that "harm to the EEOB is indisputably irreparable harm to Plaintiffs," Reply at 19, Plaintiffs are not one and the same as the building. They repeatedly confuse effects on the building with harm to Plaintiffs, but they are required to show irreparable harm to their <u>own</u> interests. Because they indisputably would not be able to see any aspect of the Study and the Project may not ever proceed, no irreparable harm has accrued or is at immediate risk of accruing.

Plaintiffs say they will be injured from "painting the EEOB white." Reply at 20. But no decision has been made on whether to proceed with such a project, and Plaintiffs cannot establish harm by conflating testing on an extremely small area of the EEOB not visible to the public with painting of the building as a whole.

This is Plaintiffs' gambit: they seek to paper over their failure to show irreparable harm from the Study by urging the Court to jump from the Study to "the Project of which it is a part." Reply at 6; *see also id*. (noting "the larger action it advances"); *id*. at 19 (stating it is "an integral and inseparable component of the Project"); *id*. at 23 (designating it "part of the Project"). But the Court should reject this attempt. The Study is not part of the Project. It has independent utility, regardless of whether the Project proceeds. Whether the Project occurs at all will turn on decisions that haven't been made yet and that will be informed by the Study.

**Conclusion**

The D.C. Circuit's order in *National Trust* has no application here, and it does not help Plaintiffs demonstrate standing or irreparable harm. Their lack of standing is still fatal to their case, and their lack of irreparable harm still forecloses the entry of a preliminary injunction. The Court should deny Plaintiffs' Motion for Preliminary Injunction, and grant Defendants' pending Motion to Dismiss.

* * *

Dated: August 14, 2026

Respectfully submitted,

Adam R.F. Gustafson
Principal Deputy Assistant Attorney General

Marissa Piropato
Deputy Chief, Natural Resources Section

***/s/ Mark Widerschein***
Mark Widerschein
Michelle Nkeng
Natural Resources Section
Energy & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Michelle.Nkeng@usdoj.gov
Mark.Widerschein@usdoj.gov

*Counsel for Defendants*