UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CULTURAL HERITAGE PARTNERS, PLLC, *et al.*,

Plaintiffs,

v.

DONALD J. TRUMP, *et al.*,

Defendants.

Case No. 1:25-cv-03969-DLF

**Joint Status Report**

Pursuant to the Court's Minute Order of August 18, 2026, the parties respectfully provide this Joint Status Report "informing the Court about the current status of the EEOB project." Minute Order (August 18, 2026).

Defendants state as follows:

1. On October 16, the Office of Administration ("OA") published a notice of availability in the Federal Register of a draft Environmental Assessment ("EA") prepared pursuant to NEPA. The draft EA encompasses a coordinated NHPA analysis pursuant to 36 CFR § 800.8. *See* 91 Fed. Reg. 65714, Docket No. OA-2026-0001.

2. In the notice, OA solicited public comments "concerning the scope of the analysis, potential alternatives, and identification of relevant information and studies by November 16, 2026." *Id.* OA additionally solicited requests for consulting party status under 36 CFR § 800.2(c)(5). *Id.*

3. OA has also initiated NHPA consultation with the Advisory Council on Historic Preservation, D.C. State Historic Preservation Office, National Capitol Planning Commission, General Services Administration, and National Park Service. *See* Exs. A–

E (consultation letters).

4. SGH performed high-resolution photography of samples taken from the EEOB on all four sides. They have begun high-resolution imaging with a digital microscope to capture the surface topography of the collected samples to further understand the existing stone condition and the impacts of the coating application and removals on the existing stone. They will analyze all information gathered from their condition assessment and coating feasibility study to develop findings with respect to the work objectives. They expect this work to continue for several weeks.

Plaintiffs state as follows:

1. The Draft EA contains consequential admissions concerning the proposed painting of the EEOB, while omitting critical information necessary to evaluate the proposal. Taken together, these admissions and omissions raise serious concerns about the substantive basis for the Project, the integrity of the ongoing review process, and the ability of the public and consulting parties to participate meaningfully. Plaintiffs continue to object to OA's assumption of responsibility over the Project and its environmental and historic preservation reviews, rather than Defendant General Services Administration ("GSA"), Defendant National Park Service, or another appropriate federal agency.

2. First, the government's own analysis fundamentally undermines the justification it has repeatedly offered this Court for the proposed painting. For months, Defendants have emphasized the EEOB's deteriorating physical condition and the urgent need for remedial work in defending the Project. ECF Nos. 42 at 3; 42-1 ¶¶ 4, 5, 8, 10; 44-1 ¶¶ 5, 17. Yet the EA confirms that the building's physical preservation needs can be

addressed without painting its historic granite. *See* Off. of Admin., Exec. Off. of the President, Draft Environmental Assessment for Exterior Improvements to the Eisenhower Executive Office Building 28 (Oct. 2026), https://www.regulations.gov/document/OA-2026-0001-0001 [hereinafter *Draft EEOB EA*].[1] The EA identifies a Cleaning and Lighting Alternative that would improve the building without causing adverse effects to the EEOB or surrounding historic properties. *Draft EEOB EA* at 25. By contrast, the EA confirms that the preferred painting alternative would adversely affect the EEOB, the Treasury Building, and the Lafayette Square Historic District, including by obscuring the deliberately selected colors and character of the EEOB's granite façade. *Id.* at 22–24.[2] Thus, the government's own analysis exposes a fundamental disconnect between the physical deterioration Defendants have invoked to justify the Project and the painting they seek to undertake. The former can be addressed without the latter, while the latter would cause historic preservation harms that the former does not require. *See id.* at 28.

3. Second, the government has not completed or disclosed the technical and financial

---

[1] When describing the Assessment of Adverse Effects for the "No Action" alternative, the EA concludes "General soiling and other conditions that warrant cleaning may cause deterioration over time if left on the building surface. Potential adverse effect." *Id.* But when describing the effects for the Cleaning and Lighting alternative, it concludes "Detailed specifications have not yet been fully developed, but cleaning would follow a conservation-based approach consistent with previous exterior cleaning efforts as well as SOI Standards for Restoration and GSA standards for cleaning granite. New façade lighting would follow best practices for upgrading historic building lighting. No adverse effect." *Id.*

[2] "The unpainted exterior granite walls, including their natural detail (e.g., grey and pink hues), were hand-selected by the architect and are central to the building's historic character and original design intent. Painting the granite would alter these characteristics, resulting in an adverse effect to the EEOB under the NHPA. Similarly, the integrity of setting, materials, feeling, and/or association of the Lafayette Square Historic District and Treasury Building would be adversely affected." *Id.*

analyses necessary to justify its preferred alternative. The EA acknowledges that testing remains unfinished and that "more testing is planned." *Id.* at 6. Defendants' present report confirms that examination and analysis of collected samples will continue for several weeks. Nevertheless, Defendants have not disclosed the underlying testing results to the Court or the public despite repeated requests from Plaintiffs. Nor has the government supplied an adequate comparative analysis of the costs of painting versus cleaning and repair, including long-term maintenance and eventual removal of the coating. Critically, the EA does not establish that painting will strengthen, stabilize, or materially protect the granite, or that any such benefits could not be achieved through less harmful conservation measures. Indeed, the government is soliciting public comments on the preferred alternative against a forced deadline while the very testing intended to determine its physical effects and feasibility remains incomplete.

4. Third, these deficiencies undermine the meaningfulness of the public comment and historic preservation consultation processes now underway. OA insists on public and consulting party comments by November 16, 2026. But the public and prospective consulting parties are being asked to evaluate the proposed application of paint to a National Historic Landmark without access to completed testing, underlying technical findings, or a full accounting of costs and long-term consequences: all of which would have been disclosed well before the parties arrived at this stage were this a legitimate process under Sections 106 and 110(f). The government is thus conducting public review before completing and disclosing information essential to an informed assessment of the Project. A process in which the government proceeds toward its preferred outcome while material technical questions remain unanswered does not

provide a meaningful opportunity to evaluate alternatives or influence the ultimate decision. These circumstances bolster Plaintiffs' substantial concerns that this process is being used to justify a decision already made.

5. Fourth, OA's control of the Project and its reviews compound Plaintiffs' transparency and accountability concerns. Plaintiffs maintain their objections to OA undertaking the Study or Project rather than GSA or another appropriate federal agency. The choice of OA has consequences beyond the disputed question of legal authority. Unlike GSA and other agencies ordinarily responsible for federal historic properties, OA's position within the Executive Office of the President raises substantial obstacles to obtaining project records through the Freedom of Information Act, including underlying studies, contractor communications, and information concerning the development and revision of the EA. Plaintiffs dispute any suggestion that the government may lawfully avoid otherwise applicable environmental and historic preservation obligations, or insulate its decision-making from meaningful public scrutiny, by placing responsibility for the Project within OA. These concerns are particularly acute where the agency has released an incomplete analysis while withholding the basic technical and financial information necessary to assess its conclusions.

6. Finally, Defendants' failure to inform the Court of the ongoing EA process reinforces the foregoing concerns. The Court's August 18, 2026 Minute Order requires status reports every fourteen days concerning the "current status of the EEOB project," not merely updates on physical testing. Nevertheless, in four reports filed between August 25 and October 6, Defendants did not disclose that OA was actively preparing an EA and conducting coordinated NEPA and NHPA reviews, even though Defendants had

previously represented that those reviews were part of the Project's anticipated work. *See* ECF No. 38-2 ¶ 5. Given Plaintiffs' objections to OA's authority and the Court's continuing oversight, these developments should have been reported. The omission is especially troubling considering the substantive admissions and unresolved questions now revealed by the EA.

7. Plaintiffs' questions in the preceding Joint Status Reports, ECF Nos. 49, 50, 53, and 54, and the concerns identified in the declaration of Judith M. Jacob, ECF No. 43-4, remain unanswered. Plaintiffs submit that Defendants should promptly disclose the testing results and technical findings generated to date, identify the testing and analyses that remain outstanding, and explain to this Court how the public and consulting parties will have a meaningful opportunity to consider and comment upon the completed information before any final decision is made.

Dated: October 20, 2026

Respectfully submitted,

Adam R.F. Gustafson
Principal Deputy Assistant Attorney General

Marissa Piropato
Deputy Chief, Natural Resources Section

***/s/ Michelle Nkeng***
Mark Widerschein
Michelle Nkeng
Natural Resources Section
Energy & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Michelle.Nkeng@usdoj.gov
Mark.Widerschein@usdoj.gov

*Counsel for Defendants*

***/s/ Caitlin Grace McCurdy (w/ permission)***

Charles N. Curlett, Jr., Bar No. 497920
Gregory Alan Werkheiser, Bar No. VA210
Marion Forsyth Werkheiser, Bar No. 486465
Jessie Barrington, Bar No. VA244
Caitlin Grace McCurdy, Bar No. NH0004
Lydia Dexter, Bar No. OR0032
CULTURAL HERITAGE PARTNERS, PLLC
1717 Pennsylvania Avenue, NW, Suite 1025
Washington, DC 20006
Tel: (703) 408-2002
Email:
charles@culturalheritagepartners.com
greg@culturalheritagepartners.com
marion@culturalheritagepartners.com
jessie@culturalheritagepartners.com
caitlin@culturalheritagepartners.com

lydia@culturalheritagepartnerts.com
COUNSEL FOR PLAINTIFFS